Shana E. Scarlett (SBN 217895)
Ben Harrington (SBN 313877)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com
Email: benh@hbsslaw.com

Steve W. Berman (*pro hac vice forthcoming*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: toml@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELAINE ANDERSON, DIANA ATKINS, SCOTT BURST, BETH CHAVEZ, COLEA CHILDS, EUIHWAN CHO, ALISON COLEMAN, VICTORIA CORNWELL, DONALD DAHL, JACQUELINE DEMERITTE, CANDACE MARTINO, SCOTT SAPKOSKY and ERIK VILLAGRAN, on behalf of themselves and all others similarly situated, | No. _____ |
| Plaintiffs, | CLASS ACTION COMPLAINT FOR BREACH OF EXPRESS AND IMPLIED WARRANTIES, VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT AND UNFAIR COMPETITION LAW, FRAUDULENT CONCEALMENT, AND BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY |
| v. | |
| APPLE INC., a California corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

1
**TABLE OF CONTENTS**

2
**Page**

3
I.      INTRODUCTION ................................................................................................................1

4
II.     JURISDICTION ..................................................................................................................2

5
III.    VENUE ................................................................................................................................2

6
IV.     PARTIES ..............................................................................................................................3

7
        A.      Plaintiffs ..................................................................................................................3

8
                1.      Alabama Plaintiff Alison Coleman ..............................................................3

9
                2.      California Plaintiff Diana Atkins ..................................................................4

10
                3.      California Plaintiff Euihwan Cho ..................................................................5

11
                4.      Florida Plaintiff Beth Chavez ......................................................................5

12
                5.      Florida Plaintiff Jacqueline Demeritte ........................................................6

13
                6.      Georgia Plaintiff Colea Childs .....................................................................7

14
                7.      Nevada Plaintiff Donald Dahl ......................................................................8

15
                8.      New York Plaintiff Candace Martino ...........................................................8

16
                9.      Pennsylvania Plaintiff Scott Sapkosky .........................................................9

17
                10.     South Carolina Plaintiff Elaine Anderson ..................................................10

18
                11.     Texas Plaintiff Scott Burst ..........................................................................11

19
                12.     Texas Plaintiff Erick Villagran ...................................................................12

20
                13.     Wisconsin Plaintiff Victoria Cornwell .......................................................13

21
        B.      Defendant Apple Inc. ............................................................................................14

22
V.      FACTUAL ALLEGATIONS .............................................................................................14

23
        A.      The Technology in the iPhone XR ........................................................................14

24
        B.      Consumer Reaction to the iPhone XR ...................................................................15

25
        C.      Press Response to the iPhone XR ..........................................................................15

26
        D.      Apple's Warranties and Response to the Defect ....................................................18

27
VI.     CHOICE OF LAW ALLEGATIONS ................................................................................19

28
VII.    CLASS ALLEGATIONS ...................................................................................................19

VIII.    CAUSES OF ACTION.................................................................................22

COUNT I BREACH OF EXPRESS WARRANTY— MAGNUSON-MOSS
        WARRANTY ACT (15 U.S.C. §§ 2301, *ET SEQ.*)..............................................22

COUNT II BREACH OF IMPLIED WARRANTY— MAGNUSON-MOSS
        WARRANTY ACT (15 U.S.C. §§ 2301, *ET SEQ.*)..............................................25

COUNT III VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL
        REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*)....................................26

COUNT IV VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
        (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)................................................29

COUNT V FRAUD BY CONCEALMENT  (BASED ON CALIFORNIA LAW) ........................31

COUNT VI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
        (CAL. COM. CODE § 2314) ................................................................................34

IX.      REQUEST FOR RELIEF.........................................................................35

DEMAND FOR JURY TRIAL ...........................................................................36

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Federal Rule of Civil Procedure 11(b)(3), is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I. INTRODUCTION

1. Apple Inc. markets its iPhones as premium products with fast processors, reliable connectivity, and epic performance. Each year, many thousands of American consumers purchase Apple's products—so many, in fact, that they have made Apple one of the most valuable companies in the world.

2. Like every vendor, Apple has duties of truthfulness and candor to its customers. It also has the duty to not conceal material information that one of its newest iPhone models has inferior performance and inferior components relative to its other new models and the models of its competitors such that it will not maintain voice and data connections as advertised and promoted and as needed to support the normal and expected operation of the device.

3. Apple has violated these duties by designing, manufacturing, and selling their iPhone XR with defects that Apple was aware of. The iPhone XR is equipped with a 2x2 MIMO antenna array versus the 4x4 MIMO array Apple uses in its iPhone XS and iPhone XS Max and which Apple's competitors use on their phones priced comparably to the iPhone XR. Apple fails to disclose at the point of sale or otherwise inform consumers that this design difference causes the iPhone XR to have half the signal connectivity and 4G speed of the iPhone XS and iPhone XS Max and renders the XR far less capable of obtaining a reliable connection in the same areas where the XS and Max can reliable connect.

4. Apple has long known or should have known of the inadequacy of the iPhone XR antenna array from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Apple, made to Apple resellers and cellular service providers, and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized resellers; and other

sources. Yet Apple failed to disclose and actively concealed the iPhone XR's defect from the public, and continues to manufacture, distribute, and sell the iPhone XR without disclosing the defect.

5.      Under Apple's One-Year Limited Warranty, Apple "warrants the included hardware product and accessories against defects in materials and workmanship for one year from the date of original retail purchase." The 2x2 MIMO antenna array in the iPhone XR, all of which share identical connectivity technology, are defective in material or workmanship under normal use.

6.      Apple has not found a solution to the iPhone XR connectivity system defect. Instead, upon receiving an in-warranty complaint, Apple—if it does anything—simply replaces the defective iPhone XR with a new iPhone XR that has the identical defective connectivity system, leaving consumers caught in a cycle of use, malfunction, and replacement.

7.       In January 2020, Apple admitted that iPhone XR users were having network connectivity issues on O2, a major cellular network in the United Kingdom. Apple has yet to offer a solution to consumers there or in the United States.

8.      Plaintiffs bring this action for violation of California consumer protection acts and for breach of express and implied warranties on behalf of a nationwide class. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

9.      In this nationwide proposed class action, Plaintiffs seek monetary compensation for the degraded connectivity, reliability, and performance of their iPhone XR on their behalf and that of the putative nationwide class.

## II.      JURISDICTION

10.      This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed classes consist of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and at least one plaintiff is a citizen of a state different from the defendant, which is a California corporation.

## III.      VENUE

11.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

CLASS ACTION COMPLAINT – 2
010908-11/1253595 V1

1   Furthermore, Apple's principal place of business is in this judicial district, and it is believed, and

2   therefore alleged, that a substantial amount of the conduct of which Plaintiffs complain occurred in

3   this judicial district. Also, Apple has marketed, advertised, and sold affected devices within this

4   judicial district. Additionally, the San Jose division of this Court is the proper division for filing,

5   given Apple's headquarters in Cupertino, California.

6                                    **IV.    PARTIES**

7   **A.    Plaintiffs**

8          1.    **Alabama Plaintiff Alison Coleman**

9          12.    Plaintiff Alison Coleman ("Plaintiff" for purposes of this section) is a resident of

10  Fosters, Alabama. Plaintiff purchased four iPhone XRs on or about January 1, 2019.

11         13.    Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR

12  prior to purchasing them. Plaintiff was not made aware of any features of the iPhone XR that would

13  render it less capable of voice and internet connectivity than other iPhone models. Specifically,

14  Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2

15  MIMO array that would prevent it from adequately connecting to voice and data networks such that

16  she could use her iPhone XRs in a reliable manner as expected. Had she known about the inferior

17  2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for the phones, or she

18  would have selected a different model or different manufacturer's phone that did not use an inferior

19  antenna array.

20         14.    From soon after her purchases, Plaintiff began to experience connectivity issues with

21  her iPhone XRs. Specifically, she would often be unable to hear caller's voices or they would be

22  unable to hear hers; she would have difficulty sending and receiving text messages; and she would

23  have intermittent or inoperable data connections.

24         15.    Plaintiff complained to Apple about these issues within one year of purchasing her

25  iPhone XRs. Plaintiff contacted Apple, as well as an authorized dealer, on multiple occasions.

26  Plaintiff was advised to reset her phones to factory default. She did this in an attempt to resolve her

27  connectivity issues, but her iPhone XRs continue to have the problems described above.

28

16.     It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

17.     Plaintiff continues to possess her affected phones. One of her iPhone XRs was provided to a family member who has also experienced the same connectivity issues.

### 2.     California Plaintiff Diana Atkins

18.     Plaintiff Diana Atkins ("Plaintiff" for purposes of this section) is a resident of Rohnert Park, California. Plaintiff purchased her iPhone XR on or about October 27, 2019.

19.     Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that would prevent it from adequately connecting to voice and data networks such that she could use her iPhone XR in a reliable manner as expected. Had she known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or she would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

20.     From soon after her purchase, Plaintiff began to experience connectivity issues with her iPhone XR. Specifically, she would often be unable to hear caller's voices or they would be unable to hear hers; she would have difficulty sending and receiving text messages; and she would have intermittent or inoperable data connections. It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

21.     Plaintiff continues to possess her affected phone.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.        **California Plaintiff Euihwan Cho**

22.    Plaintiff Euihwan Cho ("Plaintiff" for purposes of this section) is a resident of Gardena, California. Plaintiff purchased his iPhone XR on or about June 1, 2019.

23.    Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that would prevent it from adequately connecting to voice and data networks such that he could use his iPhone XR in a reliable manner as expected. Had he known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or he would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

24.    From soon after his purchase, Plaintiff began to experience connectivity issues with his iPhone XR. Specifically, he would often be unable to hear caller's voices or they would be unable to hear his; he would have difficulty sending and receiving text messages; and he would have intermittent or inoperable data connections. It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

25.    Plaintiff continues to possess his affected phone.

4.        **Florida Plaintiff Beth Chavez**

Plaintiff Beth Chavez ("Plaintiff" for purposes of this section) is a resident of Gibsonton, Florida. Plaintiff purchased her iPhone XR on or about April 6, 2019.

Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that

would prevent it from adequately connecting to voice and data networks such that she could use her iPhone XR in a reliable manner as expected. Had she known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or she would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

From soon after her purchase, Plaintiff began to experience connectivity issues with her iPhone XR. Specifically, she would often be unable to hear caller's voices or they would be unable to hear hers; she would have difficulty sending and receiving text messages; and she would have intermittent or inoperable data connections. It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

26.     Plaintiff continues to possess her affected phone.

5.     **Florida Plaintiff Jacqueline Demeritte**

27.     Plaintiff Jacqueline Demeritte ("Plaintiff" for purposes of this section) is a resident of Sunrise, Florida. Plaintiff purchased her iPhone XR on or about November 15, 2018.

28.     Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that would prevent it from adequately connecting to voice and data networks such that she could use her iPhone XR in a reliable manner as expected. Had she known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or she would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

29.     From soon after her purchase, Plaintiff began to experience connectivity issues with her iPhone XR. Specifically, she would often be unable to hear caller's voices or they would be unable to hear hers; she would have difficulty sending and receiving text messages; and she would

have intermittent or inoperable data connections. It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

30.     Plaintiff continues to possess her affected phone.

6.     **Georgia Plaintiff Colea Childs**

31.     Plaintiff Colea Childs ("Plaintiff" for purposes of this section) is a resident of Atlanta, Georgia. Plaintiff purchased her iPhone XR on or about August 27, 2019.

32.     Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that would prevent it from adequately connecting to voice and data networks such that she could use her iPhone XR in a reliable manner as expected. Had she known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or she would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

33.     From soon after her purchase, Plaintiff began to experience connectivity issues with her iPhone XR. Specifically, she would often be unable to hear caller's voices or they would be unable to hear hers; she would have difficulty sending and receiving text messages; and she would have intermittent or inoperable data connections. It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

34.     Plaintiff continues to possess her affected phone.

1

7.    **Nevada Plaintiff Donald Dahl**

2

35.    Plaintiff Donald Dahl ("Plaintiff" for purposes of this section) is a resident of Las

3

Vegas, Nevada. Plaintiff purchased his iPhone XR on or about August 15, 2019.

4

36.    Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR

5

prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would

6

render it less capable of voice and internet connectivity than other iPhone models. Specifically,

7

Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2

8

MIMO array that would prevent it from adequately connecting to voice and data networks such that

9

he could use his iPhone XR in a reliable manner as expected. Had he known about the inferior 2x2

10

MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or he would

11

have selected a different model or different manufacturer's phone that did not use an inferior antenna

12

array.

13

37.    From soon after his purchase, Plaintiff began to experience connectivity issues with

14

his iPhone XR. Specifically, he would often be unable to hear caller's voices or they would be

15

unable to hear his; he would have difficulty sending and receiving text messages; and he would have

16

intermittent or inoperable data connections. It was only recently that Plaintiff first learned, thanks to

17

reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2

18

MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS

19

Max, and that other smartphone manufacturers use throughout their product lines, including in

20

phones at the same price point as the iPhone XR.

21

38.    Plaintiff continues to possess his affected phone.

22

8.    **New York Plaintiff Candace Martino**

23

39.    Plaintiff Candace Martino ("Plaintiff" for purposes of this section) is a resident of

24

Rochester, New York. Plaintiff purchased her iPhone XR on or about June 4, 2019.

25

40.    Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR

26

prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would

27

render it less capable of voice and internet connectivity than other iPhone models. Specifically,

28

Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2

MIMO array that would prevent it from adequately connecting to voice and data networks such that she could use her iPhone XR in a reliable manner as expected. Had she known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or she would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

41.     Prior to purchasing her iPhone XR, Plaintiff was using an iPhone 6 plus and never experienced any connectivity issues.

42.     From soon after her purchase, Plaintiff began to experience connectivity issues with her iPhone XR. Specifically, she would often be unable to hear caller's voices or they would be unable to hear her; she would experience dropped calls; she would have difficulty sending and receiving text message; and she had intermittent or inoperable data connections.

43.     Plaintiff complained to Apple about these issues within one year of purchasing her iPhone XR. Plaintiff spent considerable time on the telephone with Apple trying to resolve these issues. She was advised to perform a factory reset of the phone. She did this, and repeatedly turned off and restarted her phone, to attempt to resolve her connectivity problems, but none of this has worked and her iPhone XR continues to have the problems described above.

44.     It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

45.     Plaintiff continues to possess her affected phone.

9.     **Pennsylvania Plaintiff Scott Sapkosky**

46.     Plaintiff Scott Sapkosky ("Plaintiff" for purposes of this section) is a resident of Philadelphia, Pennsylvania. Plaintiff purchased his iPhone XR around May 2019.

47.     Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically,

CLASS ACTION COMPLAINT – 9
010908-11/1253595 V1

Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that would prevent it from adequately connecting to voice and data networks such that he could use his iPhone XR in a reliable manner as expected. Had he known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or he would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

48.     From soon after his purchase, Plaintiff began to experience connectivity issues with his iPhone XR. He had difficulty hearing incoming calls and persons had difficulty hearing him. Additionally, calls would be dropped and fail to go through. Data connections were unreliable, and his phone was slow-running on WiFi and on cell towers. Text messages would often fail to send, and would regularly be received, if at all, long after they were sent.

49.     Plaintiff attempted to troubleshoot the problem, including by clearing out the caches on his phone. He eventually went to an Apple Store, where he had his phone replaced with another iPhone XR. His second iPhone XR continues to have the problems described above.

50.     It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

51.     Plaintiff stills owns the replacement iPhone XR.

10.     **South Carolina Plaintiff Elaine Anderson**

52.     Plaintiff Elaine Anderson ("Plaintiff" for purposes of this section) is a resident of Sumter, South Carolina. Plaintiff purchased two iPhone XRs on or about September 21, 2019.

53.     Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing them. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that would prevent it from adequately connecting to voice and data networks such that

CLASS ACTION COMPLAINT – 10
010908-11/1253595 V1

1   she could use her iPhone XRs in a reliable manner as expected. Had she known about the inferior

2   2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for the phones, or she

3   would have selected a different model or different manufacturer's phone that did not use an inferior

4   antenna array.

5        54.    From soon after her purchases, Plaintiff began to experience connectivity issues with

6   her iPhone XRs. Specifically, she would often be unable to hear caller's voices or they would be

7   unable to hear hers; she would have difficulty sending and receiving text messages; and she would

8   have intermittent or inoperable data connections. It was only recently that Plaintiff first learned,

9   thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an

10  inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and

11  iPhone XS Max, and that other smartphone manufacturers use throughout their product lines,

12  including in phones at the same price point as the iPhone XR.

13       55.    Plaintiff continues to possess her affected phones.

14       11.    **Texas Plaintiff Scott Burst**

15       56.    Plaintiff Scott Burst ("Plaintiff" for purposes of this section) is a resident of Pearland,

16  Texas. Plaintiff purchased his iPhone XR on or about September 17, 2019.

17       57.    Plaintiff was not made aware of any features of the iPhone XR that would render it

18  less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was

19  not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that

20  would prevent it from adequately connecting to voice and data networks such that he could use his

21  iPhone XR in a reliable manner as expected. Had he known about the inferior 2x2 MIMO antenna

22  array on the iPhone XR, Plaintiff would have paid less for this phone, or he would have selected a

23  different model or different manufacturer's phone that did not use an inferior antenna array.

24       58.    From soon after his purchase, Plaintiff began to experience connectivity issues with

25  his iPhone XR. Specifically, he would often be unable to hear caller's voices or they would be

26  unable to hear his; he would have difficulty sending and receiving text message; and he has had

27  intermittent or inoperable data connections.

28

CLASS ACTION COMPLAINT – 11
010908-11/1253595 V1

59.     Plaintiff complained to Apple about these issues within one year of purchasing his iPhone XR. He was advised to go to an Apple Store, where employees told him that he needed to do a factory reset of his phone and downgrade the operating system. He did this, and repeatedly turned off and restarted his phone to attempt to resolve his connectivity problems, but not of this worked and his iPhone XR continues to have the problems described above.

60.     It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

61.     Plaintiff continues to possess his affected phone.

12.     **Texas Plaintiff Erick Villagran**

62.     Plaintiff Erick Villagran is a resident of Round Rock, Texas. On January 30, 2020, he purchased a new iPhone XR from the AT&T store in Pflugerville, Texas.

63.     Prior to purchasing his iPhone XR, Plaintiff was using a Galaxy S10 plus and never experienced any connectivity issues.

64.     Shortly after acquiring his new iPhone XR, he began having connectivity issues with his new phone. He had difficulty hearing incoming calls and persons had difficulty hearing him. Additionally, calls would be dropped and fail to go through. Data connections were unreliable, with interrupted streaming and the inability to use many applications, especially streaming services. Text messages would often fail to send, and would regularly be received, if at all, long after they were sent.

65.     Plaintiff contacted his service provider, AT&T, and they told him the problem was not with the service, but instead with his new iPhone XR.

66.     Plaintiff still owns his iPhone XR. However, because of these connectivity issues, Plaintiff is thinking of replacing his iPhone XR with a different phone.

67.     When Plaintiff purchased his iPhone XR, he did so under the reasonable, but mistaken, belief that it would function normally and allow him to use the normal operating features of an iPhone, and would not have the serious connectivity issues that he has experienced.

68.     Had Plaintiff known that the iPhone XR had a 2x2 MIMO antenna array that would provide half the connection speed and deficient connectivity at any speed as compared to other iPhones and competitor models on the market, he would have paid less for his iPhone XR, or he would have purchased a different iPhone or a competitor's phone that did not have these issues.

13.     **Wisconsin Plaintiff Victoria Cornwell**

69.     Plaintiff Victoria Cornwell ("Plaintiff" for purposes of this section) is a resident of Racine, Wisconsin. Plaintiff purchased her iPhone XR on or about February 28, 2019.

70.     Plaintiff reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it. Plaintiff was not made aware of any features of the iPhone XR that would render it less capable of voice and internet connectivity than other iPhone models. Specifically, Plaintiff was not made aware of the fact that the iPhone XR was equipped with an inferior 2x2 MIMO array that would prevent it from adequately connecting to voice and data networks such that she could use her iPhone XR in a reliable manner as expected. Had she known about the inferior 2x2 MIMO antenna array on the iPhone XR, Plaintiff would have paid less for this phone, or she would have selected a different model or different manufacturer's phone that did not use an inferior antenna array.

71.     From soon after her purchase, Plaintiff began to experience connectivity issues with her iPhone XR. Specifically, she would often be unable to hear caller's voices or they would be unable to hear hers; she would have difficulty sending and receiving text messages; and she would have intermittent or inoperable data connections. It was only recently that Plaintiff first learned, thanks to reports in the press, that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna array instead of a 4x4 MIMO array that Apple uses in its iPhone XS and iPhone XS Max, and that other smartphone manufacturers use throughout their product lines, including in phones at the same price point as the iPhone XR.

72.     Plaintiff continues to possess her affected phone.

**B.      Defendant Apple Inc.**

73.      Apple Inc., the designer, manufacturer, and vendor of iPhones, is a California corporation. Apple maintains its headquarters and principal place of business in Cupertino, California. Upon information and belief, Apple took all decisions and actions complained of herein at or near its corporate headquarters in Cupertino, California, or elsewhere in the state of California.

74.      Apple transacts substantial business throughout California, including by way of designing its products and operating system updates, devising and implementing policies regarding hardware design and components, devising and implementing its service and marketing strategies and policies, and managing distribution of its iPhone products from or via its California headquarters. It is believed, and therefore alleged, that substantially all of the misconduct alleged in this complaint occurred in or emanated from California.

## V.      FACTUAL ALLEGATIONS

**A.      The Technology in the iPhone XR**

75.      On or about September 21, 2018, Apple released its iPhone XS and iPhone XS Max.[1] These new flagship models of the iconic iPhone were equipped with a 4x4 MIMO antenna array. The iPhone XR, at issue in this case, was released on October 26, 2018.[2] Unlike the earlier released iPhone XS and XS Max, however, the iPhone XR was released with a 2x2 MIMO antenna array.

76.      With two fewer branches on the antenna array, 2x2 MIMO is only capable of two streams of data for transmit and receive pathways, while 4x4 MIMO offers four streams. The differences between 2x2 MIMO and 4x4 MIMO affect not just the LTE cellular connection, but also industry standard 802.11ac WiFi connections.[3]

77.      Testing has revealed that the increased pathways of the 4x4 MIMO array affects not only download and upload data speeds, but also network connectivity. That is, given the same signal strength from a cellular or WiFi antenna, the 2x2 MIMO antenna arrays do not connect as well and

---

[1] *See* https://historycooperative.org/the-history-of-the-iphone/ (last accessed April 3, 2020).

[2] *See id.*

[3] *See* https://www.howtogeek.com/394266/what-is-4x4-mimo-and-does-my-smartphone-need-it/ (last accessed April 3, 2020).

CLASS ACTION COMPLAINT – 14
010908-11/1253595 V1

suffer from an inferior connection to comparable devices equipped with the superior 4x4 MIMO array.[4]

**B.      Consumer Reaction to the iPhone XR**

78.      Customers have posted on Apple's own forums and websites complaints about connectivity with the iPhone XR from soon after its initial release. For example, a customer identified as "saltrock04" posted the following on December 10, 2018:

> I am intermittently having a strange issue with my iPhone XR on
> Sellular Connectivity. The phone just stops data and call connectivity,
> even though the cellular receptions bar is showing full signal. The only
> way you can tell it has happened is when you come to use the device,
> then you see there is no data and calls can't be made or received. ….[5]

79.      Consumers posted to other boards that their iPhone XR phones had issues from immediately after the release date. For example, "radiologyman" posted the following on December 23, 2018:

> Seems like my wife's day one Iphone XR has reception issues, both
> with cellular signal and with random wifi disconnects. Is it worth
> exchanging it for a later production date unit? Seems like it was
> established on this forum that there is a variance in reception with the
> XS and XS Max models. What are may chances to persuade Apple to
> take it back in return for an Iphone X? Thanks!.[6]

80.      And consumers have posted that recent software updates to their phones have not fixed the connectivity issues. For example, on October 16, 2019, "Bluestar_dragon" posted:

> I just got the XR 5 days ago. I'm coming from a 5s with no reception
> issues. The XR has been horrible with reception so far. I updated to
> iOS 13 and am still having issues.[7]

**C.      Press Response to the iPhone XR**

81.      The online technology press and forums have also widely reported and commented on the systemic connectivity issues of the iPhone XR. On December 19, 2018, less than two months

---

[4] *See id.*

[5] https://discussions.apple.com/thread/250014593 (last accessed April 3, 2020).

[6] https://forums.macrumors.com/threads/iphone-xr-reception-issues.2162007/ (last accessed April 3, 2020).

[7] https://forums.macrumors.com/threads/iphone-xr-reception-issues.2162007/page-2#post-27409829 (last accessed April 3, 2020).

1  after the release of the iPhone XR, Matthew Miller from ZD Net published the article: "Goodbye

2  iPhone XR: Signal strength and size bring me back to the iPhone XS." After using the iPhone XR, he

3  wrote: "After six weeks, I realized I just could not put up with the less capable wireless technology

4  that daily made my streaming media pause on my commute and had calls drop without warning."[8]

5      82.    In a product review that Mr. Miller published on October 31, 2018, he wrote:

6      One difference between the iPhone XR and XS/XS Max that can be
    significant and is likely to be overlooked by the masses is the CAT 12

7      vs CAT 16 LTE support. Qualcomm has an excellent tutorial on this
    that is applicable even to the Intel modems found in these new

8      iPhones. Most people may focus on the theoretical 600 Mbps CAT 12
    vs 1 Gbps CAT 16 speeds. Speed differences are present, but that's not

9      really the main concern here. CAT 12 devices have two antennas while
    CAT 16 devices have four; 2x2 MIMO vs 4x4 MIMO. In weak signal

10      areas, this can be critical.

11      My commuter train spends most of its time on the fringes of towns
    along the way to Seattle and T-Mobile signal is weak most of the way.

12      In my testing, the iPhone XR averages about 4-5 dBm less than the
    iPhone XS Max and a stunning 10 dBm less than the Note 9. Given the

13      logarithmic scale for this measure that equates to the Note 9 have a
    signal three times as powerful as the iPhone XR. The iPhone XR is

14      performing even worse than the Essential Phone, which is terrible in
    weak signal areas.[9]

15      83.    A review in PC Magazine from November 5, 2018, just days after the release of the

16  iPhone XR, highlighted its deficient connectivity:

17
    Both the XS/Max and the XR use the same modem, the new Intel

18      XMM7560. But the XR is missing two of the XS/Max's antenna
    branches, making it a 2x2 MIMO phone versus the XS/Max's 4x4

19      MIMO. All flagship Android phones right now are 4x4 MIMO, as
    well, including XR-priced phones like the LG G7 and the OnePlus

20      6T[10]

21      84.    The article went on to explain that across the board, even when connected to a

22  network only capable of 2x2 MIMO connection, the iPhone XR materially underperformed the

23  iPhone XS and XS Max, and price-competitive models to the iPhone XR from other manufacturers.[11]

24

25  [8] https://www.zdnet.com/article/goodbye-apple-iphone-xr-signal-strength-and-size-put-the-iphone-xs-back-in-my-hand/ (last accessed April 3, 2020).

26  [9] https://www.zdnet.com/product/apple-iphone-xr/ (last accessed April 3, 2020).

27  [10] https://www.pcmag.com/news/exclusive-iphone-xs-crushes-xr-in-cellular-signal-test-results (last accessed April 3, 2020).

28  [11] *See id.*

85.    By January 2019, the financial world had also recognized the failings of the iPhone XR. In a January 7, 2019 article titled: "3 iPhone XR Problems that Create Huge Headaches for Apple," Josh Enomoto wrote on Yahoo Finance:

> [T]he iPhone XR is itself a hot mess. When the company launched the fighter model, it was supposed to bridge the pricing gaps in the Apple iPhone. Apparently, management spent more time marketing the product than manufacturing it.
>
> According to various consumer reviews, the iPhone XR suffers from a litany of performance and connectivity issues. In addition, frustrated customers have reported numerous electronic gremlins. The kicker is that AAPL is still working on solutions. Therefore, if you come across an issue, you must hope a third-party resource has your answer.[12]

86.    Despite several reports that Apple would attempt to resolve the iPhone XR connectivity issues by switching the phone to a 4x4 MIMO antenna array for its fall 2019 product release,[13] there is no evidence that it has done that, and even recent purchasers report the same connectivity issues as day-one purchasers.[14]

87.    Apple engages in rigorous pre-release testing. Dozens of engineers are provided with pre-production units in the months leading up to a product launch and report back their experiences to Apple. Given the hardware differences in capability between the 2x2 MIMO antenna array in the iPhone XR and the twice-as-capable 4x4 MIMO antenna array in the iPhone XS, iPhone XS Max, and in other manufacturer's devices at the same price-point as the iPhone XR, Apple's pre-release testing revealed to Apple that the iPhone XR would have serious connectivity shortcomings as compared to consumers' other choices in the marketplace. Yet Apple's press release for the iPhone XR revealed none of this, instead deceptively suggesting that the iPhone XR shared the iPhone XS' "breakthrough technology":

> At 8 a.m. local time on Friday, October 26, the new iPhone XR went on sale around the world. iPhone XR combines breakthrough technologies from iPhone XS in an all-screen glass and aluminum

---

[12] https://finance.yahoo.com/news/3-iphone-xr-problems-create-171951118.html (last accessed April 3, 2020).

[13] *See, e.g.,* https://appleinsider.com/articles/19/01/17/2019-iphone-xr-may-get-same-antenna-tech-thats-in-the-iphone-xs (last accessed April 3, 2020).

[14] *See, e.g.,* https://discussions.apple.com/thread/251019022 (post from Jan. 7, 2020, "my iPhone XR won't stay connected to the WiFi") (last accessed April 3, 2020).

design, featuring a stunning 6.1-inch Liquid Retina display — the most advanced LCD in a smartphone.[15]

88.     Likewise, marketing on its website for the XR, even to this day, revealed none of the connectivity shortcomings of the 2x2 MIMO antenna array in the iPhone XR. Instead, in comparing the iPhone XR to the iPhone XS and XS Max, Apple makes no mention at all of the different MIMO antenna arrays or what the effect of this difference is on usability.[16]

**D.     Apple's Warranties and Response to the Defect**

89.     Defendant issued to all original purchasers, including Plaintiffs and the other Class members, a written manufacturer's warranty. This One-Year Limited Warranty states that Apple "warrants the included hardware product and accessories against defects in materials and workmanship for one year from the date of original retail purchase."

90.     However, Apple knew, or at least should have known, of the defects at the time of sale or lease of the iPhone XR. Plaintiffs and Class members, however, had no such knowledge. The defects in the iPhone XR were and are latent in nature because they are not obvious or ascertainable upon reasonable examination and they were no disclosed in any advertising or marketing materials.

91.     Despite having more than adequate opportunity to successfully remedy the defect(s) in the iPhone XR, Apple has failed to do so, and in many instances has instead merely replaced defective iPhone XR with defective iPhone XR.

92.     Apple concealed, and continues to conceal, the fact that the iPhone XR contains an inferior 2x2 MIMO antenna array that renders the iPhone XR incapable of performing as reasonably expected. Apple also continues to conceal the fact that the replacement iPhone XRs it provides to purportedly repair the defect are equally defective. Despite its knowledge of this defect, Apple continues to sell defective iPhone XR smartphones. Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

---

[15] https://www.apple.com/newsroom/2018/10/iphone-xr-now-available-around-the-world/ (last accessed April 3, 2020).

[16] *See* https://www.apple.com/iphone/compare/?device1=iphoneXS&device2=iphoneXSmax&device3=iphoneXR (last accessed April 3, 2020).

93.     Plaintiffs and the other Class members reasonably relied on Apple's warranties regarding the quality, durability and other material characteristics of their iPhone XRs, including, but not limited to, the representation that the iPhone XRs contained no known defects (defects known to Apple) at the time of sale.

## VI.     CHOICE OF LAW ALLEGATIONS

94.     Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California' choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

95.     Because Apple is headquartered—and made all decisions relevant to these claims—in California, California has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state. Application of California law to Apple and the claims of all Class members would not be arbitrary or unfair.

## VII.     CLASS ALLEGATIONS

96.     Plaintiffs bring this action pursuant to the provisions of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed Nationwide Class:[17]

**All U.S. persons or entities who own or owned an iPhone XR.**

97.     Plaintiffs also bring this claim on behalf of the following Express Warranty Subclass:

> All members of the Nationwide Class who presented their phone to Apple, an authorized Apple reseller, or an authorized Apple service center for repair of connectivity issues, whose iPhone XRs were not fixed, or were replaced with iPhone XRs.

98.     Excluded from the proposed class and subclass are Apple, its employees, officers, directors, legal representatives, heirs, successors, subsidiaries and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed classes.

---

[17] Throughout this complaint, the Nationwide Class is referenced as such, or as the Class.

99.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

100.    This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification. More specifically, Plaintiffs can demonstrate:

101.    Numerosity. The members of the proposed class and subclass are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that that there are millions, if not tens of millions, of members of the proposed class and subclass,[18] the precise number of class and subclass members is unknown to them, but may be ascertained from Apple's books and records. In the 48 hour period following Plaintiffs' counsel's publication of their investigation of this matter, Plaintiffs' counsel was contacted by over 1,300 iPhone XR owners with connectivity complaints and that number continues to grow by hundreds per day. Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

102.    Commonality and Predominance. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

    a.     Whether Apple engaged in the conduct alleged in this Complaint;

    b.     Whether Apple designed, advertised, marketed, distributed, sold, or otherwise placed iPhone XRs into the stream of commerce in the United States;

---

[18] *See, e.g.*, https://wccftech.com/iphone-xr-top-selling-smartphone-of-2019-h1/ (stating that 26 million iPhone XR were sold in the first half of 2019 alone) (last accessed April 3, 2019). *See also* https://www.statista.com/statistics/804398/us-iphone-sales-by-model/ (48% of all U.S. iPhone sales in the first half of 2019 were iPhone XR); https://www.businessinsider.com/iphone-xr-apple-best-selling-phone-in-2019-omdia-report-2020-2 (iPhone XR was most popular smartphone in the world in 2019 with over 46 million units sold).

c.   Whether Apple advised owners of iPhone XRs (including Plaintiffs and putative class members) of the use of 2x2 MIMO antenna arrays in the iPhone XR and the affect the use of this component would have on connectivity;

d.   Whether Apple had a common policy of concealing its decision to use the less-capable 2x2 MIMO antenna array in the iPhone XR;

e.   Whether the iPhone XR contains marketing, design, or manufacturing defects;

f.   Whether Apple knew about the defect(s), and, if so, for how long;

g.   Whether Apple marketed the iPhone XR as a high-performance device that was both powerful and speedy and capable of operating like its other iPhone devices;

h.   Whether Apple's conduct, including but not limited to its alleged deceptive conduct, violates California consumer protection statutory or other laws, including the laws of other jurisdictions, as asserted herein;

i.   Whether Plaintiffs and members of the proposed classes are entitled to damages, as well as punitive, exemplary, or multiple damages, due to Apple's conduct as alleged in this Complaint, and if so, in what amounts; and

j.   Whether Plaintiffs and other putative class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this complaint.

103.   Typicality. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Apple's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3).

104.   Adequacy. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed class they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

105.   <u>Declaratory and Injunctive Relief</u>. Apple has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

106.   <u>Superiority</u>. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for members of the proposed classes to individually seek redress for Apple's wrongful conduct. Moreover, even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

## VIII.   CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY—
### MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. §§ 2301, *ET SEQ.*)

107.   Plaintiffs repeat and incorporate the allegations set forth above as if fully alleged herein.

108.   Plaintiffs Burst, Coleman, Martino, Sapkosky and Villagran ("Plaintiffs" for purposes of this cause of action) bring this claim on behalf of the Express Warranty Subclass.

109.   The defective iPhone XRs are consumer products as defined in 15 U.S.C. § 2301(1).

110.   Plaintiffs and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

111.   Apple is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

112.   Apple provided Plaintiffs and Subclass members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

CLASS ACTION COMPLAINT – 22
010908-11/1253595 V1

113.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

114.    In the course of selling the defective iPhone XR, Apple expressly warranted in its One-Year Limited Warranty that it "will either repair, replace, or refund your iPhone at its own discretion. Warranty benefits are in addition to rights provided under local consumer laws."

115.    Upon information and belief, Apple's standard warranty language is identical for all iPhone XRs sold nationwide.

116.    Apple did not provide at the time of sale, and has not provided since then, iPhone XR smartphones conforming to its express warranties.

117.    Apple breached and continues to breach express warranties because the defective connectivity technology/systems, including the 2x2 MIMO antenna arrays, were present in the iPhone XR at the time of sale.

118.    Apple breached and continues to breach express warranties because Apple did not (and does not) cover the full expenses associated with repairing and/or replacing the defective connectivity technology/systems in Plaintiffs' and the Subclass members' defective iPhone XRs.

119.    Plaintiffs have attempted to have their iPhone XRs repaired under the warranty. Apple breached and continues to breach express warranties because it either fails to repair the iPhone XR or merely replaces the defective iPhone XR with a new or refurbished iPhone XR and is unable to successfully repair the defects in Plaintiffs' and the Subclass members' iPhone XRs, despite having had reasonable opportunities to do so. As such, the express warranties fail their essential purpose.

120.    Apple's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

121.    Despite the fact that the iPhone XRs connectivity technology/systems continue to fail despite being "repaired" or "replaced," Apple continues to replace the defective iPhone XR with identical or substantially similar iPhone XRs. Thus, the defect is permanent in nature.

122.    Apple fraudulently concealed material information from Plaintiffs and the Subclass regarding the existence and extent of the defects. Apple also fraudulently concealed the material fact that the replacement iPhone XRs were defective. Therefore, any limitations imposed by Apple as to

the scope of its obligations under the express warranties to repair and replace defective parts and/or any disclaimers in the written warranties prepared by Apple that purport to preclude recovery by Plaintiffs or the Class members are unconscionable, both substantively and procedurally, and are unenforceable as a matter of law.

123.    Any such limitations or exclusions have been imposed unilaterally by Apple via adhesive, "take it or leave it" contracts with no ability by Plaintiffs or the Subclass members to negotiate the substance or coverage of the warranties, and Plaintiffs and the Subclass members did not have any meaningful choices of reasonably available alternative sources of supply of suitable iPhone XR smartphones free of the above unconscionable conditions.

124.    Furthermore, Apple's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Subclass members whole and because Apple has failed and/or refused to adequately provide the promised remedies within a reasonable time.

125.    Also, as alleged herein, at the time that Apple warranted and sold the iPhone XR, it knew that the smartphones were defective, and Apple wrongfully and fraudulently misrepresented and/or concealed material facts regarding the iPhone XR. Plaintiffs and the Subclass members were therefore induced to purchase the iPhone XR under false and/or fraudulent pretenses.

126.    Further, the enforcement under these circumstances of any limitations whatsoever on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner, and result in overly harsh or one-sided results that shock the conscience, especially in light of the fact that Apple simply placed replaced defective iPhone XRs with identically manufactured, and thus similarly defective iPhone XRs when those smartphones are brought in for repairs.

127.    Moreover, many of the damages flowing from the iPhone XRs cannot be resolved by the limited remedies contained in the express warranty as those incidental and consequential damages have already been suffered due to Apple's fraudulent conduct as alleged herein and due to their failure to provide such limited remedy within a reasonable time. Therefore, any limitation on

1    Plaintiffs' and the Subclass members' remedies would cause the available remedy to be insufficient

2    to make them whole.

3        128.    Apple was previously provided notice of the defects in the iPhone XR by numerous

4    customer complaints, letters, emails, and other communications from Subclass members, resellers,

5    technology press, and repair facilities.

6        129.    Plaintiffs and the Subclass members have suffered damages directly and proximately

7    caused by Apple's breach of the express warranty and are entitled to recover damages including, but

8    not limited to, out of pocket expenses and diminution of value.

9                        **COUNT II**
                 **BREACH OF IMPLIED WARRANTY—**
10               **MAGNUSON-MOSS WARRANTY ACT**
                   **(15 U.S.C. §§ 2301, *ET SEQ.*)**
11

12       130.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if

13   fully written herein.

14       131.    Plaintiffs bring this claim on behalf of the Nationwide Class.

15       132.    The iPhone XRs are "consumer products" within the meaning of 15 U.S.C. § 2301.

16       133.    Plaintiffs and members of the Class are "consumers" within the meaning of 15 U.S.C.

17   § 2301 because they are persons entitled under applicable state law to enforce against the warrantor

18   the obligations of its express and implied warranties.

19       134.    Apple is a "supplier" of consumer products to consumers and a "warrantor" within the

20   meaning of 15 U.S.C. § 2301.

21       135.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs

22   properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

23       136.    Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action

24   for any consumer who is damaged by the failure of a warrantor to comply with a written or implied

25   warranty.

26       137.    Apple made written and implied warranties regarding the iPhone XR to Plaintiffs and

27   Class members within the meaning of 15 U.S.C. § 2301. Apple provided Plaintiffs and other Class

28

members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

138.    Apple breached the implied warranty of merchantability because the iPhone XR was not fit for the ordinary purpose for which such goods are used. As described throughout the Complaint, the iPhone XR contains defects which render them inconvenient, and imperfect such that Plaintiffs and Class members would not have purchased the iPhone XR had they known of the defects.

139.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Apple notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

140.    Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their iPhone XRs, in an amount to be proven at trial.

141.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

142.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Apple's violation of its written and/or implied warranties.

**COUNT III**
**VIOLATIONS OF THE CALIFORNIA CONSUMER**
**LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750, *ET SEQ.*)**

143.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

144.    Plaintiffs bring this claim on behalf of the Nationwide Class.

145.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

146.   The iPhone XRs are "goods" as defined in Cal. Civ. Code § 1761(a).

147.   Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other Class members, and Apple are "persons" as defined in Cal. Civ. Code § 1761(c).

148.   As alleged herein, Apple made misleading representations and omissions concerning the benefits, performance, and reliability of the iPhone XR, including the connectivity technology/system.

149.   In purchasing the iPhone XR, Plaintiffs and other Class members were deceived by Apple's failure to disclose its knowledge of the defect in its iPhone XR.

150.   Apple's conduct as described herein was and is in violation of the CLRA. Apple's conduct violates at least the following enumerated CLRA provisions:

  i.  Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

  ii. Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

  iii. Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

  iv. Cal Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

151.   Apple intentionally and knowingly misrepresented and omitted material facts regarding the iPhone XR, specifically regarding the connectivity technology/system, with an intent to mislead Plaintiffs and Class members.

152.   In purchasing the iPhone XR, Plaintiffs and other Class members were deceived by Apple's failure to disclose its knowledge of the defect in the connectivity technology/system.

153.    Plaintiffs and other Class members had no way of knowing Apple's representations were false, misleading, and incomplete or knowing the true nature of the iPhone XR.

154.    As alleged herein, Apple engaged in a pattern of deception and public silence in the face of a known defect with its iPhone XR. Plaintiffs and other Class members did not, and could not, unravel Apple's deception on their own.

155.    Apple knew or should have known its conduct violated the CLRA.

156.    Apple owed Plaintiffs and the Class members a duty to disclose the truth about its faulty iPhone XR because Apple:

     i.     Possessed exclusive knowledge of the defect in the iPhone XR;

     ii.     Intentionally concealed the foregoing from Plaintiffs and Class members; and/or

     iii.     Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the iPhone XR was defective.

157.    Apple had a duty to disclose that the connectivity technology/system in the iPhone XR was fundamentally flawed as described herein, because Plaintiffs and the other Class members relied on Apple's material misrepresentations and omissions regarding the features of the iPhone XR.

158.    Apple's conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the iPhone XR and suffered harm as alleged herein.

159.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Apple's conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their iPhone XRs that have suffered a diminution in value.

160.    Apple's violations cause continuing injuries to Plaintiffs and other Class members.

161.    Apple's unlawful acts and practices complained of herein affect the public interest.

162.    Apple knew of the defective connectivity technology/system, and that the iPhone XR was materially compromised by such defects.

163.    The facts concealed and omitted by Apple from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding

1   whether to purchase an iPhone XR or pay a lower price. Had Plaintiffs and the other Class members

2   known about the defective nature of the iPhone XR, they would not have purchased the iPhone XR

3   or would not have paid the prices they paid.

4          164.    Plaintiffs' and the other Class members' injuries were proximately caused by Apple's

5   unlawful and deceptive business practices.

6          165.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Apple from

7   engaging in the methods, acts, or practices alleged herein, including further concealment of the

8   defect in the iPhone XR.

9          166.    Plaintiffs sent out a notice letter on April 6, 2020.

10          167.    If Apple does not rectify its conduct within 30 days, Plaintiffs will amend this

11   complaint to request the following forms of relief pursuant to Cal. Civ. Code § 1782:

12            i.    Actual damages;

13            ii.    Restitution of money to Plaintiffs and Class members, and the general public;

14            iii.    Punitive damages;

15            iv.    An additional award of up to $5,000 to each Plaintiffs and any Class member

16                who is a "senior citizen";

17            v.    Attorneys' fees and costs; and

18            vi.    Other relief that this Court deems proper.

**COUNT IV**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.)**

21          168.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth

22   herein.

23          169.    Plaintiffs bring this claim on behalf of the Nationwide Class.

24          170.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et*

25   *seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act

26   or practice and unfair, deceptive, untrue, or misleading advertising."

27          171.    Apple's conduct, as described herein, was and is in violation of the UCL. Apple's

28   conduct violates the UCL in at least the following ways:

CLASS ACTION COMPLAINT – 29
010908-11/1253595 V1

      i.     By failing to disclose that the connectivity technology/system in the iPhone XR was defective;

      ii.    By selling iPhone XR s that suffer from such defects;

     iii.   By knowingly and intentionally concealing from Plaintiffs and the other Class members that the iPhone XR was defective;

     iv.   By marketing iPhone XRs as reliable, powerful, fast, and defect free, with cutting edge technology, all while knowing of the defect related to the connectivity technology/system; and

      v.    By violating other California laws, including California consumer protection laws.

172. Apple intentionally and knowingly misrepresented and omitted material facts regarding the iPhone XR with intent to mislead Plaintiffs and the other Class members.

173. In purchasing the iPhone XRs, Plaintiffs and the other Class members were deceived by Apple's failure to disclose the defect related to the connectivity technology/system.

174. Plaintiffs and the other Class members reasonably relied upon Apple's false misrepresentations and omissions. They had no way of knowing that Apple's representations were false, misleading, and incomplete. As alleged herein, Apple engaged in a pattern of deception and public silence in the face of a known defect with its iPhone XR. Plaintiffs and the other Class members did not, and could not, unravel Apple's deception on their own.

175. Apple knew or should have known that its conduct violated the UCL.

176. Apple owed Plaintiffs and the other Class members a duty to disclose the truth about its iPhone XR because Apple:

      i.    Possessed exclusive knowledge of the defect in the iPhone XR;

      ii.   Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

     iii.  Made incomplete representations by failing to warn the public or to publicly admit that the iPhone XR was defective.

177.    Apple had a duty to disclose that the connectivity technology/system in the iPhone XR was fundamentally flawed as described herein, because Plaintiffs and the other Class members relied on Apple's material misrepresentations and omissions.

178.    Apple's conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the iPhone XR and suffered harm as alleged herein.

179.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Apple's conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their iPhone XRs that have suffered a diminution in value.

180.    Apple's violations cause continuing injuries to Plaintiffs and Class members.

181.    Apple's unlawful acts and practices complained of herein affect the public interest.

182.    Apple's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases of their iPhone XRs. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased iPhone XRs, would not have purchased the iPhone XR at the prices they paid, and/or would have purchased alternative smartphones that did not contain defective connectivity technology/systems that failed to live up to reasonable consumer expectations or industry standards.

183.    Accordingly, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Apple's misrepresentations and omissions.

184.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Apple acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

**COUNT V**
**FRAUD BY CONCEALMENT**
**(BASED ON CALIFORNIA LAW)**

185.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

186.    Plaintiffs bring this claim on behalf of the Nationwide Class.

187.    Apple intentionally concealed that the iPhone XR is defective.

188.    Apple further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each iPhone XR and on its website, that the iPhone XRs it was selling had no significant defects, that the iPhone XR was reliable, fast, and would perform and operate properly.

189.    Apple knew about the defect in the iPhone XR when these representations were made.

190.    The iPhone XRs purchased by Plaintiffs and the other Class members contained defective connectivity technology/systems.

191.    Apple had a duty to disclose that the iPhone XR contained a fundamental defect as alleged herein, because Plaintiffs and the other Class members relied on Apple's material representations.

192.    As alleged herein, at all relevant times, Apple has held out the iPhone XR to be free from defects such as the defect related to the connectivity technology/system. Apple touted and continues to tout the many benefits and advantages of the iPhone XR, but nonetheless failed to disclose important facts related to the defect. This made Apple's other disclosures about the iPhone XR deceptive.

193.    The truth about the defective iPhone XR was known only to Apple; Plaintiffs and the other Class members did not know of these facts and Apple actively concealed these facts from Plaintiffs and Class members.

194.    Plaintiffs and the other Class members reasonably relied upon Apple's deception. They had no way of knowing that Apple's representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not, unravel Apple's deception on their own. Rather, Apple intended to deceive Plaintiffs and Class members by concealing the true facts about the iPhone XR.

195.    Apple's false representations and omissions were material to consumers because they concerned qualities of the iPhone XR that played a significant role in the value of the iPhone XR.

196.    Apple had a duty to disclose the connectivity technology/system defect and violations with respect to the iPhone XR because details of the true facts were known and/or accessible only to

Apple, because Apple had exclusive knowledge as to such facts, and because Apple knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

197.    Apple also had a duty to disclose because it made general affirmative representations about the technology and innovations included with its iPhone XR, without telling consumers that one of the features had a fundamental defect that would affect the quality, speed and performance of the iPhone XR.

198.    Apple's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the connectivity technology/system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the iPhone XR purchased by Plaintiffs and Class members.

199.    Apple has still not made full and adequate disclosures and continues to defraud Plaintiffs and Class members by concealing material information regarding the defect in the iPhone XR.

200.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for iPhone XRs with faulty connectivity technology/systems, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Apple was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

201.    Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own iPhone XRs that are diminished in value as a result of Apple's concealment of the true quality of those smartphones. Had Plaintiffs and Class members been aware of the defect in the iPhone XR, and the Company's disregard for the truth, Plaintiffs and Class members would have paid less for their iPhone XR or would not have purchased them at all.

202.    The value of Plaintiffs' and Class members' iPhone XR has diminished as a result of Apple's fraudulent concealment of the defective connectivity technology/system, which has made

1    any reasonable consumer reluctant to purchase an iPhone XR, let alone pay what otherwise would

2    have been fair market value for the iPhone XR.

3         203.    Accordingly, Apple is liable to Plaintiffs and Class members for damages in an

4    amount to be proven at trial.

5         204.    Apple's acts were done wantonly, maliciously, oppressively, deliberately, with intent

6    to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations

7    that Apple made to them, in order to enrich Apple. Apple's conduct warrants an assessment of

8    punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be

9    determined according to proof.

10                                    **COUNT VI**
                   **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
11                               **(CAL. COM. CODE § 2314)**

12        205.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth

13   herein.

14        206.    Plaintiffs bring this claim on behalf of the Nationwide Class.

15        207.    Apple is and was at all relevant times a merchant with respect to smartphones such as

16   the iPhone XR under Cal. Com. Code § 2104.

17        208.    A warranty that the iPhone XRs were in merchantable condition was implied by law

18   in the instant transaction, pursuant to Cal. Com. Code § 2314.

19        209.    Apple marketed the iPhone XRs as reliable, fast, innovative and technologically

20   advanced smartphones that would functions as reasonably expected by consumers and in accordance

21   with industry standards. Such representations formed the basis of the bargain in Plaintiffs' and Class

22   members' decisions to purchase the iPhone XR.

23        210.    Plaintiffs and other Class members purchased the iPhone XR from Apple, or through

24   Apple's authorized agents for retail sales. At all relevant times, Apple was the manufacturer,

25   distributor, warrantor, and/or seller of the iPhone XRs.

26        211.    Apple knew or had reason to know of the specific use for which the iPhone XRs were

27   purchased.

28

CLASS ACTION COMPLAINT – 34
010908-11/1253595 V1

212. Because of the defect in the connectivity technology/system, the iPhone XRs were not in merchantable condition when sold and are not fit for the ordinary purpose of providing reliable voice and data telecommunications.

213. Apple knew about the defect in the iPhone XR, allowing Apple to cure its breach of its warranty if it chose.

214. Apple's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Apple's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Apple's warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and other Class members, and Apple knew of the defect at the time of sale.

215. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Apple's conduct described herein. Affording Apple a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

216. Accordingly, Apple is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

## IX.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and that of the proposed classes, and against Defendant, as follows:

A. Certification of the proposed Nationwide Class, including appointment of Plaintiffs' counsel as class counsel;

B. Damages, including punitive damages; restitution; penalties; and disgorgement in amounts to be determined at trial;

C. An order requiring Apple to pay both pre- and post-judgment interest on any amounts awarded;

1   D.  An award of costs, expenses, and attorneys' fees;

2   E.  Orders temporarily and then permanently enjoining Apple from continuing the unfair and deceptive business practices alleged in this Complaint, in particular the ongoing sale of the iPhone XR without replacing the defective connectivity technology/system, and orders effecting the correction or mitigation of the unfair and deceptive practices alleged herein; and

   F.  Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: April 6, 2020     HAGENS BERMAN SOBOL SHAPIRO LLP

           */s/ Shana E. Scarlett*
           Shana E. Scarlett (SBN 217895)
           Ben Harrington (SBN 313877)
           HAGENS BERMAN SOBOL SHAPIRO LLP
           715 Hearst Avenue, Suite 202
           Berkeley, CA 94710
           Telephone: (510) 725-3000
           Facsimile: (510) 725-3001
           Email: shanas@hbsslaw.com
           Email: benh@hbsslaw.com

           Steve W. Berman (*pro hac vice forthcoming*)
           Thomas E. Loeser (SBN 202724)
           HAGENS BERMAN SOBOL SHAPIRO LLP
           1301 Second Avenue, Suite 2000
           Seattle, WA 98101
           Telephone: (206) 623-7292
           Facsimile: (206) 623-0594
           Email: steve@hbsslaw.com
           Email: toml@hbsslaw.com

           *Attorneys for Plaintiffs and the Proposed Classes*