Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: toml@hbsslaw.com

Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
Christopher E. Stiner (SBN 276033)
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
Email: twolfson@ahdootwolfson.com
Email: tmaya@ahdootwolfson.com
Email: bking@ahdootwolfson.com
Email: cstiner@ahdootwolfson.com

*Attorneys for Plaintiffs*
(Additional counsel on signature page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELAINE ANDERSON, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | No. 3:20-cv-02328-WHO<br><br>**PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   October 7, 2020<br>Time:   2:00 p.m.<br>Dept:   Courtroom 2 – 17th Floor<br>Judge:  Hon. William H. Orrick<br><br>First Am. Compl. filed: May 28, 2020 |

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF ARGUMENT ................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................3

III.     ARGUMENT ........................................................................................................5

      A.     Plaintiffs Have Standing to Pursue Fraud and Injunctive Relief, and Adequately Plead Restitution in the Alternative ..........................................5

           1.     Plaintiffs have Article III standing to pursue their fraud claims. ...................5

           2.     Plaintiffs have standing to seek injunctive relief............................5

           3.     Plaintiffs can plead restitution in the alternative at the pleadings stage. ...................................................................................................6

      B.     California Law Can Apply to the Claims of Non-California Plaintiffs.....................7

      C.     Plaintiffs Adequately Plead Their Fraud Claims ..........................................8

           1.     The non-California fraud allegations are sufficiently pled..............8

           2.     Plaintiffs satisfy Rule 9(b). ......................................................9

                a.     Plaintiffs adequately plead the who, what, when, where, and how of their fraud claims ..........................................9

                b.     Plaintiffs adequately plead reliance....................................10

           3.     Plaintiffs adequately allege omission claims............................13

                a.     Whether Apple accurately disclosed the iPhone XR's connectivity system capability is question of fact not properly decided on a motion to dismiss. ..........................13

                b.     Plaintiffs establish an omission. .......................................14

                c.     Plaintiffs establish a duty to disclose................................15

                d.     Plaintiffs allege materiality..............................................18

           4.     Plaintiffs' adequately allege UCL and other statutory "unfair" claims........................................................................................18

      D.     Plaintiffs Properly Plead Their Warranty Claims.........................................19

           1.     The non-California warranty claims are sufficiently pled...........19

           2.     Plaintiffs' express warranty claim (Count I) was properly pled.................19

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – i
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

3.  There is no controlling precedent assessing Apple's hardware
warranty. ...............................................................................................21

4.  Apple does not meet its burden to show its hardware warranty
disclaimer is conspicuous. ...................................................................22

5.  Apple's disclaimer is unconscionable. .................................................24

6.  Plaintiffs do not lack privity required for their warranty claims. ..................25

E.  Plaintiffs Adequately Allege Breach of the Covenant of Good Faith
and Fair Dealing .................................................................................................26

F.  The Economic Loss Doctrine Does Not Bar Common Law Fraudulent
Concealment Claims...........................................................................................27

IV.  CONCLUSION ...............................................................................................29

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – ii
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014)................................................................16

*Adobe Sys. Inc. v. Christenson*,
  809 F.3d 1071 (9th Cir. 2015)........................................................................22

*Albert v. Carovano*,
  851 F.2d 561 (2d Cir. 1988) ..........................................................................19

*Allen v. G.D. Searle & Co.*,
  708 F. Supp. 1142 (D. Or. 1989) ....................................................................22

*Anthony v. Yahoo! Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006)............................................................10

*In re Apple Inc. Device Performance Litigation*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019)..............................................................8

*Ayers v. United States*,
  277 F.3d 821 (6th Cir. 2002) ..........................................................................20

*Baranco v. Ford Motor Co.*,
  294 F. Supp. 3d 950 (N.D. Cal. 2018)........................................................11, 12

*Barrington Corp. v. Patrick Lumber Co.*,
  447 So. 2d 785 (Ala. Civ. App. 1984)..............................................................24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................9

*Bennett v. Spear*,
  520 U.S. 154 (1997) .........................................................................................5

*Berenblat v. Apple, Inc.*,
  2010 WL 1460297 (N.D. Cal. Apr. 9, 2010)......................................................25

*Boyd v. Avanquest N. Am. Inc.*,
  2014 WL 7183988 (N.D. Cal. Dec. 16, 2014) ...................................................26

*Brickman v. Fitbit, Inc.*,
  2016 WL 3844327 (N.D. Cal. July 15, 2016) ..............................................21, 22

*Bros. v. Hewlett-Packard Co.*,
  2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ...................................................25

*Bryde v. General Motors, LLC,*
  2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) ....................................................... 10

*Cal. Shoppers, Inc. v. Royal Globe Ins. Co.,*
  175 Cal. App. 3d 1 (1985) ...................................................................................... 26

*Canyon Cty. v. Syngenta Seeds, Inc.,*
  519 F.3d 969 (9th Cir. 2008) .................................................................................... 5

*Carlson v. Gen. Motors Corp.,*
  883 F.2d 287 (4th Cir. 1989) .................................................................................. 25

*Chavers v. Nat'l Sec. Fire & Cas. Co.,*
  405 So. 2d 1 (Ala. 1981) ......................................................................................... 28

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.,*
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ...................................................................... 5

*Citicorp Sav. v. Rucker,*
  808, 692 N.E.2d 1319 (Ill. App. Ct. 1998) ............................................................. 28

*Clark v. LG Elecs. U.S.A., Inc.,*
  2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) .................................................... 23, 25

*Colgate v. JUUL Labs, Inc.,*
  402 F. Supp. 3d 728 (N.D. Cal. 2019) .................................................................... 12

*Cooper v. Samsung Elecs. Am., Inc.,*
  2008 WL 4513924 (D.N.J. Sept. 30, 2008) ............................................................ 25

*Cox v. CSX Intermodal, Inc.,*
  732 So. 2d 1092 (Fla. Dist. Ct. App. 1999) ........................................................... 28

*In re Craftmatic Sec. Litig. v. Kraftsow,*
  890 F.2d 628 (3d Cir. 1989) ................................................................................... 21

*Daniel v. Ford Motor Co.,*
  806 F.3d 1217 (9th Cir. 2015) ......................................................................... *passim*

*Darisse v. Nest Labs, Inc.,*
  2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) .......................................................... 8

*Davidson v. Apple, Inc.,*
  2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ..................................................... 21, 25

*Davidson v. Kimberly-Clark Corp.,*
  889 F.3d 956 (9th Cir. 2018) .................................................................................... 6

*Deseret Trust Co. v. Unique Inv. Corp.,*
  2019 WL 7938223 (C.D. Cal. Sept. 10, 2019) .................................................. 27, 28

*Dorman v. Int'l Harvester Co.*,
    46 Cal. App. 3d 11 (1975)..................................................................................23

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014)..............................................................8

*Elias v. Hewlett-Packard Co.*,
    2014 WL 493034 (N.D. Cal. Feb. 5, 2014).....................................................16

*Falk v. Gen. Motors. Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007)...................................................9, 16, 17

*Fenerjian v. Nong Shim Co., Ltd.*,
    2015 WL 13000357 (N.D. Cal. Mar. 30, 2015) ..............................................7

*Finney v. Ford Motor Co.*,
    2018 WL 2552266 (N.D. Cal. June 4, 2018)...................................................27

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
    2019 WL 3000646 (C.D. Cal. May 22, 2019)................................................27

*Foseid v. State Bank*,
    541 N.W.2d 203 (Wis. Ct. App. 1995)...........................................................28

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014)................................................................7

*Funke v. Sorin Grp. USA, Inc.*,
    147 F. Supp. 3d 1017 (C.D. Cal. 2015)......................................................20, 21

*Gerstle v. Am. Honda Motor Co.*,
    2017 WL 2797810 (N.D. Cal. June 28, 2017)...............................................7, 8

*In re Google AdWords Litig.*,
    2011 WL 7109217 (N.D. Cal. Mar. 17, 2011) ...............................................10

*In re Google Phone Litig.*,
    2012 WL 3155571 (N.D. Cal. Aug. 2, 2012)..................................................22

*Governors Club, Inc. v. Governors Club Ltd. P'ship*,
    567 S.E.2d 781 (N.C. Ct. App. 2002)............................................................28

*Grace v. Apple Inc.*,
    2017 WL 3232464 (N.D. Cal. July 28, 2017).............................................18, 19

*Gredell v. Wyeth Laboratories, Inc.*,
    854 N.E.2d 752 (Ill. App. Ct. 2006)...............................................................11

*Hall v. Sea World Entertainment, Inc.*,
    2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ................................................5

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – v
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

*Hauter v. Zogarts,*
   534 P.2d 377 (Cal. 1975)........................................................................................23

*Highmark W. Va., Inc. v. Jamie,*
   655 S.E.2d 509 (W. Va. 2007) .............................................................................28

*Hofmann v. Fifth Generation, Inc.,*
   2015 WL 5440330 (S.D. Cal. Mar. 18, 2015) .....................................................16

*Indus. Elec. Supply, Inc. v. Lytle Mfg., L.L.C.,*
   226 S.W.3d 1 (Ark. Ct. App. 2006).....................................................................24

*In re iPhone 4S Consumer Litig.,*
   2013 WL 3829653 (N.D. Cal. July 23, 2013).....................................................22

*In re iPhone 4s Consumer Litig.,*
   637 F. App'x 414 (9th Cir. 2016).........................................................................18

*In re iPhone Application Litigation,*
   2011 WL 4403963 (N.D. Cal. Sept. 2011)....................................................25, 26

*JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am., Inc.,*
   997 N.Y.S.2d 270 (N.Y. Sup. Ct. 2014)..............................................................28

*Kaloti Enters., Inc. v. Kellogg Sales Co.,*
   699 N.W.2d 205 (Wis. 2005) ..............................................................................27

*Kearney v. BMW,*
   2018 WL 4144683 (D.N.J. Aug. 29, 2018).........................................................27

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009)...............................................................................9

*Kinderstart.com LLC v. Google, Inc.,*
   2006 WL 3246596 (N.D. Cal. July 13, 2006) .....................................................26

*Kirkpatrick v. Cty. of Washoe,*
   843 F.3d 784 (9th Cir. 2016) (*en banc*)...............................................................19

*Lazar v. Superior Ct.,*
   909 P.2d 981 (Cal. 1996)......................................................................................27

*Lilly v. Jamba Juice Co.,*
   2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ......................................................6

*Littlejohn v. Parrish,*
   839 N.E.2d 49 (Ohio Ct. App. 2005) ..................................................................28

*Luong v. Subaru of Am., Inc.,*
   2018 WL 2047646 (N.D. Cal. May 2, 2018).........................................................6

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – vi
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

*Lyons v. Farmers Ins. Exch.*,
    26 S.W.3d 888 (Tenn. Ct. App. 2000)...........................................................................28

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014).........................................................................11

*Mattero v. Costco Wholesale Corp.*,
    336 F. Supp. 3d 1109 (N.D. Cal. 2018).......................................................................14

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)........................................................................................7

*Mbigi v. Wells Fargo Home Mortg.*,
    785 S.E.2d 8 (Ga. Ct. App. 2016) ..............................................................................28

*McCalden v. California Library Ass'n*,
    955 F.2d 1214 (9th Cir. 1990).....................................................................................20

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014)...........................................................................21

*Minneapolis-Moline Power Implement Co. v. Parent*,
    17 P.2d 1088 (Mont. 1932)..........................................................................................24

*Estate of Morris v. Morris*,
    329 S.W.3d 779 (Tenn. Ct. App. 2009).......................................................................15

*Murillo v. Kohl's Corp.*,
    197 F. Supp. 3d 1119 (E.D. Wis. 2016) ......................................................................13

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014).............................................................16, 17, 24, 27

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d at 961–62 ............................................................................................17

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
    2012 WL 1698368 (C.D. Cal. May 15, 2012)..............................................................22

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018).........................................................................25

*Old Nat'l Bank v. Kelly*,
    31 N.E.3d 522 (Ind. Ct. App. 2015)............................................................................28

*Onyx Envtl. Servs., LLC v. Maison*,
    407 F. Supp. 2d 874 (N.D. Ohio 2005) .......................................................................27

*Peloza v. Capistrano Unified Sch. Dist.*,
    37 F.3d 517 (9th Cir. 1994) .........................................................................................19

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – vii
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

*Phillips v. Apple Inc.*,
   2016 WL 1579693 (N.D. Cal. Apr. 19, 2016)................................................5, 12

*Pitts v. Jackson Nat'l Life Ins. Co.*,
   574 S.E.2d 502 (S.C. Ct. App. 2002) ............................................................15

*Plaintiffs' State & Sec. Law Settlement Class Counsel v. Bank of N.Y. Mellon*,
   43 Misc. 3d 887 (N.Y. Sup. Ct. 2014)...........................................................17

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) .........................................................................24

*Questar Builders, Inc. v. CB Flooring, LLC*,
   978 A.2d 651 (Md. Ct. App. 2009) ...............................................................28

*R Power Biofuels, LLC v. Chemex LLC*,
   2017 WL 1164296 (N.D. Cal. Mar. 29, 2017)...............................................27

*RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.*,
   827 S.E.2d 762 (Va. 2019) ............................................................................28

*Roley v. Google LLC*,
   2019 WL 1779974 (N.D. Cal. Apr. 23, 2019).................................................8

*Rubio v Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) .......................................................................18

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164 (Cal. Ct. App. 2015)................................................18

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*,
   890 F.2d 108 (9th Cir. 1989) .........................................................................23

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018)......................................................11, 12

*Sloan v. General Motors LLC*,
   2020 WL 1955643 (N.D. Cal. Apr. 23, 2020)...............................................28

*Sonner v. Premier Nutrition Corp.*,
   962 F.3d 1072 (9th Cir. 2020) ....................................................................6, 7

*Standard Fire Ins. Co. v. Stephenson*,
   963 S.W.2d 81 (Tex. App. 1997) ..................................................................28

*Stevenson v. City of Seat Pleasant, Md.*,
   743 F.3d 411 (4th Cir. 2014) .........................................................................19

*Tomek v. Apple, Inc.*,
   2012 WL 2857035 (N.D. Cal. July 11, 2012) ...............................................14

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – viii
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ........................................................................ 9

*In re Volkswagen Clean Diesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
    349 F. Supp. 3d 881 (N.D. Cal. 2018) ........................................................... 11

*In re Volkswagen Timing Chain Prod. Liability Litig.*,
    2017 WL 1902160 (D.N.J. May 8, 2017) ....................................................... 16

*W.S. Maxwell Co. v. S. Or. Gas Corp.*,
    74 P.2d 594 (Or. 1937) .................................................................................. 24

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ......................................................................... 14

*Williams v. Riedman*,
    529 S.E.2d 28 (S.C. Ct. App. 2000) ............................................................... 28

*Wolph v. Acer America Corp.*,
    2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) .......................................... 16, 17

*Wool v. Tandem Computers, Inc.*,
    818 F.2d 1433 (9th Cir. 1987) ....................................................................... 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......................................................... 15

*Yetter v. Ford Motor Co.*,
    2019 WL 3254249 (N.D. Cal. July 19, 2019) ................................................. 27

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 9

Fed. R. Civ. P. 8(d)(2) ........................................................................................... 20

# I.   SUMMARY OF ARGUMENT

Defendant Apple, Inc. ("Apple") designed, manufactured, and sold their iPhone XR smartphone with the knowledge that the iPhone XR suffered from a connectivity defect affecting the device's ability to connect to cellular voice, data and Wi-Fi networks. Consumers, including the named Plaintiffs, expected that they were purchasing a smartphone that would connect to available networks and were given no reason by Apple to expect that when they purchased the iPhone XR, they were purchasing a phone that would suffer from a defect that undermines the primary function of a smartphone—to send and receive calls and text messages and provide reliable connection to data networks. Had Plaintiffs and Class members known about the connectivity defect, they would have paid less for the smartphones or would have selected a different iPhone model or a different manufacturer's smartphone that did not suffer from the connectivity defect. At this stage of the proceedings, the allegations in the First Amended Class Action Complaint ("FAC") are sufficient to survive Apple's motion to dismiss.

Apple's motion to dismiss should be denied for the following reasons:

**Plaintiffs have standing to pursue their fraud claims and injunctive relief.** For Article III standing, Plaintiffs satisfied their burden by alleging that Apple made misrepresentations and omissions about the efficacy of the connectivity system in the iPhone XR, and Plaintiffs would not have bought an iPhone XR, or would have paid less for it, had they known about the alleged connectivity defect. Plaintiffs also allege that they would consider purchasing another iPhone model, which confers standing for injunctive relief.

**California law should apply to non-California Plaintiffs.** Apple's marketing and advertising of the iPhone XR, and the decision not to disclose the connectivity defect, is harmful conduct that originated in California and supports applying California law to all Plaintiffs, among other reasons. At the very least, the propriety of applying California law to the claims of non-California Plaintiffs is not properly decided on this motion to dismiss, as the choice-of-law analysis involving sixty-eight (68) plaintiffs from thirty-two (32) states will require development of the factual record.

1       **Plaintiffs adequately plead their fraud claims.** Plaintiffs' fraud claims, which are entirely

2 based on Apple's omissions and failure to disclose the connectivity defect, are well pled. For

3 purposes of Rule 9(b), Plaintiffs allege the requisite "who," "what," "when," "where," and "how."

4 Contrary to Apple's arguments, Plaintiffs do not need to allege that they saw any particular

5 fraudulent statement and relied on it to plead their omission-based fraud claims. Rather, to plead

6 reliance on an omission, a plaintiff must allege that "had the omitted information been disclosed, [the

7 plaintiff] would have been aware of it and behaved differently." *See Daniel v. Ford Motor Co.*, 806

8 F.3d 1217, 1225 (9th Cir. 2015) (citation omitted). Plaintiffs make such allegations here. Apple's

9 remaining arguments regarding the adequacy of Plaintiffs' allegations to support their fraud claim

10 are unavailing—whether Apple accurately disclosed the iPhone XR's connectivity system capability

11 is a question of fact not properly decided on a motion to dismiss; Apple's partial misrepresentations,

12 superior knowledge, and active concealment of the defect all support a finding that Apple had a duty

13 to disclose; and Apple cannot credibly argue that information regarding the connectivity defect

14 affecting the iPhone XR's ability to reliably connect to cellular and Wi-Fi networks would not be

15 material to consumers.

16       **Plaintiffs adequately plead their "unfair" claims.** Plaintiffs have alleged that Apple's

17 conduct harmed the Class without any countervailing benefit or utility. Such allegations, along with

18 Plaintiffs' successful pleading of omission-based fraud claims, support Plaintiffs' "unfair" claims.

19       **Plaintiffs properly plead their warranty claims.** Plaintiffs' allegations support the express

20 warranty claim, as further discovery will be required to determine whether the connectivity defect

21 was the result of Apple's manufacturing or design decisions. Furthermore, the implied warranty

22 claim is not properly dismissed here because, among other reasons, whether Plaintiffs had actual or

23 constructive knowledge of Apple's disclaimer of the implied warranty is a fact-dependent question,

24 and Apple's disclaimer was not conspicuous and was unconscionable.

25       **Plaintiffs adequately allege breach of the covenant of good faith and fair dealing.**

26 Apple's conduct, including but not limited to failing to disclose the connectivity defect to consumers,

27 does not involve a breach of a specific contractual provision and therefore properly supports a claim

28 of breach of the implied covenant of good faith and fair dealing.

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – 2
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

1    For these reasons, as fully set forth below, Apple's motion should be denied.

2    **II.    FACTUAL BACKGROUND**

3    Apple released the iPhone XR on October 26, 2018. FAC ¶ 378. Unlike the earlier released

4    iPhone XS and XS Max, however, the iPhone XR was released with a 2x2 MIMO antenna, whereas

5    the new flagship model XS and XS Max were equipped with a 4x4 MIMO antenna. *Id.* Apple's press

6    release announcing the iPhone XR, however, stated that the iPhone XR "combine[d] breakthrough

7    technologies from iPhone XS in an all-screen glass and aluminum design." *Id.* ¶ 396.

8    In reality, far from offering the same "breakthrough technologies" of the iPhone XS and XS

9    Max, the iPhone XR's connectivity system featuring a 2x2 MIMO antenna is only capable of two

10   streams of data for transmit and receive pathways, while the 4x4 MIMO antenna in the iPhone XS

11   and XS Max offers four streams. *Id.* ¶ 379. Testing has revealed that the increased pathways of the

12   4x4 MIMO antenna affects not only download and upload data speeds, but also network

13   connectivity. *Id.* ¶ 380. In practical terms, given the same signal strength from a cellular or Wi-Fi

14   antenna, connectivity systems utilizing a 2x2 MIMO antenna do not connect as well and suffer from

15   an inferior signal connection compared to connectivity systems utilizing the superior 4x4 MIMO

16   antenna. *Id.*

17   Less than two months after the release of the iPhone XR, articles critical of the iPhone XR's

18   connectivity issues appeared in the consumer electronics press. *Id.* ¶ 390. Articles described the

19   iPhone XR's "less capable" wireless technology as compared to the iPhone XS. *Id.* ¶ 390.

20   Specifically, one publication noted that even when connected to a network only capable of a 2x2

21   MIMO connection, the iPhone XR materially underperformed the iPhone XS and XS Max, and

22   price-competitive models to the iPhone XR from other manufacturers. *Id.* ¶ 391. Another review

23   detailed how the iPhone XR's lack of a 4x4 MIMO antenna meant that its "LTE speeds and

24   reception quality track significantly behind the XS at pretty much all levels." *Id.* ¶ 392.

25   Soon after its release, consumers also complained about the iPhone XR's connectivity

26   defects. For example, a customer posted a message on Apple's online forum on November 20, 2018,

27   and noted that the "iPhone XR is having horrible lte connectivity issues." *Id.* ¶ 381. Several weeks

28   later, another consumer posted on Apple's forum that the iPhone XR "just stops data and call

connectivity, even though the cellular reception[] bar is showing full signal." *Id.* ¶ 382. Consumers throughout 2019 and 2020 continued to complain about the iPhone XR's cellular and Wi-Fi connectivity issues on Apple's forums and other online forums. *Id.* ¶¶ 383–387. These consumer complaints mirror the experiences of the sixty-eight (68) named Plaintiffs, who all suffered from connectivity defects that ranged from an inability to connect to available Wi-Fi and data networks to dropped calls and the failure to send and receive text messages. *Id.* ¶¶ 12–377.

Apple was undoubtedly aware of the iPhone XR's connectivity defects. To start, Apple engages in rigorous pre-release testing. *Id.* ¶ 395. Hundreds of employees are provided with pre-production units in the months leading up to a product launch and report back their experiences to Apple. *Id.* There is little doubt that Apple's tests specifically include call quality and data speeds, given the fact that Apple is known to test its products for "durability and performance" and the consumer electronics press, when reviewing new product offerings, tests for call quality and data speeds, because they are important consumer attributes. *Id.* ¶ 395. In addition, after the iPhone XR's release, there were several reports that Apple would attempt to resolve the iPhone XR connectivity issues by switching the phone to a 4x4 MIMO antenna for the Fall 2019 product release, although there is no evidence that it did that. *Id.* ¶ 394. Apple also admitted in January 2020 that iPhone XR users were having network connectivity issues on O2, a major cellular network in the United Kingdom. *Id.* ¶ 7.

Despite its knowledge about the Apple iPhone XR connectivity issues, Apple has yet to offer a solution to consumers. *Id.* ¶ 7. Instead, upon receiving an in-warranty complaint, Apple and their authorized resellers—if they do anything—simply replace the defective iPhone XR with a new iPhone XR that has the identical defective connectivity system, leaving consumers caught in a cycle of use, malfunction, and replacement. *See, e.g.*, *id.* ¶¶ 6, 118, 135, 287, 333.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.     ARGUMENT

### A.     Plaintiffs Have Standing to Pursue Fraud and Injunctive Relief, and Adequately Plead Restitution in the Alternative

#### 1.     Plaintiffs have Article III standing to pursue their fraud claims.

Plaintiffs have Article III standing to pursue their fraud claims. *See* Mot. at 4. The Article III standard for showing that an injury is "fairly traceable" to the defendant is "relatively modest." *See Bennett v. Spear*, 520 U.S. 154, 171 (1997). While Plaintiffs must plead "actual reliance" for Article III standing, allegations that Plaintiffs purchased the iPhone XR, that Apple made misrepresentations and omissions about the efficacy of the connectivity system in the Apple iPhone XR, including the antenna, and that Plaintiffs would not have bought an iPhone XR, or would have paid less for it had they known about the alleged connectivity defect, are sufficient to allege that Plaintiffs' harm is "fairly traceable" to Apple's conduct for standing purposes. *See Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008); *see also In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 952 (N.D. Cal. 2018) ("Plaintiffs do not need to identify a statement on which they relied that was made by the Bosch Defendants to plausibly trace their economic injuries to these entities.").[1] Plaintiffs satisfy these requirements for Article III standing by making such allegations in the Complaint. *See* FAC ¶¶ 12–378.

#### 2.     Plaintiffs have standing to seek injunctive relief.

Apple argues that Plaintiffs lack standing to seek injunctive relief because there are no allegations that Plaintiffs intend to purchase another iPhone XR in the future. *See* Mot. at 5. This argument ignores Plaintiffs' allegations that had they known about the defective connectivity system and inferior antenna in the iPhone XR, then they would have potentially selected a "different model" of Apple's iPhone. *See, e.g.*, FAC ¶¶ 33, 70, 116, 201. Stated differently, Plaintiffs allege that they

---

[1] Apple's reliance on *Phillips v. Apple Inc.*, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016), is inapposite, as the plaintiffs in *Phillips* made no allegations regarding reliance whatsoever. *See id.* at *7. In contrast, Plaintiffs allege actual reliance on Apple's misrepresentations and omissions. *See infra* Section III.C.2.b. Apple's citation to *Hall v. Sea World Entertainment, Inc.*, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015), is similarly distinguishable as it plainly stated, "[h]ere, . . . the complaint does not allege that the named plaintiffs actually saw or read *any* advertising or statements made by SeaWorld prior to purchasing their tickets." *Id.*

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – 5
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

have not sworn off Apple products in general and would consider purchasing another iPhone in the future. *See id.*; *see also Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *5 (N.D. Cal. Mar. 18, 2015) (concluding that "a willingness to consider a future purchase is sufficient" to confer standing for injunctive relief).

Plaintiffs' allegation that they would consider purchasing another iPhone model confers standing for injunctive relief. The Ninth Circuit has held that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (citation omitted). The *Davidson* court provided examples of actual imminent threats of future harm, including cases where a consumer plausibly alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* Here, Plaintiffs allege a similar actual and imminent threat of future harm—that Plaintiffs would consider another iPhone model, but they are unable to rely on Apple's advertising absent injunctive relief. *See, e.g.*, FAC ¶¶ 33, 55, 133, 424; *see also Lilly*, 2015 WL 1248027, at *5 (finding the "harms Plaintiffs seek to avoid by bringing this litigation" include "the harm of being a consumer in the marketplace who cannot rely on the representations made by Defendants on their product labels"). Allegations concerning the threat of such harm gives Plaintiffs standing for injunctive relief.

### 3. Plaintiffs can plead restitution in the alternative at the pleadings stage.

At the pleadings stage, Plaintiffs are within their right to pursue alternative remedies. *See Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *7 n.6 (N.D. Cal. May 2, 2018) (listing "decisions allowing claims for equitable relief to proceed as an alternative remedy" at the pleading stage). Apple cites no case holding otherwise.[2] *See* Mot. at 6.

---

[2] *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020), cited by Apple, does not warrant dismissal of Plaintiffs' claim for equitable restitution under the CLRA and UCL. To start, the cases are factually distinguishable, as the plaintiff in *Sonner*, on the eve of trial, voluntarily dismissed her state law damages claim and chose to proceed with only state law equitable claims,

1

**B.       California Law Can Apply to the Claims of Non-California Plaintiffs**

2           Relying on the application of the "governmental interest" test in *Mazza v. American Honda*

3  *Motor Co.*, 666 F.3d 581 (9th Cir. 2012), Apple contends that choice-of-law rules bar non-California

4  Plaintiffs from invoking California law. *See* Mot. at 6–9. This argument is premature because, as this

5  Court has recognized, the question of whether a plaintiff can maintain a nationwide class under

6  California law is "more appropriately addressed [] in connection with the class certification process."

7  *See Fenerjian v. Nong Shim Co., Ltd.*, 2015 WL 13000357, at *5 (N.D. Cal. Mar. 30, 2015). This is

8  because "[a] detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate

9  on a motion to dismiss where the parties have not yet developed a factual record." *See Gerstle v. Am.*

10  *Honda Motor Co.*, 2017 WL 2797810, at *4 (N.D. Cal. June 28, 2017). The same is true here, where

11  the Court "has no factual record to use in deciding which state has a greater interest in applying its

12  laws," and dismissal is therefore improper.[3] *Id.*

13          Nonetheless, Apple's cursory application of the governmental interest test is by no means

14  dispositive of whether California law can apply to a nationwide class.[4] *See* Mot. at 7–9. Courts have

15  held that out-of-state plaintiffs can invoke California statutes when they are harmed by wrongful

16  conduct committed within the State, which in this case was Apple's marketing and advertising of the

17  iPhone XR, and the decision not to disclose the connectivity defect. *See Gerstle*, 2017 WL 2797810,

18  at *3. Further, applying California law to all Plaintiffs is appropriate where, as here, Plaintiffs allege

19

20  ───────────────

and the Ninth Circuit affirmed the district court's dismissal of her equitable claims because an
21  adequate remedy at law—i.e., damages—was available. *See id.* at 1073. Here, the case is truly in its
pleading stage, and no discovery has taken place.

22      [3] Plaintiffs recognize that this Court has previously addressed whether a plaintiff could maintain
a nationwide class under California law at the pleadings stage. *See Frenzel v. AliphCom*, 76 F. Supp.
23  3d 999 (N.D. Cal. 2014). *Frenzel* is distinguishable, as it involved *one* named plaintiff who was not a
resident of California. *Id.* at 1008. In this case, there are sixty-eight (68) named Plaintiffs from thirty-
24  two (32) states, including six from California. As such, substantial factual development must occur
before the Court can apply a fulsome choice-of-law analysis. *See Gerstle*, 2017 WL 2797810, at *4.

25      [4] By no means did *Mazza* explicitly foreclose any argument that California's consumer protection
statutes can be applied to a nationwide class, as Apple seemingly argues by citing almost exclusively
26  to *Mazza* in applying the three-step governmental interests test and arguing that California law
cannot apply to the claims of non-California Plaintiffs. *See* Mot. at 6–8. Rather, the Ninth Circuit in
27  *Mazza* made clear that its holding applied to the "facts and circumstances" of the case before it. *See*
*Mazza*, 666 F.3d at 590–94.

28

that Apple maintains its headquarters and principal place of business in California (FAC ¶¶ 376, 407); Apple's misleading marketing was directed and emanated from its California headquarters (*id.* ¶¶ 377, 407); and the critical decisions concerning the iPhone XR's development and marketing were made within California, including the decision not to disclose the inferior connectivity system to would-be buyers (*id.*). *See also Gerstle*, 2017 WL 2797810, at *4; *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014).

In light of these allegations, Apple is also wrong that Plaintiffs "rely" on Apple's Software Licensing Agreement as grounds for the application of California law for the nationwide class. S*ee* Mot. at 8–9. But the fact that the agreement contains a California choice-of-law provision, when considered alongside the other allegations regarding California's significant interest in regulating the conduct of businesses operating within its borders, is further evidence that the application of California law is appropriate.[5] *See* FAC ¶¶ 403–405. In sum, Plaintiffs' allegations regarding choice of law are sufficient to avoid dismissal of the nationwide class applying California law at this stage. *See Gerstle*, 2017 WL 2797810, at *4.

## C.   Plaintiffs Adequately Plead Their Fraud Claims[6]

### 1.   The non-California fraud allegations are sufficiently pled.

Apple has no basis to argue that Counts V and VII should be dismissed because they "fall short of the basic requirements of Rule 8." *See* Mot. at 9. Rule 8 requires a "short and plain statement

---

[5] *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016), cited by Apple (Mot. at 9), is distinguishable because it addressed the choice-of-law analysis at the class certification stage. 2016 WL 4385849, at *8. The plaintiff in *Darisse*, moreover, separately argued that the software license, standing alone, supported application of California law. *See id.* Here, Plaintiffs cite the software license as one factor among many supporting the application of California law to the nationwide class. *See* FAC ¶¶ 403–413. Similarly, *In re Apple Inc. Device Performance Litigation*, 386 F. Supp. 3d 1155, 1167 (N.D. Cal. 2019), cited by Apple (Mot. at 9), involved an alleged defect related to the devices' battery, not the connectivity system. Furthermore, at the motion to dismiss stage, the Court is not in a position to resolve a question of fact—i.e., whether the connectivity defect solely relates to the iPhone XR's hardware and not the phone's software. *See, e.g., Roley v. Google LLC*, 2019 WL 1779974, at *4 (N.D. Cal. Apr. 23, 2019) ("On the facts alleged, the question of whether the offer was for storage that would last forever or that was implicitly time-limited is a question of fact not appropriate for resolution on a motion to dismiss.").

[6] Contrary to Apple's claims, Plaintiffs do not assert any standalone affirmative misrepresentation claims. *See* Mot. at 12–13. To the extent Plaintiffs allege any affirmative

of the claim showing that [Plaintiffs are] entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs provide

precisely such a "short and plain statement" underlying their state law claims, and Apple has not

argued that Counts V and VII fail to provide the notice that the federal rules require. *See Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that a complaint must provide "fair

notice of what the . . . claim is and the grounds upon which it rests").

### 2. Plaintiffs satisfy Rule 9(b).

#### a. Plaintiffs adequately plead the who, what, when, where, and how of their fraud claims

Plaintiffs' fraud claims satisfy Rule 9(b). Rule 9(b)'s purpose is to provide defendants

sufficient notice "so that they can defend against the charge and not just deny that they have done

anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016)

(citation omitted). To that end, Plaintiffs must allege "the who, what, when, where, and how of the

misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). But in

omissions cases, the standard is somewhat relaxed, as the level of specificity will necessarily not be

as precise as a false representation claim. *See Falk v. Gen. Motors. Corp.*, 496 F. Supp. 2d 1088,

1098 (N.D. Cal. 2007).

Tellingly, Apple does not argue in their Motion that the Complaint fails to provide Apple

sufficient notice to defend itself. And how could Apple claim otherwise, as Plaintiffs alleged

the necessary who, what, when, where, and how. *See Kearns*, 567 F.3d at 1126. The "*who*" is Apple.

FAC ¶¶ 1–4. The "*what*" are the statements and omissions described in the Complaint. *Id.* ¶¶ 378–

397. The "*when*" is the period of the Apple iPhone XR's sale. *Id.* ¶¶ 378–402. The "*where*" is on

Apple's website and in the press release announcing the iPhone XR, which are cited specifically in

the Complaint. *Id.* ¶¶ 396–397. The "*how*" is that the statements and omissions induced customers to

purchase Apple iPhone XRs or overpay for the smartphones—based on the expectation that the

iPhone XRs would have adequate and reasonably performing connectivity systems—when they

---

representations, they are alleged in support of Plaintiffs' omission-based fraud claims. *See* FAC
¶ 508 (allegation made in support of California fraud by concealment claim); *id.* ¶ 555 (allegation
made in support of alternative non-California fraud by concealment claim).

1   otherwise would not have purchased them or paid the prices that they paid had they known that the

2   iPhone XR had an inferior connectivity system and defective antenna that caused the devices not to

3   operate in the manner expected nor operate in the manner that would be consistent with Apple's

4   press releases and advertising. *Id.* ¶¶ 12–375.

5        Indeed, this Court in *Bryde v. General Motors, LLC*, 2016 WL 6804584, at *14 (N.D. Cal.

6   Nov. 17, 2016), found similar allegations to satisfy Rule 9(b):

7        Plaintiffs have identified the "who" (GM); the "what" (knowing about,
         yet failing to disclose the alleged airbag systems defect); the "when"
8        (from the time of sale of the first vehicle to the present day); the "where"
         (the various channels through which GM sold the Class Vehicles,
9        including its dealers where plaintiffs purchased their vehicles); and the
         "how" (if plaintiffs had known of the alleged defect, they would have
10       not purchased or leased the Class Vehicles, or would have paid less).

11       Because the who, what, when, where, and how are pled sufficiently for Apple to defend itself

12   against the charge, Plaintiffs satisfy Rule 9(b).

13              **b.        Plaintiffs adequately plead reliance.**

14       Apple argues that Plaintiffs' fraud-based claims fail to comply with Rule 9(b) because the

15   Complaint does not allege that Plaintiffs saw any particular fraudulent statement and relied on it.

16   Mot. at 9–11. Apple is incorrect.

17       To start, Rule 9(b) explicitly states that "conditions of a person's mind may be alleged

18   generally," and courts have regularly interpreted this to mean that its heightened pleading

19   requirements do not apply to the element of reliance. *See, e.g.*, *Anthony v. Yahoo! Inc.*, 421 F. Supp.

20   2d 1257, 1264 (N.D. Cal. 2006); *In re Google AdWords Litig.*, 2011 WL 7109217, at *3 (N.D. Cal.

21   Mar. 17, 2011) ("So long as a plaintiff's complaint puts the defendant on notice of the alleged

22   misrepresentations that form the basis of the plaintiff's claims, the plaintiff need not plead damages

23   or reliance in accordance with the heightened standards of Rule 9(b).").

24       Even if Rule 9(b) were applicable to allegations of reliance in some circumstances, Apple's

25   argument still fails as applied to Plaintiffs' claims for common law fraud-by-concealment and

26   omission-based statutory claims. Court's reject a rigid, formulaic application of Rule 9(b) for

27   omission claims because "a plaintiff alleging an omission-based fraud will not be able to specify the

28   time, place, and specific content of an omission as would a plaintiff in a false representation claim."

1    *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (quotation marks and

2    citation omitted). Thus, while typically "averments of fraud must be accompanied by the who what

3    when where, and how of the misconduct charged, . . . claims based on an omission can succeed

4    without the same level of specificity required by a normal fraud claim." *Id.* (quotation marks and

5    citation omitted).

6         Therefore, "[p]leading reliance on an omission is not a particularly difficult burden." *See In*

7    *re Volkswagen Clean Diesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 918

8    (N.D. Cal. 2018). Under California law, "a plaintiff may do so simply by alleging 'that, had the

9    omitted information been disclosed, one would have been aware of it and behaved differently.'" *See*

10   *id.* (quoting *Daniel*, 806 F.3d at 1225). The Complaint includes such allegations, as each Plaintiff

11   alleges that had they "known about the inferior 2x2 MIMO antenna on the iPhone XR," they would

12   have "paid less for the phone" or would have "selected a different model or different manufacturer's

13   phone that did not use an inferior antenna."[7] *See, e.g.*, FAC ¶¶ 139, 154, 201, 270.

14        Plaintiffs must also "establish a plausible method of disclosure and . . . that they would have

15   been aware of information disclosed using that method." *See Baranco v. Ford Motor Co.*, 294 F.

16   Supp. 3d 950, 967 (N.D. Cal. 2018) (quoting *Daniel*, 806 F.3d at 1227). Contrary to Apple's claims,

17   however, there is no requirement that Plaintiffs allege they were exposed "to any specific marketing

18   materials or advertisements." Mot. at 10. Rather, the Ninth Circuit in *Daniel* observed that

19   allegations of having viewed advertisements or similar materials are just one of the "various ways in

20   which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been

21   made." Following this guidance, courts applying *Daniel* have held that "in omissions cases, Plaintiffs

22   need not plead that they actually viewed a specific advertisement." *See Baranco*, 294 F. Supp. 3d at

23   966–67; *see also Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 877–78 (N.D. Cal. 2018) (holding

24   that plaintiffs met their Rule 9(b) burden, even without identifying particular advertisements, by

25

26   _____

27        [7] In light of this Ninth Circuit law, Apple's citation to a non-binding case, *Gredell v. Wyeth Laboratories, Inc.*, 854 N.E.2d 752, 757 (Ill. App. Ct. 2006), to argue that a plaintiff who was "not exposed to a specific alleged misrepresentation or omission necessarily could not have relied on it or

28   been injured by it," is unavailing. *See* Mot. at 11.

providing "plausible allegations, consistent with *Daniel*, that they would have received the

information in some way had Defendant exercised reasonable care").

Here, the overwhelming majority of Plaintiffs alleged that they "reviewed marketing

materials and advertisements concerning the iPhone XR prior to purchasing [it]." *See* Mot. at 10.

Thus, the Court can "plausibly draw an inference" that Plaintiffs could have received the information

had Apple publicized the defect through its marketing materials and advertisements. *See Baranco*,

294 F. Supp. 3d at 967 n.7, 968 (noting that receipt of advertising "would likely support the

plausibility of an inference that they would have received the omitted information" had the defendant

disseminated it). So nearly all Plaintiffs allege a plausible method of disclosure by which they would

have been aware had Apple disclosed the antenna defect.[8] Reliance on Apple's omission of the

defect is therefore adequately pleaded.[9]

---

[8] Although Plaintiff Villagran does not allege that he "reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing it," he does specifically allege that he purchased his phone from an AT&T store. *See* FAC ¶ 348. Therefore, this Court can "plausibly draw an inference" that Plaintiff Villagran "could have received such information had [Apple] publicized the defect through the [store], as it is highly improbable that [he] purchased [his phone] from [the store] without any exchange of information whatsoever." *See Baranco*, 294 F. Supp. 3d at 968.

[9] Apple cites this Court's ruling in *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019), to argue that Plaintiffs must allege that they saw specific advertisements or marketing for their omission claims to satisfy Rule 9(b). *See* Mot. at 10. Plaintiffs respectfully suggest that *Colgate* imposes too strict a burden on plaintiffs alleging omission-based fraud claims, as the opinion does not address the Ninth Circuit's decision in *Daniel* and subsequent decisions holding that plaintiffs need not plead that they saw specific advertisements or marketing to satisfy Rule 9(b)'s pleading requirements. Furthermore, *Colgate* is distinguishable, as plaintiffs in that case brought claims based on specific misrepresentations concerning the product's nicotine content. *See Colgate*, 402 F. Supp. 3d at 746. Here, Plaintiffs plead a classic case of omission-based fraud. *See Baranco*, 294 F. Supp. 3d at 966–67; *Sloan*, 287 F. Supp. 3d at 877–78. Finally, Apple's reliance on *Phillips v. Ford*, No. 14-cv-02989, ECF No. 48, at *9–10 (N.D. Cal. Feb. 13, 2015), *see* Mot. at 11, is undermined by the fact that *Phillips* was decided before the Ninth Circuit's opinion in *Daniel* and subsequent cases applying *Daniel*, where those courts held that plaintiffs do not necessarily need to plead that they were exposed to any specific marketing or advertising to support an omission claim. *See supra* Section III.C.2.b.

**3.   Plaintiffs adequately allege omission claims.**[10]

    **a.   Whether Apple accurately disclosed the iPhone XR's connectivity system capability is question of fact not properly decided on a motion to dismiss.**

Apple claims that it "disclosed the differences in cellular capability between the iPhone XR and the iPhone XS/iPhone XS Max." Mot. at 13. Specifically, Apple argues that differences in "Gigabit-class LTE" and "LTE Advanced" cellular capabilities were "readily available to Plaintiffs" because a review cited in the Complaint noted that the iPhone XS had "gigabit-class LTE with 4X4 MIMO and LAA." *Id.* Apple also notes that the iPhone Compare Page cited in the Complaint shows that the Wi-Fi capabilities of the three models are identical. *Id.*

In urging the Court to find that Apple disclosed the differences in cellular capabilities between the iPhone XS/XS Max, Apple is offering its own interpretations of the statements and likely effects on consumers. For example, it is a question of fact as to whether a one-sentence line about the gigabit-class LTE in a single article about the iPhone XR was "readily available" to Plaintiffs, let alone what, in fact, "gigabit class LTE" means as opposed to "LTE Advanced" and whether any consumer would understand the distinction—especially since Apple expressly claimed that the iPhone XR contains "breakthrough technologies from iPhone XS." Similarly, the extent to which the differences between 2x2 MIMO and 4x4 MIMO antennas, or any hardware differences between the iPhone XR, XS, and XS Max whatsoever, affect the 802.11ac Wi-Fi connections is a question of fact, meaning that it cannot be taken as given that the Wi-Fi capabilities of the iPhone XR and iPhone XS/XS Max are "identical," as Apple claims here, let alone that consumers would reasonably believe they are identical. *See, e.g.*, FAC ¶ 379 n.3.

---

[10] It is not clear that an omission cannot support a claim under the Wisconsin Deceptive Trade Practices Act ("WDTPA"), as Apple argues. *See* Mot. at 13 n.5. Under Wisconsin law, when a defendant makes partial misrepresentations, as Apple does here, "the existence of undisclosed facts may show that the affirmative representation is untrue, deceptive, or misleading," meaning that such a claim may proceed under the WDTPA. *See, e.g.*, *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1127 (E.D. Wis. 2016) ("[T]he price-related misrepresentations that Kohls is purportedly making to consumers—namely, that its goods are 'regularly' priced at certain values—are indeed related to corresponding omissions—namely, that the 'regular' prices appearing on Kohls' goods are not accurate. . . . [T]hese representations are indeed actionable representations of fact under [the WDTPA].").

1     Critically, the Ninth Circuit has held that "whether a business practice is deceptive will

2     usually be a question of fact not appropriate for decision on demurrer." *See Williams v. Gerber*

3     *Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); *see also Mattero v. Costco Wholesale Corp.*, 336

4     F. Supp. 3d 1109, 1118 (N.D. Cal. 2018) ("Here, the meaning of the challenged and unchallenged

5     statements by a reasonable consumer in light of the allegedly toxic and hazardous ingredients in the

6     Products is not easily determined (or easily dispelled) and cannot be resolved on this motion."). As

7     such, whether Apple adequately disclosed iPhone XR's cellular capabilities should not be resolved at

8     the motion to dismiss stage.[11]

9                           **b.       Plaintiffs establish an omission.**

10            Apple similarly claims that Plaintiffs do not establish any omission, as Apple "expressly and

11    accurately discloses that the Wi-Fi capabilities of the devices are identical, and that the LTE

12    capabilities differ between the iPhone XR and the iPhone XS/iPhone XS Max." *See* Mot. at 14. As

13    noted above, however, it's a question of fact as to whether these "disclosures" actually informed

14    Plaintiffs that their iPhone XRs had differences in cellular capability that would materially impact

15    the connectivity and reliability of the iPhone XRs. *See supra* Section III.C.3.a. Apple, moreover,

16    cannot credibly argue that they disclosed that by purchasing the iPhone XRs, Plaintiffs were

17    knowingly purchasing phones containing defects that cause the "iPhone XR to have half the signal

18    connectivity and reliability of the iPhone XS and iPhone XS Max." *See* FAC ¶ 3. Simply put,

19    Plaintiffs allege actionable omissions.

20

21

22

23   _____

24        [11] *Tomek v. Apple, Inc.*, 2012 WL 2857035 (N.D. Cal. July 11, 2012), cited by Apple to support
      its argument regarding the disclosure of the iPhone XR's cellular capability, is distinguishable. *See*
25    Mot. at 14. In *Tomek*, the plaintiff claimed that Apple concealed material facts regarding a laptop
      battery's life, among other representations. *Tomek*, 2012 WL 2857035, at *4. The court, however,
26    found that Apple expressly disclosed that "[b]attery life and charge cycles vary by use and settings."
      *Id.* Here, Apple made no clear disclosures that the Apple iPhone XR would suffer from poor network
27    and Wi-Fi connections compared to iPhone XS/XS Max. Quite the contrary, Apple said that the
      iPhone XR "combined breakthrough technologies from the iPhone XS." FAC ¶ 396.

28

1

### c.    Plaintiffs establish a duty to disclose.

2    Apple had a duty to disclose.[12] To start, Apple is wrong that Plaintiffs do not point to any

3    "alleged partial misrepresentations regarding the number of cellular antennas in the iPhone XR." *See*

4    Mot. at 14–15. In fact, the iPhone Compare page cited in the Complaint is such a partial

5    misrepresentation—although it notes that the iPhone XR has "LTE Advanced" cellular capability, as

6    compared to the "Gigabit-class LTE" capability in the iPhone XS and iPhone XS Max, a footnote on

7    the page states that LTE "speeds are based on theoretical throughput and vary based on site

8    conditions and carrier," with no mention that the type of cellular antenna could affect connectivity or

9    that "Gigabit-class LTE" is somehow a code word for a 4x4 MIMO antenna and "LTE Advanced" is

10    a code word for a 2x2 MIMO antenna, or that one of those phrases conveys a superior connectivity

11    system than the other.[13] And the disclosure that the phones have the same wireless capability is

12    another partial misrepresentation, as it is silent as to the extent of the differences between the 2x2

13    MIMO and 4x4 MIMO antennas, or how any hardware differences between the phones affect the

14    802.11ac Wi-Fi connections. *See, e.g.*, FAC ¶ 379 n.3. Such partial misrepresentations establish

15    Apple's duty to disclose. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d

16    1113, 1133 (N.D. Cal. 2018) (finding an omission claim may be based on "[t]he suppression of a

17

18    _____

19    [12] Apple claims that South Carolina and Tennessee Plaintiffs cannot bring fraudulent
concealment claims because those states require a fiduciary or confidential relationship for omission

20    claims, which purportedly does not exist here. *See* Mot. at 14 n.6. Apple's argument, however, omits
any discussion of the factors that establish such a relationship. *See Estate of Morris v. Morris*, 329

21    S.W.3d 779, 784 (Tenn. Ct. App. 2009) ("[T]he nature of the relationship which creates a duty to
disclose . . . springs from the confidence and trust reposed by one in another, who by reason of a

22    specific skill, knowledge, training, judgment or expertise, is in a superior position to advise or act on
behalf of the party bestowing trust and confidence in him."); *Pitts v. Jackson Nat'l Life Ins. Co.*, 574

23    S.E.2d 502, 510 (S.C. Ct. App. 2002) (duty exists where "from the circumstances of the case, the
nature of [the parties'] dealings, or their position towards each other, such a trust and confidence in

24    the particular case is necessarily implied"). Plaintiffs allege such factors, including Apple's position
as one of the most valuable companies in the world, with "many thousands of American consumers"

25    and Apple's knowledge regarding the iPhone XR defect. *See, e.g.*, FAC ¶¶ 1, 381–395. Whether
these facts, or other facts obtained through discovery, establish that Apple was in a position of

26    confidence to Plaintiffs is a question of fact not appropriate for decision at this time.

27    [13] *See* https://www.apple.com/iphone/compare/?device1=iphoneXS&device2=iphoneXSmax&
device3=iphoneXR (last visited August 20, 2020).

28

1    fact, by one who is bound to disclose it, or who gives information of other facts which are likely to

2    mislead for want of communication of that fact").

3           Moreover, despite Apple's reference to an "exclusive knowledge" standard, many courts

4    have explained that "exclusivity is not applied with rigidity" and "is analyzed in part by determining

5    whether the defendant has superior knowledge."[14] *See In re MyFord Touch Consumer Litig.*, 46 F.

6    Supp. 3d 936, 960 (N.D. Cal. 2014); *see also Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *9

7    (N.D. Cal. Feb. 5, 2014) (explaining that "courts look to whether the defendant had superior

8    knowledge of the defect and do not rigidly require literal exclusivity") (quotation marks and citation

9    omitted). Apple supports its "exclusive knowledge" argument by citing scattered Internet chatter and

10   media reports regarding the cellular capability of the iPhone XR, including the 2x2 MIMO cellular

11   antennas, which purportedly demonstrates that the information was public. *See* Mot. at 15. The

12   availability of information on the Internet regarding the 2x2 MIMO cellular antennas, however, does

13   not undercut Apple's superior knowledge. As explained in *Falk*:

14           It is true that prospective purchasers, with access to the Internet, could
             have read the many complaints about the failed speedometers (as
15           quoted in the complaint). Some may have. But GM is alleged to have
             *known* a lot more about the defective speedometers, including
16           information unavailable to the public. Many customers would not
             have performed an Internet search before beginning a car search. Nor
17           were they required to do so.

18   *See Falk*, 496 F. Supp. at 1096–97.[15] And "the exact nature of what was in the public domain . . . is a

19   question of fact not properly resolved on a motion to dismiss.[16] *See, e.g.*, *In re Adobe Sys., Inc.*

20

21           [14] Apple also argues that the Pennsylvania Plaintiff's fraudulent concealment and Unfair Trade
     Practices and Consumer Protection Law claim must be dismissed because Pennsylvania law requires
22   a fiduciary relationship in order to establish a duty to disclose. *See* Mot. at 14 n.6. Other courts,
     however, have found that where a defendant possesses "exclusive or superior knowledge," like
23   Apple does in this case, then there is a duty to disclose under Pennsylvania law. *See In re*
     *Volkswagen Timing Chain Prod. Liability Litig.*, 2017 WL 1902160, at *19 (D.N.J. May 8, 2017).
24
             [15] *See also Hofmann v. Fifth Generation, Inc.*, 2015 WL 5440330, at *8–9 (S.D. Cal. Mar. 18,
25   2015) (information from a magazine article cannot be imputed to consumers); *In re MyFord Touch*
     *Consumer Litig.*, 46 F. Supp. 3d at 960 ("[E]ven the presence of information online does not
26   automatically defeat exclusive knowledge.").

27           [16] Apple's reliance on *Wolph v. Acer America Corp.*, 2009 WL 2969467 (N.D. Cal. Sept. 14,
     2009), is inapposite, as plaintiffs in that case failed to allege "any information known by [defendant]
28

1   *Privacy Litig.*, 66 F. Supp. 3d 1197, 1230 (N.D. Cal. 2014).

2   Finally, Apple actively concealed the defect. Apple's reliance on the purported disclosure of

3   differences in cellular capability between the iPhone XR and iPhone XS/XS Max, and publicly

4   available information regarding the differences between the 2x2 MIMO and 4x4 MIMO antennas, do

5   not defeat concealment claims for the reasons discussed above. *See* Mot. at 16. In addition, the

6   Complaint details several instances where individual Plaintiffs complained about connectivity issues,

7   were given replacement iPhone XRs, and still suffered the same connectivity defect. *See, e.g.*, FAC

8   ¶¶ 118, 135, 287, 333. Plaintiffs also allege that when consumers posted on Apple's forums to

9   complain about the iPhone XR's connectivity issues, Apple "recommended" that consumers visit the

10  troubleshooting webpage on Apple's website or review Apple's one-year warranty. *See id.* ¶¶ 381–

11  385. In other words, Plaintiffs allege that Apple undertook steps that would purportedly fix the

12  connectivity problem, but never admitted that the problem could not be fixed. Plaintiffs therefore

13  plead facts alleging active concealment by Apple. *See In re MyFord Touch Consumer Litig.*, 46 F.

14  Supp. 3d at 961–62 ("If, as Plaintiffs allege, Ford pretended to fix the problems with MFT instead of

15  actually admitting that the problems could not be fixed, that would be active concealment."); *Falk*,

16  496 F. Supp. 2d at 1097 ("GM tried to gloss over the problems with its speedometers by replacing

17  broken ones with the exact same model of speedometer, thereby giving the impression that any

18  defects were unique cases. This might very well constitute active concealment of a systematic

19  problem.").

22  that was unavailable to the public." *See Wolph*, 2009 WL 2969467, at *4. Here, Plaintiffs have
23  alleged that Apple performed pre-release testing that revealed the iPhone XR would have serious
    connectivity shortcomings, and any testing results were unavailable to the public. *See* FAC ¶ 396. In
24  addition, Apple's reliance on New York's "special facts" doctrine to support its claim that Apple had
    no duty to disclose fails to recognize that New York law has conflicting authority as to what
25  constitutes the "special facts" doctrine. In fact, under some articulations of the doctrine, a party may
    have a duty to disclose when the "material fact was information peculiarly within [the] knowledge of
26  [defendant], and that the information was not such that could have been discovered by [plaintiff]
    through the exercise of ordinary intelligence." *See Plaintiffs' State & Sec. Law Settlement Class
27  Counsel v. Bank of N.Y. Mellon*, 43 Misc. 3d 887, 901 (N.Y. Sup. Ct. 2014). Plaintiffs allege such
    facts here. *See supra* Section II, II.C.3.c.

28

1

**d.      Plaintiffs allege materiality.**

2       Apple's argument against materiality misses the mark. *See* Mot. at 16. Plaintiffs' expectations

3  did not necessarily concern the use of 2x2 MIMO versus 4x4 MIMO cellular antennas, as Apple

4  contends. *See id.* Rather, Plaintiffs expected that their Apple iPhone XRs would be reliable,

5  powerful, fast, and defect free—i.e., that they would be able to connect to available cellular and Wi-

6  Fi networks in order to function normally, and Apple provides no reason for Plaintiffs to believe

7  otherwise. In any event, the question of whether an omission is material "is a question for the trier of

8  fact," not suitable for decision in a motion to dismiss.[17] *See Rutledge v. Hewlett-Packard Co.*, 238

9  Cal. App. 4th 1164, 1175–76 (Cal. Ct. App. 2015).

10      **4.      Plaintiffs' adequately allege UCL and other statutory "unfair" claims.**

11      For the reasons discussed above, Plaintiffs' fraud claims satisfy Rule 9(b). Therefore,

12  Plaintiffs' "unfair" claims should survive dismissal, despite Apple's efforts to argue otherwise. *See*

13  Mot. at 17, 17 n.11.

14      Plaintiffs, furthermore, properly allege a UCL unfair prong claim, because Apple's conduct is

15  immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweighs its

16  benefits. *See Grace v. Apple Inc.*, 2017 WL 3232464, at *14 (N.D. Cal. July 28, 2017). Specifically,

17  Plaintiffs allege that failing to disclose the impact on connectivity caused by the use of a 2x2 MIMO

18  antenna—and in some cases, replacing defective iPhone XRs with similarly defective iPhone XRs

19  without acknowledging any defect—is unscrupulous and causes injury to consumers that outweighs

20  its benefits. *See, e.g.*, FAC ¶¶ 118, 135, 287, 333, 510–526; *see also Rubio v Capital One Bank*, 613

21

22      [17] Apple relies on *In re iPhone 4s Consumer Litigation*, 637 F. App'x 414 (9th Cir. 2016), to
argue that Plaintiffs "cannot show that a reasonable consumer" would have "expectation[s]"
23  concerning the 2x2 MIMO and 4x4 MIMO cellular antennas. *See* Mot. at 16–17. Not only does
Apple mischaracterize the relevant "expectations" held by Plaintiffs in this case, but *In re iPhone 4s*
24  *Consumer Litigation* is also distinguishable. In that case, plaintiffs alleged that Apple "fraudulently
misled Plaintiffs into believing Siri would perform consistently," yet "fail[ed] to define what level of
25  consistency they expected from [Apple's] representations," and therefore "fail[ed] to define the level
of consistency a reasonable consumer would expect." *Id.* at 416. Plaintiffs suffer no such deficiency
26  here, as Plaintiffs allege how the Apple iPhone XR has failed to live up to their expectations,
including by detailing the specific connectivity issues plaguing the iPhone XR, which provides
27  guidance to the Court for when it must apply the "reasonable consumer" test. *See, e.g.*, FAC ¶¶ 18,
60, 100, 149, 202.
28

1   F.3d 1195, 1204–05 (9th Cir. 2010) (finding that consumers state a claim under the balancing test

2   when they allege facts showing the harm to them from any advertisement outweighs its utility). Even

3   if Apple could argue that the benefits of its conduct outweigh the harm to consumers, which it did

4   not in its Motion, any evaluation of the argument would involve a factual determination that cannot

5   be made at this stage of the proceeding. *See Grace*, 2017 WL 3232464, at *15.

6   **D.      Plaintiffs Properly Plead Their Warranty Claims**

7       **1.      The non-California warranty claims are sufficiently pled.**

8       Apple argues, without citation to any authority, that the Complaint's alternate express and

9   implied warranty claims based on state law besides California are insufficiently pled. *See* Mot. at 18.

10   It is well established that certain specific phrases or legal labels characterizing the claim—i.e.,

11   "magic words"—are not required, so long as sufficient facts are alleged to put defendant on notice of

12   the claim. *See Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 790 (9th Cir. 2016) (*en banc*); *see also*

13   *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 418 (4th Cir. 2014) (collecting cases); *see*

14   *also Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (complaint's failure to cite correct

15   statute does not affect merits of a claim; factual allegations are what matters).

16       Obviously Apple is on notice as to the express and implied warranty claims, as it identified

17   them in the motion to dismiss. *See* Mot. at 18, 21. Further, they are supported by the factual

18   allegations of the Complaint. *See* FAC ¶¶ 426–462, 525–536, 572–583. Apple's broad

19   pronouncement that the elements of any of those claims are not supported cannot support a motion to

20   dismiss. *See Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) (noting that

21   courts must assume that all general allegations "embrace whatever specific facts might be necessary

22   to support them").

23       **2.      Plaintiffs' express warranty claim (Count I) was properly pled.**

24       Apple characterizes the Complaint as identifying a "design defect" rather than a

25   "manufacturing defect." *See* Mot. at 18. To the contrary, the Complaint clearly alleges that "Apple

26   has violated these duties of truthfulness and candor by designing, ***manufacturing***, and selling their

27   iPhone XR with defects that Apple was aware of," FAC ¶ 3, and identifies as a common question of

28

1   law or fact "whether the iPhone XR contains marketing, design, *or manufacturing defects*," *id.*,

2   ¶ 421 (emphasis added).

3       Per the Federal Rules of Civil Procedure, a complaint may contain two or more statements of

4   a claim for relief "alternatively or hypothetically, either in a single count . . . or in separate ones."

5   Fed. R. Civ. P. 8(d)(2); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990);

6   *Ayers v. United States*, 277 F.3d 821, 829 (6th Cir. 2002) ("alternative pleadings are not

7   disfavored").

8       "[A]t the pleading stage it need only be plausible that a product defect at issue was the result

9   of defective manufacturing rather than design." *Funke v. Sorin Grp. USA, Inc.*, 147 F. Supp. 3d

10  1017, 1027 (C.D. Cal. 2015). "'[M]uch of the product-specific information about manufacturing

11  needed to investigate such a claim fully is kept confidential by federal law,' and that as such, 'formal

12  discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the

13  specific bases for her claim.'" *Id.* (citing *Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010)).

14      This is what Plaintiffs have done here: Plaintiffs allege that the connectivity system in the

15  iPhone XR is inadequate to allow the device to operate as expected and advertised due—at least in

16  part—to the fact that the 2x2 MIMO antenna is inferior to the 4x4 MIMO antenna as a result of

17  either a design or a manufacturing defect. While Plaintiffs detail legion issues they have when using

18  their iPhone XRs, none of them specify whether this is a design or manufacturing problem, nor could

19  they. For instance, Plaintiff Alison Coleman "would often be unable to hear the caller's voice or they

20  would be unable to hear her voice," "would have difficulty sending and receiving text messages,"

21  and "would have intermittent or inoperable data connections." FAC ¶ 14. This experience is echoed

22  by the other Plaintiffs. *See, e.g.*, *id.* ¶¶ 19, 29, 81, 86, 140, 145, 243, 249, 271, 276. Discovery will

23  show whether this is a design or manufacturing defect, but certainly any reasonably designed or

24  manufactured connectivity system, including its choice of antenna, should provide an operable voice

25  connection, an operable data connection, and allow a phone to send and receive text messages. To

26  force Plaintiffs at the pleading stage to identify the source of failed operation that is known only to

27  Apple would be an improper shift of that burden to Plaintiff. *See, e.g.*, *Wool v. Tandem Computers,*

28  *Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (requirements of Rule 9(b) may be relaxed as to matters

1  peculiarly within the opposing party's knowledge where the plaintiffs cannot be expected to have

2  personal knowledge of the facts prior to discovery); *see also In re Craftmatic Sec. Litig. v. Kraftsow*,

3  890 F.2d 628, 645 (3d Cir. 1989) (same).

4        The *Funke* court's discussion is instructive to this point. In *Funke*, a medical device removed

5  from the plaintiff was returned to defendant to allow it to conduct an investigation. *Funke*, 147 F.

6  Supp. 3d at 1027. Defendant did not release the details of that investigation to plaintiff, and therefore

7  the court reasoned that plaintiff "need only assert a claim indicating that it is plausible that [the

8  device contained] a manufacturing defect." *Id*. Similarly, in this case, Apple has superior, even

9  exclusive, knowledge about the source of the connectivity defect, and before Plaintiffs have the

10  benefit of further discovery into the defect, it would be unfair to require more of them than

11  allegations that a manufacturing defect is plausible.

12        *Davidson v. Apple, Inc.*, 2017 WL 976048, (N.D. Cal. Mar. 14, 2017), cited by Apple (Mot.

13  at 19), is distinguishable. *Davidson* concerned a design choice by Apple to construct the outer casing

14  with certain materials subject to breakage over time. This is incomparable to the case here because

15  no consumer could or should know whether the poor connectivity performance of their iPhone XR is

16  the result of manufacture or design. *Davidson*, 2017 WL 976048, at \*1. And Apple's own behavior

17  suggests that it recognizes a manufacturing defect source because when iPhone XR owners

18  complained about the connectivity issues, Apple would often replace the smartphones with the

19  identical models, which is plainly inconsistent with the proposition that the failures in connectivity

20  are a result of a design defect.

21      **3.**    **There is no controlling precedent assessing Apple's hardware warranty.**

22        Primarily relying on *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014), Apple

23  argues that this Court has already assessed Apple's Hardware Warranty's disclaimer at issue in this

24  case. Mot. at 21–22. This is not the case.

25        To start, all of the cases identified by Apple are from district courts and do not present

26  controlling precedent. *See* Mot. at 21, n.15. More critically, as explained by the Court in *Brickman v.*

27  *Fitbit, Inc.*, 2016 WL 3844327 (N.D. Cal. July 15, 2016), *Minkler* drew on prior precedent "to find

28  that an implied warranty claim requires an allegation of a fundamental defect that renders the product

1    unfit for its ordinary purpose." *Brickman*, 2016 WL 3844327, at *3–4. This is not an issue here, as

2    the connectivity issues present a fundamental defect. *See In re Google Phone Litig.*, 2012 WL

3    3155571, at *6 (N.D. Cal. Aug. 2, 2012) (fundamental defect in smart phone because connectivity

4    issue frustrated calling, receiving and sustaining telephone calls); *see also In re iPhone 4S Consumer*

5    *Litig.*, 2013 WL 3829653, at *16 (N.D. Cal. July 23, 2013) (court concludes that intended and

6    ordinary use of an iPhone "includes functions like making and receiving calls, sending and receiving

7    text messages"). Accordingly, Apple's reliance on *Minkler*'s assessment of its disclaimer is neither

8    controlling nor persuasive.

9        **4.    Apple does not meet its burden to show its hardware warranty disclaimer is conspicuous.**

10       Apple falsely asserts that Plaintiffs "acknowledge that Apple's Hardware Warranty disclaims

11   the implied warranty of merchantability." Mot. at 21. This is not the case, as the Complaint states

12   only that Apple "attempts" to disclaim the implied warranty. *See* FAC ¶¶ 442, 534, 581. Apple's

13   attempted disclaimer is insufficient, particularly at this stage in the litigation.

14       First, disclaimer of an implied warranty is an affirmative defense. *Allen v. G.D. Searle & Co.*,

15   708 F. Supp. 1142, 1159 (D. Or. 1989). It should be asserted and litigated, not decided on the

16   pleadings. *See Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, 2012 WL

17   1698368, at *6 (C.D. Cal. May 15, 2012) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.

18   1984) (per curiam) (noting that only if there are no disputed factual issues may the court dismiss a

19   cause of action based upon an affirmative defense)).

20       Apple bears the burden of proof on its disclaimer defense, *see Adobe Sys. Inc. v. Christenson*,

21   809 F.3d 1071, 1078 (9th Cir. 2015), but it does not and cannot prevail on this defense now as a

22   matter of law. A disclaimer of liability is valid only if "the buyer has knowledge or is chargeable

23   with notice of the disclaimer before the bargain is complete." *In re iPhone 4S Consumer Litig.*, 2013

24   WL 3829653, at *15 (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682 (1954)).

25       To that end, the Complaint only alleges that the warranty was "issued" to each Plaintiff, and

26   aside from attaching the operative Hardware Warranty to its motion, Apple offers no evidence in the

27   record regarding how it delivered the Hardware Warranty to Plaintiffs (e.g., on their iPhone XR

1   during initial setup, in the box containing the iPhone XR, etc.). Whether Plaintiffs had actual or

2   constructive knowledge of Apple's disclaimer is therefore a fact-dependent question. *See, e.g.*, *Clark*

3   *v. LG Elecs. U.S.A., Inc.*, 2013 WL 5816410, at *15 (S.D. Cal. Oct. 29, 2013) (denying motion to

4   dismiss where plaintiff lacked reasonable opportunity to view disclaimer prior to purchase); *Hauter*

5   *v. Zogarts*, 534 P.2d 377, 386–87 (Cal. 1975) (noting that "the consumer must be placed on fair

6   notice of any disclaimer . . . and must freely agree to the seller's terms"). Apple should not be

7   granted dismissal on an entirely absent factual record.

8       Further, in order to comply with California Commercial Code section 2316, any disclaimer

9   must be "conspicuous," and "[a] provision is not conspicuous when there is only a slight contrast

10  with the balance of the instrument." *Dorman v. Int'l Harvester Co.*, 46 Cal. App. 3d 11, 19 (1975);

11  *see also Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*, 890 F.2d 108, 114 (9th Cir. 1989)

12  (noting that when determining whether a disclaimer is conspicuous, "[a] reviewing court must

13  ascertain that a reasonable person in the buyer's position would not have been surprised to find the

14  warranty disclaimer in the contract").

15      In this case, practically half of the Hardware Warranty is either capitalized paragraphs or in

16  bold-face type. *See* Cheung Declaration, Ex. A. The disclaimer itself is entirely capitalized, and is

17  therefore insufficiently contrasted from the remainder of the document. *Id.* Given the circumstances

18  here—where Apple issued the Hardware Warranty to purchasers of an iPhone XR without

19  negotiation or execution of any document (*see* FAC ¶ 398), where the disclaimer itself was not

20  conspicuously set off from the remainder of the Hardware Warranty, and there is not even evidence

21  regarding how Plaintiffs received the warranty—it is likely that a reasonable buyer in Plaintiffs'

22  position would be surprised to learn of the disclaimer. At the very least, the Court should allow

23  development of the factual record before making a determination one way or the other.

24      Further, contrary to Apple's arguments (Mot. at 22), Plaintiffs were not required to present

25  their iPhone XRs for repair because presenting the devices to Apple was futile, as Apple would

26  "simply replace the defective iPhone XR with a new iPhone XR that has the identical defective

27  connectivity system, leaving consumers caught in a cycle of use, malfunction, and replacement"

28

1  (FAC ¶ 6).[18] *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 970 (acknowledging that

2  futility may provide a basis for excusing plaintiffs from presenting their product for repair).

3  Finally, Plaintiffs maintain that it is appropriate to apply California law to each individual

4  Plaintiff's warranty claims. *See supra* Section III.B. To the extent, however, that Plaintiffs need to

5  maintain their warranty claims under the states of their individual residences, Apple's argument that

6  the Plaintiffs failed to provide adequate notice does not warrant dismissal of those claims. *See* Mot.

7  at 23. Apple has received the required notice through the filing of the Complaint, and Plaintiffs were

8  otherwise excused because Apple was allegedly already aware of the defect (an allegation that must

9  be taken as true at this stage of the proceeding).[19]

10     **5.     Apple's disclaimer is unconscionable.**

11  The Complaint also properly alleges that Apple's disclaimer is unconscionable, including that

12  "[a] gross disparity in bargaining power existed between Apple and other Class members," "Apple

13  knew of the defect at the time of sale," and "Plaintiffs and other Class members had no meaningful

14  choice in determining these time limitations, the terms of which unreasonably favored Apple." *See*

15  FAC ¶¶ 534, 581; *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (holding that a

16  contract is procedurally unconscionable if it is "a standardized contract, drafted by the party of

17  superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to

18  the contract or reject it").

19  More fundamentally, Apple should not be permitted to evade responsibility based on a

20  disclaimer of liability when it marketed and sold phones that were plagued by connectivity issues. If

21  a product sold to the consuming public is unfit for its intended use, then a disclaimer of liability for

22  that product may be substantively unconscionable and void. *Clark*, 2013 WL 5816410, at *15; *see*

23

24     [18] Plaintiff Villagomez purchased his phone on or about November 1, 2018, not November 1,
25  2011, as mistakenly alleged. FAC ¶ 64. To the extent necessary, and in conjunction with any other
    amendments that may accrue as a result of Apple's motion, Plaintiffs request leave to amend the
26  Complaint to indicate as such.

       [19] *See, e.g.*, *Barrington Corp. v. Patrick Lumber Co.*, 447 So. 2d 785, 789 (Ala. Civ. App. 1984);
27  *Indus. Elec. Supply, Inc. v. Lytle Mfg., L.L.C.*, 226 S.W.3d 1, 5 (Ark. Ct. App. 2006); *Minneapolis-
    Moline Power Implement Co. v. Parent*, 17 P.2d 1088, 1093 (Mont. 1932); *W.S. Maxwell Co. v. S.
28  Or. Gas Corp.*, 74 P.2d 594, 597 (Or. 1937).

1   *also Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292–97 (4th Cir. 1989) (concluding it is premature

2   under the U.C.C. to resolve unconscionability questions without allowing the parties to "present

3   relevant evidence of the circumstances surrounding the original consummation of their contractual

4   relationship," and reversing an order that had dismissed implied warranty claims based on a

5   disclaimer where the complaint alleged GM failed to disclose a defect); *Cooper v. Samsung Elecs.*

6   *Am., Inc.*, 2008 WL 4513924, at *3 (D.N.J. Sept. 30, 2008) (general allegations that a seller knew of

7   and failed to disclose a product defect sufficed to plead unconscionability of its warranty limitation).

8        The central purpose of a smart phone device like the iPhone XR is to be able to communicate

9   through voice, data, and text messages. The Complaint squarely alleges that the iPhone XR fails of

10   that essential and central purpose because it does not, in fact, connect to available cellular and Wi-Fi

11   networks when it should. None of Apple's cases address the unconscionability of disclaiming an

12   implied warranty while knowing that the product contained a defect that made it, essentially,

13   unusable for its intended purpose at the start. For instance, when the court in *In re iPhone*

14   *Application Litigation*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 2011), noted that Plaintiffs have

15   alternatives to smartphones, it was in the context of recreational games such as "Angry Birds" or

16   "Plants versus Zombies," not the fundamental function of the smartphones. Similarly, *Berenblat v.*

17   *Apple, Inc.*, 2010 WL 1460297, at *4 (N.D. Cal. Apr. 9, 2010), addressed a situation regarding the

18   limited performance of extra memory added to laptop computers, not a defect that made the

19   computer unusable. Finally, *Bros. v. Hewlett-Packard Co.*, 2006 WL 3093685, at *7 (N.D. Cal. Oct.

20   31, 2006), and *Davidson*, 2017 WL 976048, at *13, dealt with an issue that affected electronics over

21   an extended time period, long after expiration of the warranty.

22        **6.**    **Plaintiffs do not lack privity required for their warranty claims.**

23        Plaintiffs maintain that California law applies to the claims here (or at least it is premature at

24   this time to make such a determination), *see supra* Section III.B. However, to the extent Illinois law

25   applies to Plaintiff Shaw's claims, privity is not required for a warranty claim. The advertisement,

26   documents, and brochures provided to Plaintiff Shaw from the manufacturer are sufficient. *See In re*

27   *Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 920–21 (N.D. Cal. 2018). Further, to the extent

28   each state law applies to each other individual plaintiff and they have not yet alleged the place of

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – 25
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

1   purchase, Plaintiffs request leave to amend the Complaint to provide those details, if such state

2   requirement exists.

3   **E.      Plaintiffs Adequately Allege Breach of the Covenant of Good Faith and Fair Dealing**

4            To challenge Plaintiffs' claim that Apple breached the covenant of good faith and fair

5   dealing, Apple repeats and reasserts its argument that the defect at issue is a design defect rather than

6   a manufacturing defect. *See* Mot. at 27. As explained above, Plaintiffs plead both, alternatively, *see*

7   *supra* Section III.D.2, and Plaintiffs plead that the disclaimer is ineffective and/or unconscionable,

8   *see supra* Sections III.D.4 and III.D.5. Both of these arguments are well supported by the factual

9   allegations in the Complaint. Apple persists, but to do so it misrepresents the breach of the covenant

10  of good faith and fair dealing that Plaintiffs allege.

11           "Breach of the implied covenant of good faith and fair dealing involves something beyond

12  breach of the contractual duty itself." *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d

13  1, 54 (1985); *Boyd v. Avanquest N. Am. Inc.*, 2014 WL 7183988, at *4 (N.D. Cal. Dec. 16, 2014)

14  (Orrick, J.) (same). For instance, in *Boyd*, the court found allegations that the defendant acted in bad

15  faith in inducing plaintiffs into entering into a contract for its computer diagnostic software, and then

16  frustrated the benefits of that contract by offering further misrepresentations that induced plaintiffs

17  into continued use of the service. *Boyd*, 2014 WL 7183988, at *4. Similarly, Plaintiffs allege that

18  Apple breached a duty beyond the contract by utilizing inferior technology in the iPhone XR that

19  created connectivity issues without informing Plaintiffs, and if a customer later complained, simply

20  replaced the defective device with another iPhone XR with the same connectivity issues. *See, e.g.*,

21  FAC ¶¶ 6, 118, 135, 287, 333, 592. In other words, Plaintiffs allege no mere breach of a contractual

22  provision, but rather a cycle of wrongful conduct along the lines of the allegations in *Boyd*.

23           Accordingly, neither *In re iPhone Application Litig.*, 2011 WL 4403963, nor *Kinderstart.com*

24  *LLC v. Google, Inc.*, 2006 WL 3246596 (N.D. Cal. July 13, 2006), is applicable. In those cases, the

25  alleged breach involved violations of specific terms of the contracts at issue, and therefore could not

26  support a breach of good faith and fair dealing claim. As discussed above, Plaintiffs' allegations

27  suffer no such flaw.

28

F.      **The Economic Loss Doctrine Does Not Bar Common Law Fraudulent Concealment Claims**

Apple argues that the economic loss doctrine bars Plaintiffs' fraudulent concealment claims. *See* Mot. at 29–30. However, "the economic loss rule does not prevent recovery in tort if . . . the conduct 'violates a duty independent of the contract arising from principles of tort law.'" *R Power Biofuels, LLC v. Chemex LLC*, 2017 WL 1164296, at *5 (N.D. Cal. Mar. 29, 2017) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999)).

For instance, California does not apply the economic loss rule to fraud claims. *See Lazar v. Superior Ct.*, 909 P.2d 981 (Cal. 1996) ("[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud."). Other courts in the Ninth Circuit have also refused to apply the economic loss rule to fraudulent concealment claims. *See, e.g.*, *Deseret Trust Co. v. Unique Inv. Corp.*, 2019 WL 7938223, at *7 (C.D. Cal. Sept. 10, 2019) (holding that the economic loss rule did not bar plaintiffs' fraudulent omission and fraudulent inducement claims); *Yetter v. Ford Motor Co.*, 2019 WL 3254249, at *7 (N.D. Cal. July 19, 2019) (holding that the economic loss rule did not bar plaintiff's fraudulent concealment claim); *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *9 (N.D. Cal. June 4, 2018) (same).[20] As explained in *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 2019 WL 3000646, at *6 (C.D. Cal. May 22, 2019), the Supreme Court of California has clearly held that "fraudulent inducement claims based on misrepresentations are not subject to the economic loss doctrine," and there is no support in California case law for drawing a "distinction between fraudulent inducement by misrepresentation and fraudulent inducement by omission," such that the economic loss rule should bar omissions claims.

*Deseret Trust* is instructive. In that case, the court explained that the "independent duty exception" to the economic loss rule applied when plaintiffs alleged that defendants violated

---

[20] Plaintiffs maintain that California law applies to all the fraud claims, as discussed at Section III.B. Nonetheless, Florida, Ohio, New Jersey and Wisconsin do not apply the economic loss doctrine to fraud claims. *See, e.g.*, (**FL**) *In re MyFord Touch*, 46 F. Supp. 3d at 965-67; (**OH**) *Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005); (**NJ**) *Kearney v. BMW*, 2018 WL 4144683, at *14 (D.N.J. Aug. 29, 2018); (**WI**) *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 219 (Wis. 2005).

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – 27
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

independent duties, including to not conceal material facts, in the exclusive possession of defendants, prior to entering into a contract. *Deseret Trust*, 2019 WL 7938223, at *6–7. Accordingly, the court denied defendant's motion to dismiss. *Id.* Similarly here, Plaintiffs allege that Apple had a duty to disclose the defect present in the iPhone XR resulting in the severe connectivity issues. Apple's breach of this duty predated—and was independent of—any contractual duties held by Apple, thus taking it outside the economic loss rule. As in *Deseret Trust*, the Court should allow Plaintiffs to pursue their claims in discovery.

*Sloan v. General Motors LLC*, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020), relied on by Apple, is distinguishable. *See* Mot. at 29. The *Sloan* court never addressed whether or not the defendant had a duty to inform plaintiffs of the defect at issue. Furthermore, the procedural posture was different in *Sloan*, as discovery had been sufficiently completed to allow defendants to file a motion for summary judgment. Finally, the *Sloan* court acknowledged that "courts appear divided as to whether the economic loss rule applies to fraudulent concealment/omission claims." *Id.* at *23.

Finally, contrary to the assertions of Apple (*see* Mot. at 28 n.27), a separate cause of action exists for breach of the covenant of good faith and fair dealing in each of Alabama, Florida, Georgia, Illinois, Indiana, Maryland, New York, North Carolina, Ohio, South Carolina, Tennessee, Texas, Virginia, West Virginia, and Wisconsin.[21] Should the Court determine that the laws of each Plaintiff's state apply to the claims for fraudulent concealment, and any of those claims are affected by the economic loss rule, Plaintiffs can maintain actions for breach of the covenant of good faith

---

[21] *See* **(AL)** *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 4 (Ala. 1981); **(FL)** *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1098 (Fla. Dist. Ct. App. 1999); **(GA)** *Mbigi v. Wells Fargo Home Mortg.*, 785 S.E.2d 8, 20 (Ga. Ct. App. 2016); **(IL)** *Citicorp Sav. v. Rucker*, 808, 692 N.E.2d 1319, 1325 (Ill. App. Ct. 1998); **(IN)** *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015); **(MD)** *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 674 (Md. Ct. App. 2009); **(NY)** *JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am., Inc.*, 997 N.Y.S.2d 270, 287 (N.Y. Sup. Ct. 2014); **(NC)** *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 567 S.E.2d 781, 789 (N.C. Ct. App. 2002); **(OH)** *Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005); **(SC)** *Williams v. Riedman*, 529 S.E.2d 28, 40 (S.C. Ct. App. 2000); **(TN)** *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000); **(TX)** *Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 84 (Tex. App. 1997); **(VA)** *RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.*, 827 S.E.2d 762, 766 (Va. 2019); **(WI)** *Foseid v. State Bank*, 541 N.W.2d 203, 213 (Wis. Ct. App. 1995); **(WV)** *Highmark W. Va., Inc. v. Jamie*, 655 S.E.2d 509, 515 (W. Va. 2007).

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – 28
010908-11/1335673 V1

No. 3:20-cv-02328-WHO

and fair dealing under the applicable laws of each state, based upon the same underlying factual allegations.

### IV.    CONCLUSION

For the reasons set forth above, the FAC adequately pleads each cause of action, and Apple's Motion should be denied. Should the Court determine otherwise, Plaintiffs respectfully request leave to amend.

DATED: August 20, 2020                   Respectfully submitted,

                                         */s/ Steve W. Berman*
                                         Steve W. Berman (*pro hac vice*)
                                         Thomas E. Loeser (SBN 202724)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1301 Second Avenue, Suite 2000
                                         Seattle, WA 98101
                                         Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594
                                         Email: steve@hbsslaw.com
                                         Email: toml@hbsslaw.com

                                         Shana E. Scarlett (SBN 217895)
                                         Ben M. Harrington (SBN 313877)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         715 Hearst Avenue, Suite 200
                                         Berkeley, CA 94710
                                         Telephone: (510) 725-3000
                                         Facsimile: (510) 725-3001
                                         Email: shanas@hbsslaw.com
                                         Email: benh@hbsslaw.com

Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
Christopher E. Stiner (SBN 276033)
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
Email: twolfson@ahdootwolfson.com
Email: tmaya@ahdootwolfson.com
Email: bking@ahdootwolfson.com
Email: cstiner@ahdootwolfson.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT – 30
010908-11/1335673 V1

No. 3:20-cv-02328-WHO