UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELAINE ANDERSON, et al.,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No.  3:20-cv-02328-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 32

**INTRODUCTION**

The 68 named plaintiffs in this proposed class action claim that defendant Apple Inc. ("Apple") misled them about the capabilities of one of its smartphones, the iPhone XR. The iPhone XR, like previous generations of iPhones, used a "2x2 MIMO antenna." The iPhone XS and XS Max, Apple smartphones released around the same time as the iPhone XR, used superior "4x4 MIMO antennas." The plaintiffs allege that the 2x2 antenna is less capable when it comes to establishing and maintaining cellular and wireless internet connections. Apple, the plaintiffs say, never disclosed the difference in antenna types, so they purchased their iPhone XRs believing they had materially identical cellular and wireless capabilities as the iPhone XS and XS Max. Their claims fall into two broad categories: claims about Apple's alleged misrepresentations by omission and claims brought under express and implied warranties.

Apple moves to dismiss, and I grant the motion in part. I conclude that the plaintiffs' misrepresentation-based claims largely survive Apple's challenges. The complaint alleges that Apple made partial representations that obligated it to disclose the information and, even aside from these partial representations, had a duty to disclose the information. The plaintiffs' claims based on Apple's duty to disclose—that is, their "pure omissions" claims—are adequately

1   pleaded.  The plaintiffs have not, however, adequately alleged that they relied on any partial

2   representations.  Separately, they have not shown that they possess standing to pursue injunctive

3   relief or that they can receive equitable restitution under California law.  Those problems appear

4   curable in a properly amended complaint.  Dismissal is with leave to amend.

5         The plaintiffs' warranty-based claims are more problematic.  They have not adequately

6   alleged that Apple violated its express warranty; that warranty does not entitle customers to

7   redress for design choices or defects.  Their claim that Apple violated California's warranty of

8   merchantability fails because Apple validly disclaimed that warranty.  And their claim that Apple

9   violated the covenant of good faith and fair dealing is an impermissible attempt to use the express

10  warranty to pursue a design defect-based claim.  But because I cannot say that amendment would

11  be futile, dismissal of these claims is also with leave to amend.

12                                    **BACKGROUND**

13        This case is before me on a motion to dismiss so the facts are drawn from the plaintiffs'

14  First Amended Complaint ("FAC") [Dkt. No. 23].

15        Apple is incorporated and has its principal place of business in California.  FAC ¶ 376.  It

16  designs, manufactures, and sells, among other electronic products, the iPhone.  *Id.*  In September

17  2018, it released the iPhone XS and XS Max; in October 2018, it released the iPhone XR.  *Id.* ¶

18  378.  The XS and XS Max were equipped with a "4x4 MIMO antenna" while the XR was

19  equipped with a "2x2 MIMO antenna."  *Id.* ¶¶ 378–79.  According to the FAC, a 2x2 MIMO

20  antenna "is only capable of two streams of data for transmit and receive pathways while [a] 4x4

21  MIMO antenna . . . offers four streams."  *Id.* ¶ 379.  As a result, "a device equipped with a 2x2

22  MIMO antenna does not connect as well [to a cellular networks or Wi-Fi] and suffers from an

23  inferior signal connection compared to a device equipped with the superior 4x4 MIMO antenna."

24  *Id.* ¶ 380.  The 2x2 MIMO antenna, the plaintiffs allege, is "less capable of obtaining a reliable

25  connection" to a cellular signal.  *Id.* ¶¶ 3, 380.

26        Because the FAC includes allegations of 68 named plaintiffs, I discuss only those

27  experiences of the plaintiffs relevant to resolving this motion.  Each plaintiff purchased at least

28  one iPhone XR.  *See, e.g.*, *id.* ¶¶ 12, 17, 22, 27, 32, 39, 44, 49.  64 of the plaintiffs claim that they

United States District Court
Northern District of California

1   "reviewed marketing materials and advertisements concerning the iPhone XR prior to purchasing"

2   it but "were not made aware of any features of the iPhone XR that would render it less capable of

3   voice, text, and internet connectivity than other iPhone models." *See, e.g.*, *id.* ¶¶ 13, 18, 23, 28,

4   33, 40, 45. They claim that, in particular, they were "not made aware of the fact that the iPhone

5   XR was equipped with an inferior 2x2 MIMO antenna." *Id.* Four of the named plaintiffs do not

6   allege they reviewed any such materials. *See id.* ¶¶ 180, 330, 342, 348. Instead, they assert that

7   they were "not made aware of any features of the iPhone XR that would render it less capable of

8   voice, text, and internet connectivity than other iPhone models." *Id.*

9       Each plaintiff alleges that, if he or she had "known about the inferior 2x2 MIMO antenna

10  on the iPhone XR," he or she "would have paid less for the phones, or . . . would have selected a

11  different model or different manufacturer's phone that did not use an inferior antenna." *See, e.g.*,

12  *id.* ¶¶ 13, 18, 23, 28, 33, 40, 45. The plaintiffs claim that they experienced "connectivity issues

13  with [their] iPhone XRs." *See, e.g.*, *id.* ¶¶ 14, 19, 24, 29, 34, 41, 46. Some allege that they

14  "complained to Apple" within the period of their warranty. *See, e.g.*, *id.* ¶ 15. The plaintiffs claim

15  that the difference in quality between the 2x2 and 4x4 MIMO antennas have been widely

16  commented on in the press and that other Apple consumers have had complaints about the iPhone

17  XR's alleged connectivity problems. *See, e.g.*, *id.* ¶¶ 381–93.

18      The plaintiffs assert that it was never made clear to them that the iPhone XR had inferior

19  connectivity capabilities than the iPhone XS or XS Max. They argue, in fact, that Apple

20  "concealed, and continues to conceal the fact that the iPhone XR contains an inferior 2x2 MIMO

21  antenna that renders the iPhone XR incapable of performing its central functions as reasonably

22  expected." *Id.* ¶ 401. They allege that the iPhone XR had inferior connectivity than other

23  companies' smartphones "at the same price-point." *Id.* ¶ 396. Additionally, the plaintiffs contend

24  that, rather than remedying the problem, Apple would replace iPhone XRs experiencing

25  connectivity problems with others that, by their nature, shared the "defect" of using a 2x2 antenna.

26  *Id.* ¶ 401.

27      The 68 named plaintiffs hale from dozens of states, including California. *See id.* at 3–58.

28  They filed this proposed class action on behalf of themselves and others similarly situated—

United States District Court
Northern District of California

namely, "[a]ll U.S. persons or entities who own or owned an iPhone XR." *Id.* ¶ 414.  They also allege a claim on behalf of a nationwide subclass (the "Nationwide Express Warranty Subclass") consisting of "All members of the Nationwide Class who presented their phone to Apple, an authorized Apple reseller, or an authorized Apple service center for repair of connectivity issues, whose iPhone XRs were not fixed, or were replaced with iPhone XRs." *Id.* ¶ 415.  They request that, if I determine that California law does not apply to all class members, the claims be split into state subclasses based on those states' laws.

The plaintiffs filed their original Complaint on April 6, 2020, Dkt. No. 1, and filed their FAC on May 28, 2020, alleging eleven causes of action.  Two are for violation of federal law: (1) breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA") and (2) breach of implied warranty under the MMWA.  Five are for violations of California law: (3) violation of the Consumer Legal Remedies Act ("CLRA"), (4) violation of the Unfair Competition Law ("UCL"), (5) fraud by concealment, (6) breach of the implied warranty of merchantability, and (7) breach of the covenant of good faith and fair dealing.  The other four are counts brought in the alternative under the laws of the other states in which the plaintiffs reside if I determine that California law cannot apply to the non-California plaintiffs: (8) violation of state consumer protection acts, (9) fraud by concealment, (10) breach of the implied warranty of merchantability, and (11) breach of the covenant of good faith and fair dealing.  Apple now moves to dismiss the FAC.  *See* Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Mot.") [Dkt. No. 32].  I held a hearing on the motion on November 4, 2020.[1]

**LEGAL STANDARD**

## I.     MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) is a challenge to the court's subject matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).  "Federal

---

[1] Apple's unopposed request for judicial notice, Dkt. No. 33, is GRANTED.  This includes its One (1) Year Limited Warranty [Dkt. No. 32-2] and its iOS Software License Agreement for iOS 12 for iPhone, iPad, and iPod Touch [Dkt. No. 32-3].  Those documents are referenced in the FAC, *see, e.g.*, FAC ¶¶ 398, 403; are relevant to the claims; and their authenticity is not in dispute, *see* Dkt. No. 32-1.  They are therefore incorporated by reference into the FAC.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

1    courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited

2    jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party

3    invoking the jurisdiction of the federal court bears the burden of establishing that the court has the

4    requisite subject matter jurisdiction to grant the relief requested.  *Id.*

5          A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d

6    1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the

7    allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

8    The challenger asserts that the allegations in the complaint are insufficient "on their face" to

9    invoke federal jurisdiction.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

10    Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are

11    true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392

12    F.3d at 362.

13    **II.**   **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

14          Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

15    upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

16    allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v.*

17    *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts

18    that "allow the court to draw the reasonable inference that the defendant is liable for the

19    misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There

20    must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts

21    do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to

22    "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

23          In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

24    Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

25    plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

26    is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

27    fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

28    2008).

United States District Court
Northern District of California

1    If the court dismisses the complaint, it "should grant leave to amend even if no request to

2    amend the pleading was made, unless it determines that the pleading could not possibly be cured

3    by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In

4    making this determination, the court should consider factors such as "the presence or absence of

5    undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

6    amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*

7    *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

9    Apple moves to dismiss on numerous grounds. Because I grant the plaintiffs leave to

10   amend, I address many arguments in the alternative for the sake of efficiency.

**I.    STANDING**

12   Apple first challenges the plaintiffs' standing to bring certain claims and seek certain

13   remedies. Because Article III standing is necessary for my exercise of jurisdiction, I examine

14   those arguments first.

**A.  Standing to Bring Fraud and Misrepresentation Claims**

16   Apple argues that the plaintiffs lack Article III standing to pursue their fraud and

17   misrepresentation-based claims (Counts III–V, VIII, and IX). Mot. 4–5. Apple's claim is

18   properly classified as a facial attack under FRCP 12(b)(1).

19   "In a class action, standing is satisfied if at least one named plaintiff meets the

20   requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[T]he core

21   component of standing is an essential and unchanging part of the case-or-controversy requirement

22   of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiffs bear the

23   burden of pleading and showing standing. To do so, they must demonstrate three elements: (1) an

24   "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and

25   (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* (internal

26   quotation marks and citations omitted). An injury in fact must be "concrete and particularized"

27   and "actual or imminent," as opposed to "conjectural or hypothetical." *Id.* To show a causal

28   connection, the injury must only be "fairly traceable" to the challenged conduct. *Id.*

United States District Court
Northern District of California

1    In claims involving misrepresentations to consumers, courts have often required that the

2    consumers plausibly allege that they "actually relied" on an allegedly misleading statement to

3    plead Article III standing.  *See Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693,

4    at *5–*7 (N.D. Cal. Apr. 19, 2016); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015

5    (N.D. Cal. 2013); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013).[2]  The theory

6    behind requiring actual reliance is that a consumer's injury cannot be "fairly traceable" to the

7    defendant's alleged misrepresentation unless that consumer actually relied on that

8    misrepresentation.  *See, e.g.*, *Phillips*, 2016 WL 1579693, at *5–*6.  If a defendant makes a

9    misrepresentation and the plaintiff, without knowing of that misrepresentation, coincidentally

10   purchases the product in question, her injury is not traceable to the misrepresentation.  The

11   plaintiffs agree that they must allege actual reliance.  Oppo. 5 ("Plaintiffs must plead 'actual

12   reliance' for Article III standing[.]").

13   Apple contends that the FAC lacks allegations that the plaintiffs "actually relied" on

14   statements that were misleading.  Therefore, Apple argues, the plaintiffs have not adequately

15   alleged causation between Apple's claimed unlawful conduct and their injuries.  Mot. 4–5.

16   I interpret the misrepresentation-based portions of the FAC to allege claims about

17   *omissions* by Apple.  *See, e.g.*, FAC ¶¶ 469, 472, 474, 483, 493, 496, 507, 513, 521.  In their

18   Opposition, the plaintiffs confirm that interpretation.  Oppo. 8 n.6 ("Contrary to Apple's claims,

19   Plaintiffs do not assert any standalone affirmative misrepresentation claims . . . . To the extent

20   Plaintiffs allege any affirmative representations, they are alleged in support of Plaintiffs'

21   omission-based fraud claims.").  I proceed on that basis.

22   The FAC sufficiently alleges standing.  Apple is correct that the FAC does not contain a

23   specific allegation that any of the plaintiffs relied on a particular omission prior to making their

24   purchases.  64 of the plaintiffs do, however, allege that they "reviewed marketing materials and

25   advertisements concerning the iPhone XR prior to purchasing it."  *See, e.g.*, FAC ¶¶ 13, 18, 23,

26

27

28

---

[2] This Article III requirement is distinct from the requirement of actual reliance to establish statutory standing for California's Unfair Competition Law.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

28, 33, 40, 45. The plaintiffs claim that, had they known of the difference in antennas, they would not have purchased iPhone XRs at the price they did. *See, e.g.*, *id*. The plaintiffs also point to two specific representations by Apple that are allegedly misleading. First, Apple's initial press release announcing the iPhone XR allegedly did not disclose that the iPhone XR used the 2x2 MIMO antenna; instead, it stated the "iPhone XR combines breakthrough technologies from iPhone XS in an all-screen glass and aluminum design." *Id.* ¶ 396. Second, a page on Apple's website allegedly did not disclose "connectivity shortcomings of the 2x2 MIMO antenna in the iPhone XR." *Id.* ¶ 397. That webpage permits users to make comparisons between different versions of the iPhone and, according to the plaintiffs, this comparison tool presented the iPhone XS and XS Max as having "nearly identical cellular and wireless capabilities" as to the iPhone XR. *Id.*

In the context of an omission-based fraud or misrepresentation claim, a plaintiff "will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (internal quotation marks omitted). "Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff [sometimes] cannot point out the specific moment when the defendant failed to act." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).[3] Consequently, when it comes to omissions-based claims, "actual reliance" is somewhat different than in affirmative representation cases. I conclude that it is sufficient for standing purposes at this early stage for the plaintiffs to allege—as they have—that (1) Apple failed to adequately disclose information about the iPhone XR; (2) the plaintiffs reviewed marketing and similar materials about the iPhone XR prior to making their purchase, which leads to a reasonable inference that they would have encountered the disclosure had it been made; and (3) the plaintiffs would not have made the purchases if they knew of the information. To establish standing, they do not need to rely on the two specific examples they cite alone. Accordingly, the plaintiffs have adequately pleaded that their injuries are "fairly traceable" to Apple's alleged

---

[3] These courts made these statements in the context of challenges to the adequacy of pleading, not to standing. I find them applicable because they describe the structure of an omission-based claim, which sheds light on the type of injury and causation required.

failure to disclose the information.

At least one other court in this Circuit has held that analogous allegations plausibly showed causation. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018). There, the plaintiffs alleged that the defendants intentionally installed software in vehicles that permitted them to "cheat emissions tests." *Id.* at 952. The defendants were alleged to have "knowingly concealed" that software "from regulators and consumers." *Id.* The plaintiffs argued that "they would not have bought or leased the Class Vehicles, or would have paid less to do so, if Defendants had disclosed that the Class Vehicles were equipped with the software." *Id.* The court held that this injury was fairly traceable to the claimed misconduct. *Id.* It concluded, as I have, that "Plaintiffs do not need to identify a [particular] statement on which they relied that was made by the . . . Defendants to plausibly trace their economic injuries to these entities." *Id.* (emphasis added). Had the defendants there—and Apple here—adequately disclosed the relevant information, the plaintiffs plausibly claim they would have known of it and made decisions accordingly. *See id.*

Neither of the cases Apple relies on suggests a different conclusion. In *Phillips*, the "Plaintiffs d[id] not allege that they saw or heard *any* statements, advertising, terms of use, or other representations by Apple before downloading iOS 9 or using Wi–Fi Assist." *Phillips*, 2016 WL 1579693, at *7 (emphasis added). Here, 64 of the plaintiffs do. In *Phillips*, the plaintiffs did allege that one specific statement on Apple's website was misleading, but they did not allege the date they downloaded the program at issue; it was, therefore, not possible to "determine whether Plaintiffs could have seen Apple's statement before being injured." *Id.* Here, the 64 plaintiffs explicitly allege that they reviewed marketing and other materials *prior* to purchasing their phones. *See, e.g.*, FAC ¶ 13. And in *Phillips*, the plaintiffs did "not identify the existence of any advertising or advertising campaign related to iOS 9 or Wi–Fi Assist," the programs at issue there. *Phillips*, 2016 WL 1579693, at *8. Nor did they "allege when they read or heard such advertising, or offer any other 'plausible method' by which Plaintiffs would have become aware of Apple's alleged partial representations or omissions." *Id.* Here, again, the plaintiffs have alleged plausible methods by which they would have become aware of the allegedly misleading representations:

through Apple's own marketing channels.  Similarly, the plaintiffs in the other case Apple relies on never alleged that they "saw or heard, let alone relied on, *any* advertisements, offers, or other representations of SeaWorld in advance of their ticket purchases."  *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *6 (S.D. Cal. Dec. 23, 2015) (emphasis added).

At this stage, the plaintiffs needed to plausibly allege that their injuries are fairly traceable to Apple's alleged omissions.  They have done so.

## B.  Standing to Seek Injunctive Relief

When a plaintiff seeks injunctive relief, she must have standing to do so.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  The basic requirements of Article III standing discussed above apply to all claims, including for injunctive relief.  *See id.*  Because injunctive relief is prospective, the Ninth Circuit has emphasized the requirement that "the threat of injury . . . be actual and imminent, not conjectural or hypothetical."  *Id.*  An allegation of "*possible* future injury" is insufficient; the plaintiff must show an injury that is "*certainly impeding.*"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original).

*Davidson* examined injunctive relief in the particular context of allegedly false advertising.  The court there held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase."  *Id.* at 969.  The court explained that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future."  *Id.*  A sufficient threat of future harm "may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  *Id.* at 969–70.  Or that threat "may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id.* at 970.

Apple argues that the plaintiffs lack standing to seek injunctive relief because none of them allege "an intent to purchase another iPhone XR in the future."  Mot. 5.  The plaintiffs respond

that they "would consider purchasing other iPhones in the future." Oppo. 6. If the plaintiffs had plausibly alleged that they are considering purchasing other iPhones in the future, it would likely suffice to create injury. In *Davidson*, the plaintiff alleged that she had an actual, present desire to repurchase the offending product—there, wipes that were allegedly misleadingly marketed as "flushable." 889 F.3d at 971. The court described it as a "close question." *Id.* It held that the plaintiff had adequately alleged future injury because she alleged "that she would purchase truly flushable wipes manufactured by [the defendant] if it were possible." *Id.* She could not, though, trust the characterization of the wipes as "truly flushable" and, accordingly, suffered an imminent future injury. *See id.* at 971–72. Her injury was likely to repeat because "should Davidson encounter the denomination 'flushable' on [the defendant's] wipes package at the grocery store today, she could not rely on that representation with any confidence." *Id.* (internal quotation marks and alterations omitted).

The plaintiffs here have made no similar allegations to even that "close question." Despite the argument in their Opposition, none of them has alleged (in the FAC) a desire to purchase the iPhone XR in the future. None of them has alleged a desire to purchase another smartphone instead of the iPhone XR in the future. And none of them has alleged that such a desire has any imminence. Although the plaintiffs represent in their Opposition that they allege they "would consider purchasing other iPhones in the future," that contention is insufficient because it is not actually what the FAC says. The allegations the plaintiffs cite in support of that argument are, to take one of the identical examples, "Had she known about the inferior 2x2 MIMO antenna on the iPhone XR, Plaintiff would have paid less for this phone, or she would have selected a different model or different manufacturer's phone that did not use an inferior antenna." *E.g.*, FAC ¶ 33; *see* Oppo. 5–6 (citing this paragraph and others identical to it). The allegations of which this is representative are entirely retrospective. They speak to the plaintiffs' past desires. The plaintiffs urge that this allegation, "[s]tated differently," amounts to an allegation that the plaintiffs "have not sworn off Apple products in general and would consider purchasing another iPhone in the future." Oppo. 5–6. That prospective statement is not what the FAC actually claims.

. I GRANT the motion to dismiss the plaintiffs' request for injunctive relief. Because it is

more than possible that at least one plaintiff can allege a present, plausible willingness to purchase an iPhone (or competitor phone) in the future, *see Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, at \*3–\*4 (N.D. Cal. Mar. 18, 2015), this ruling is without prejudice

## II.      RESTITUTION

Apple argues that the plaintiffs' claims for restitution under the CLRA and UCL must be dismissed because they have not alleged that they lack an adequate remedy at law.  Mot. 6.

"[A] federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020).  One well-established equitable principle is that, to obtain an equitable remedy, a plaintiff must lack an "adequate remedy at law."  *Mort v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996).  That principle applies squarely to an award of restitution—an equitable remedy—under the UCL and CLRA.  *Sonner*, 971 F.3d at 844.  In *Sonner*, the court held that the plaintiff's request for restitution under the UCL and CLRA must be dismissed because "the operative complaint does not allege that Sonner lacks an adequate legal remedy."  971 F.3d at 844.  The court went on to say that, "[m]ore importantly, Sonner concedes that she seeks the same sum in equitable restitution as 'a full refund of the purchase price' . . . as she requested in damages to compensate her for the same past harm.  Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion."  *Id.*

Under *Sonner*, the plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law, which they have not done.  Because they also request money damages, it is possible their legal remedy is sufficient; on this record, they have not yet disproven that.  *See id.* ("[The plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA.").  The plaintiffs' Opposition is brief and unhelpful on this score.  They do not attempt to argue, for instance, that the equitable restitution they request would go beyond the damages available to them.  Nor do they make any related argument, such as showing that restitution under the CLRA or UCL would be more certain, prompt, or efficient than the legal remedies they request.  *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

United States District Court
Northern District of California

The plaintiffs make two other responses.  First, they argue that *Sonner* is inapplicable because "the cases are factually distinguishable, as the plaintiff in *Sonner*, on the eve of trial, voluntarily dismissed her state law damages claim and chose to proceed with only state law equitable claims" while this "case is truly in its pleading stage, and no discovery has taken place." Oppo. 6–7 n.2.  But the plaintiffs have not *pleaded* inadequate remedies at law to begin with and they offer no reason why the remedies at law they request in the complaint would be adequate. Second, the plaintiffs contend that they are permitted to plead remedies in the alternative.  They cite *Luong v. Subaru of Am.*, Inc., No. 17-CV-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018), which collected cases permitting pleading equitable relief in the alternative, even where legal remedies were available.  *Id.*, at *7 n.6.  That case and those it referenced predated *Sonner*. *Luong* "recognize[d] that there [wa]s a split of authority in the California district courts on the question of whether plaintiffs should be barred from pleading claims for equitable relief under the UCL and CLRA if they have alleged a claim that would provide an adequate remedy at law."  *Id. Sonner* appears to have resolved that split, and the plaintiffs make no argument to the contrary.

It seems entirely possible that the plaintiffs could plead in an amended complaint that they lack an adequate remedy at law.  Contrary to Apple's assertion, *see* Mot. 6, the mere fact that the FAC requests damages is not sufficient to show that restitution is foreclosed.  Instead, the plaintiffs must adequately allege that, under usual principles of equity, their remedies at law would be inadequate to what restitution could provide.

I GRANT the motion to dismiss the request for restitution under the UCL and CLRA.  I must GRANT the motion to dismiss Count IV (the UCL count) in its entirety because I have determined that the plaintiffs cannot, at this point, pursue injunctive relief or restitution—the only remedies the UCL authorizes.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146–49 (2003).  The dismissals are without prejudice.

## III.   CHOICE OF LAW

Six of the named plaintiffs are from California.  Apple argues that, under California's choice-of-law principles, California law cannot apply to the other 62 named plaintiffs.

The plaintiffs first respond that I do not need to resolve this issue now and should defer it

until class certification.  Often, courts will defer the choice-of-law analysis in a proposed class action until the class certification stage.  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014) (collecting cases).  This analysis is frequently "a fact-specific inquiry which requires a more developed factual record than is generally available on a motion to dismiss."  *Id.*  The Ninth Circuit's leading case on this issue, *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), was decided on appeal during the class certification phase and, consequently, will often be most easily applied at that stage.   But courts are also in agreement that "the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss."  *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013) (collecting cases); *accord Frenzel*, 76 F. Supp 3d at 1007.

To determine whether the choice-of-law analysis should occur on the pleadings or at class certification, courts generally look to whether discovery would be a meaningful aid to that inquiry. *See, e.g.*, *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 2797810, at *4 (N.D. Cal. June 28, 2017); *Frenzel*, 76 F. Supp 3d at 1007.  Though the choice-of-law analysis is, in the main, "fact-specific," the record based on the pleadings can sometimes be sufficient to fully understand the conflict-of-law issues at play.  *See Frenzel*, 76 F. Supp 3d at 1007–08 (citing cases).

Here, the plaintiffs concede that if California law does not apply to them, the law of their state of residence does.[4]  They bring alternative claims under the laws of those states should I determine that California law does not apply.  Given this concession, it is hard to see what "factual development" the plaintiffs believe is necessary; in their Opposition, they do not indicate what discoverable facts would be useful in resolving the choice-of-law issue.

Nonetheless, I will defer this decision.  I will not, however, automatically defer it until

---

[4] It is not clear that the parties' joint view on this is faithful to *Mazza* or choice-of-law principles. If, for instance, a plaintiff purchased her iPhone XR in a different state than her current state of residence, the state of residence's law may not be the controlling one.  *See Mazza*, 666 F.3d at 594 ("Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place.").  But because I defer decision on the issue today, there is no need to address this problem now.

United States District Court
Northern District of California

class certification; it may be ripe to decide in another round of pleadings motions, depending on the content of any amended complaint. For now, the parties' briefing on this issue is far too cursory. Each party devotes only a few pages to the question, and much of that space is consumed by argument about whether *deferral* is proper. Each party's analysis of the conflict of laws is, consequently, superficial. That is especially true given that this is an unusually complicated choice-of-law question. The parties are arguing over multiple bodies of law—consumer protection, fraud, warranties, and contracts—across 33 jurisdictions. Apple, to its credit, lists several potentially relevant differences in the laws between states, but its citations are almost entirely to one-sentence summaries from a single authority in each state. *See, e.g.*, Mot. 10 n.3. The plaintiffs' responses—which they do not always provide—are at best equally terse. *See, e.g.*, Oppo. 15 n.14. I will not, without the benefit of robust adversarial briefing, attempt to divine the differences in or conflicts between 33 states' laws—especially if it does not end up making a difference in the case. If anything, the number of arguments in the briefs, which I narrow in this Order by ruling on many of them, also counsels against deciding this issue now. In the future, the parties' dispute will, presumably, become more targeted.

This Order or any amended complaint may well render at least some of the choice-of-law issues moot. Much of the reasoning in this Order would apply regardless of which state's law applied. I dismiss the request for injunctive relief on Article III standing grounds. I dismiss the request for restitution under federal equitable principles. The express warranty claim is brought only under federal law in the first place. I am giving leave to amend with respect to all of these issues, so time will tell whether the choice-of-law analysis becomes necessary. The misrepresentation and warranty claims are brought under California law, though the former are largely addressed under Rule 9(b), which would apply regardless of the state law at issue. It is probable that much of my analysis of them would also apply to the laws of at least some of the other jurisdictions. The plaintiffs will, based on this Order, asses their alternative counts when considering how to amend their complaint. If the plaintiffs choose not to continue pursuing any particular claim in an amended complaint—which is, either way, their decision—there would be no need to perform the choice-of-law analysis with respect to that claim and its alternate claim.

United States District Court
Northern District of California

Accordingly, I also do not address the plaintiffs' "alternate" state-law counts because I have not determined that California law is inapplicable and those counts may be mooted by an amended complaint or removed by a future motion.

## IV.     MISREPRESENTATION CLAIMS

The plaintiffs' first group of claims are for violation of the CLRA (Count III), violation of the UCL (Count IV), and fraud by concealment under California law (Count V). Apple argues, and the plaintiffs do not dispute, that these claims all sound in fraud and, therefore, are governed by the heightened pleading standard of FRCP 9(b). Mot. 9; *see* Oppo 9. Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). With several exceptions, Apple argues that the plaintiffs' misrepresentation-based claims all fail to meet Rule 9(b)'s requirements for virtually the same reasons.

The last major word on California's misleading omissions law was *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018). *Hodsdon* follows—and by its own admission, does not authoritatively resolve—some uncertainty about what types of omissions-based misrepresentations are actionable. *See, e.g.*, *Hodsdon*, 891 F.3d at 863 (describing California state cases as "far from clear," "vague," and "somewhat inconclusive"). Nevertheless, *Hodsdon* and a number of district court decisions applying it reveal at least the proper contours of a misleading omission claim. First, California law does recognize "an omission theory of consumer fraud." *Id.* at 861. "[B]ut to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* (internal quotation marks and emphasis omitted). Accordingly, California law recognizes two species of omissions claims: those based on "partial representations" or partial omissions" and those courts often call "pure omissions." *See id.*; *see also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006),

United States District Court
Northern District of California

1    *as modified* (Nov. 8, 2006).  The requirements for each are discussed below.  Although the

2    plaintiffs' Opposition is somewhat unclear, it and the FAC lead me to conclude that the plaintiffs

3    advance both theories.  For the reasons I explain, the plaintiffs' pure omission claims are

4    adequately pleaded; the partial representation claim is largely adequate, but there is not (yet) a

5    plausible allegation of reliance.

6         **A.  Sufficiency of Apple's Disclosures**

7         As an initial matter, Apple argues that there are no viable omissions of any kind because it

8    sufficiently "disclosed the differences in cellular capability between the iPhone XR and the iPhone

9    XS/iPhone XS Max" according to the plaintiffs' own pleading.  Mot. 13.  The webpage that

10   compares iPhone models, Apple asserts, "expressly disclosed the different cellular capabilities of

11   the respective models."  *Id.*  This "disclosure," however, was that the iPhone XS and MS Max are

12   listed as having "Gigabit-class LTE" while the iPhone XR is listed as having "LTE Advanced" for

13   each of their respective cellular capabilities.  FAC ¶ 397.  If there were appropriate evidence that

14   "Gigabit-class LTE" and "LTE Advanced" necessarily implied the use of 4x4 MIMO and 2x2

15   MIMO antennas respectively, the situation might be different.  But Apple has not presented any

16   authority that would support that contention—or a conclusion that a reasonable consumer would

17   understand the terms to mean that.

18        That is why *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923 (N.D. Cal.

19   May 31, 2019), relied on by Apple, is inapplicable.  There, the plaintiff argued that the promise

20   that a device had 64 gigabytes of storage was misleading because it had that amount of storage

21   calculated in a "decimal" counting system instead of a "binary" system, as a reasonable consumer

22   would allegedly have thought.  *Dinan*, 2019 WL 2327923, at *1.  The court found that a

23   reasonable consumer would have been put on notice by disclosures that the storage was calculated

24   using a decimal system because the device's package "actually disclose[d]" that fact.  *Id.*, at *6–*7

25   (emphasis removed).  Similarly, *Tomek v. Apple, Inc.*, does not assist Apple because, there, Apple

26   "expressly disclosed" a disclaimer adequate to render the statement not misrepresentative.  No.

27   2:11-CV-02700-MCE, 2012 WL 2857035, at *4 (E.D. Cal. July 11, 2012).

28        Apple also contends that one article cited in the FAC states that the iPhone XS was

17

superior to the XR because of its "gigabit-class LTE with 4x4 MIMO."  Mot. 13 (citing FAC ¶ 390 n.19).  Especially in this procedural posture, a single third-party article online that links these two technologies is not sufficient to transform Apple's statements into proper disclosures.  While widely held consumer knowledge might cure an otherwise misleading omission, a lone online article written by a third party cannot overcome the reasonable inferences that must be drawn in the plaintiffs' favor.

Apple also argues that the comparison page shows that the three phones' Wi-Fi capabilities are identical, which demonstrates that the Wi-Fi technology was adequately disclosed.  Mot. 13–14 (citing FAC ¶ 397).  That disclosure says that all three phones have "802.11ac Wi-Fi with MIMO."  FAC ¶ 397.  The plaintiffs' claim, however, is that Apple failed to disclose that the *difference* between MIMO types created an inferior Wi-Fi connection.  If anything, that these statements were included but Apple allegedly omitted THE MIMO types bolsters the plaintiffs' allegations.  In any event, it does not amount to an adequate disclosure as a matter of law on a motion to dismiss.

**B.  Partial Representations**

A partial representation (or "partial omission") claim is the more straightforward of the two and is well-settled under California law.  As noted, the duty to disclose the allegedly omitted information arises from the fact that the omission is "contrary to a representation actually made by the defendant."  *Hodsdon*, 891 F.3d at 861.  Otherwise, defendants could make misleading statements that, in a vacuum, were true while leaving out contradictory information.

The alleged "partial representations" that the plaintiffs rely on are in the same Apple product comparison webpage already discussed.  Oppo. 15–16.  The plaintiffs point to three representations that they argue constitute partial representations.  First, Apple represented that the iPhone XS and XS Max used "Gigabit-class LTE" while the iPhone XR used "LTE Advanced."  FAC ¶ 397.  Second, Apple stated in a footnote that "speeds are based on theoretical throughput and vary based on site conditions and carrier."  *Id.*  Third, the webpage disclosed that the iPhones had the same Wi-Fi capability without disclosing the difference in antennas or that those antennas could affect their Wi-Fi connections.  *Id.*  The plaintiffs argue that, in the absence of the omitted

information about antenna differences, these statements are misleading.

Apple replies that "these statements are true" and that, therefore, the alleged omission is not contrary to them. Reply 8. This argument is unpersuasive. Merely because a statement by itself is true does not mean that a related omission is not misleading. Indeed, the entire theory of a case based on partial omissions is that what is disclosed is in some sense true but that the whole truth is missing. On Apple's apparent theory—for which it cites no authority—every omissions claim would also require a statement that, standing alone, is separately actionable as false.

Nonetheless, Apple's broader argument—that there is no contradiction between these three statements and the alleged omissions—is well taken with respect to the two statements about cellular connectivity. On the first statement (the difference in LTE types), the plaintiffs have pointed to no evidence that omission of the difference in antenna types "contradicts" the representations about LTE types. At best for the plaintiffs, on this record, the information about the difference in antennas would be *additional* information. On the second statement, the disclosure is warning customers about the variability of speeds based on external circumstances such as "site conditions and carrier." It is not contradictory to say that is true and that the antennas inside the devices are different, which affects their speed.

I agree with the plaintiffs, however, that the third statement plausibly contradicts the alleged omissions. That third statement is that all three iPhones have identical Wi-Fi capabilities—"802.11ac Wi-Fi with MIMO." FAC ¶ 397. Yet the plaintiffs allege that using a 2x2 MIMO rather than a 4x4 MIMO antenna causes a difference in Wi-Fi capabilities. *See, e.g.*, *id.* ¶¶ 379–80. Accordingly, the omission of "2x2" or "4x4" would be contrary to the partial representation. Apple maintains that it is factually false that the difference in antennas matters in this respect, but its representation in a motion must give way at this stage to the FAC's well-pleaded allegations. As a result, the plaintiffs have plausibly alleged that Apple had a duty to disclose the difference between the antennas.

## C. Pure Omissions

California law on pure omissions claims is less settled. For purposes of this motion, the winding conversation between the Ninth Circuit and California's state courts is not necessary to

describe in detail.  *Hodsdon*  offers the most recent statement of the law.  Previously, courts had

been clear that there was sometimes a freestanding "duty to disclose" facts to consumers, even if

there had been no partial representation.  The classic example is disclosure that a product is likely

to threaten consumers' safety.  In *Hodsdon*, the court thought it unclear when the duty could arise

outside of safety hazards.  It held, however, that a viable pure omissions claim lies when "[1] the

plaintiff alleges that the omission was material; [2] the plaintiff . . . plead[s] that the defect was

central to the product's function; and [3] the plaintiff . . . allege[s] one of the four *LiMandri*

factors."  *Hodsdon* , 891 F.3d at 863.  Those "*LiMandri* factors" are "(1) when the defendant is in

a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of

material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact

from the plaintiff; and (4) when the defendant makes partial representations but also suppresses

some material facts."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).  The last *LiMandri*

factor is applicable to a partial, not pure, omission claim.  As a result, despite the still-developing

state of the law, courts in this District have employed this approach to omissions claims.  *See, e.g.*,

*In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1175–76 (N.D. Cal. 2019);

*Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 978–80 (N.D. Cal. 2018).

I address materiality and centrality to function below because they relate to both partial and

pure omissions.  The plaintiffs argue that (aside from partial representations) two *LiMandri* factors

are present here: "exclusive knowledge" and "active concealment."  I find that the plaintiffs have

adequately alleged that Apple had a duty to disclose the omission based on the former but not the

latter.

### i.    Exclusive Knowledge

The duty to disclose can arise "when the defendant had exclusive knowledge of material

facts not known to the plaintiff."  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958

(N.D. Cal. 2014); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012);

*LiMandri*, 52 Cal. App. at 336.  Courts, however, have not applied this requirement "with

rigidity."  *Czuchaj v. Conair Corp.*, No. 13-CV-1901, 2014 WL 1664235, at *4 (S.D. Cal. Apr.

18, 2014) (collecting cases).  The defendant need not have literally been the sole holder of the

United States District Court
Northern District of California

knowledge.  It is generally sufficient for defendants to have had "superior knowledge" and for the information to have not been reasonably discoverable by the plaintiffs.  *Id.*  As a result, even the presence of the information from publicly available sources—for instance, online—does not automatically foreclose an exclusive-knowledge claim.  *See MyFord*, 46 F. Supp. 3d at 960.  Instead, courts have looked to the nature of the product, the nature of the alleged omission, and the difficulty in reasonably finding the omitted information from sources other than the defendant.  *See id.*; *Czuchaj*, 2014 WL 1664235, at *4.

The plaintiffs have plausibly alleged that Apple had superior knowledge of the alleged "defect."  First, Apple is plainly alleged to have knowledge:  The "defect" is the design *choice* to include a 2x2 MIMO antenna rather than a 4x4 antenna.  Second, that decision is technical, internal to the phone, and would plausibly not be within the ken of a reasonable consumer.

Apple replies that four third-party websites (three of which are referenced in the FAC) disclose the relevant information.  Mot. 15; Reply 8–9.  The existence of these websites does not mean that the plaintiffs' knowledge is on par with Apple's.  Moreover, as other courts have explained, the mere online availability of the information does not necessarily doom an exclusive knowledge claim.  *See MyFord*, 46 F. Supp. 3d at 960.  Given the amount of information available on the internet, that theory would defeat almost any exclusive-knowledge claim unless the knowledge was held as secret by the company.  Here, it would be inappropriate to resolve this claim on a motion to dismiss based on the fact that four third-party articles reference the difference in MIMO technology.  It is not guaranteed, or even likely, that a reasonable consumer would know to search online for such a difference—especially because Apple, as pleaded, includes numerous other specifications on its website.  And, even if consumers searched for this type of information, it is far from clear that they would find these articles.  For purposes of a motion to dismiss, the plaintiffs have plausibly alleged that Apple had "exclusive knowledge."[5]

_____

[5] Apple seems to dispute the level of knowledge it had about the 2x2 antenna versus the 4x4 one.  *See* Mot. 26 n.24 (referring to Apple's knowledge of the 2x2 antenna's operation as "supposed"); Reply 8–9.  It is implausible that Apple would have a poorer understanding of the technical specifications of its products than the average consumer.  Apple's point is especially absurd in light of its other argument, that the plaintiffs would readily have learned that knowledge about Apple's own product from public sources.  *See* Reply 8.

United States District Court
Northern District of California

1

### ii.   Active Concealment

2

"Mere nondisclosure does not constitute active concealment." *Czuchaj*, 2014 WL

3

1664235, at *6.  Instead, a party must take "affirmative acts" that "hide[], conceal[], or cover up[]"

4

the omitted information. *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963).

5

The plaintiffs have not adequately alleged that Apple actively concealed the difference in

6

antennas.  They cannot rely on Apple's purported nondisclosure alone—the active-concealment

7

exception would otherwise swallow the duty-to-disclose rule. *See Czuchaj*, 2014 WL 1664235, at

8

*6.  They argue that the FAC alleges that "individual Plaintiffs complained about connectivity

9

issues, were given replacement iPhone XRs, and still suffered the same connectivity defect."

10

Oppo. 17 (citing FAC ¶¶ 118, 135, 287, 333).  But that is different than a claim that Apple

11

intentionally concealed that the iPhone XRs used 2x2 MIMO antennas.  It is not an allegation that

12

supports an inference that Apple was *pretextually* taking back these iPhones; even in the best light

13

for the plaintiffs, it only creates a "sheer possibility" of that because it is "merely consistent" with

14

it, but not more. *See Iqbal*, 556 U.S. at 678; *see MyFord*, 46 F. Supp. 3d at 931 (finding sufficient

15

allegations that "Ford *pretended* to fix the problems with" cars' computer systems (emphasis

16

added)).  All that the plaintiffs allege is that their iPhones were replaced when they complained;

17

there are no facts that would demonstrate Apple did so to conceal the fact of 2x2 MIMO antennas.

18

The plaintiffs also contend that "when consumers posted on Apple's forums to complain about the

19

iPhone XR's connectivity issues, Apple 'recommended' that consumers visit the troubleshooting

20

webpage on Apple's website or review Apple's one-year warranty."  Oppo. 17 (citing FAC ¶¶

21

381–85).  These allegations also do not adequately indicate active concealment.  A company's

22

recommendation to visit its troubleshooting page or review a warranty is, by itself, far from an

23

active attempt to hide its products' specifications.

24

### D.  Materiality and Centrality to Function

25

As explained, California law requires that the alleged omission be "material" and, in a pure

26

omissions case, that the alleged defect that was concealed be "central to the product's function."

27

*Hodsdon* , 891 F.3d at 863.  (The plaintiffs do not argue that there is any safety hazard present

28

here.)  The plaintiffs must adequately allege that "members of the public are likely to be

deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).  Whether they are is—absent special circumstances not relevant here—governed by what a "reasonable consumer" would be led to believe.  *Id.*

The difference in antenna types would plausibly be material to a reasonable consumer. Materiality is a highly fact-bound inquiry.  Accordingly, the plaintiffs would only fail at the pleading stage if "the fact misrepresented is so obviously unimportant that the jury could not reasonable find that a reasonable [person] would have been influenced by it." *Rutledge*, 238 Cal. App. 4th at 1176 (internal quotation marks omitted).  Here, the plaintiffs have alleged that there are significant differences between the 2x2 MIMO and 4x4 MIMO antenna that affect cellular and wireless connectivity.  The difference in quality that results from the antennas affects fundamental aspects of the product.

Apple cannot reasonably dispute that inferior cellular or wireless connectivity in a cell phone would at least plausibly be material to a reasonable consumer.   Instead, it argues that the plaintiffs have not alleged that any of the omissions are material because they have pleaded "no facts to establish any understanding or possible 'expectation' *regarding the use of 2x2 MIMO versus 4x4 MIMO cellular antennas*."  Mot. 16 (emphasis added).  It points out that "no prior iPhone model contained 4x4 MIMO antennas" and that, as the plaintiffs allege, the relevant advertising and marketing materials did not reference either the 2x2 or the 4x4 antennas.  *Id.*  As the plaintiffs have alleged it, their reasonable expectation was not about the technical details behind antennas—that is, a plaintiff did not have to have an expectation that the product would have four transmit and receive pathways—it was about the ultimate connectivity quality that resulted from the antennas.

Apple's only cited case, *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414 (9th Cir. 2016), is far different from this one.  There, the court upheld dismissal of claims that Apple's "Siri" feature had inconsistent performance because the plaintiffs could not "articulate what level of consistent performance Apple fraudulently represented."  *Id.* at 416.  Here, the plaintiffs' claim is that they expected the level of performance in other iPhones of the same generation.

On the facts of this case, the reasons that Apple's alleged omission would plausibly be

1  material to a reasonable consumer and is central to the product's function are identical.  Apple did

2  not challenge the latter, perhaps because it is clear that problems with a smartphone's cellular and

3  wireless connectivity are central to its function.

4      **E.  Exposure to and Reliance on Misleading Statements**

5      "An essential element for a fraudulent omission claim is actual reliance."  *Daniel v. Ford*

6  *Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).  Apple argues that the plaintiffs have not

7  sufficiently pleaded that they were exposed to or relied on a misleading omission prior to

8  purchasing their iPhone XRs.  Mot. 9–11.  It points out that, while all but four of the plaintiffs

9  claim to have "reviewed marketing materials and advertisements concerning the iPhone XR prior

10  to purchasing it," *see supra* Section I.A, the plaintiffs do not identify any statement that any of

11  them saw or relied on.  Although the plaintiffs also highlight two examples of particular pieces of

12  marketing that they believe are misleading—the comparison webpage and press release—they do

13  not allege that any of them ever reviewed or relied on those statements.

14      The plaintiffs' response is somewhat puzzling.  They claim that they have met Rule 9(b)'s

15  heightened pleading standard by pointing to only the comparison webpage and press release but

16  later argue that they can adequately show reliance without identifying "any specific marketing

17  materials or advertisements."  Oppo. 11.  It would seem that the plaintiffs are trying to have it both

18  ways:  They meet Rule 9(b)'s specificity requirements with particular misleading statements but

19  meet the reliance requirement with unnamed, unidentified other advertising and marketing.

20      This potential contradiction, in concert with the FAC itself, is what leads me to conclude

21  that the plaintiffs are advancing both a partial and a pure theory of omission.  Put another way, the

22  plaintiffs *are* arguing that the comparison webpage and press release are misleading due to partial

23  representations; but they are also arguing that Apple had a freestanding duty to disclose because

24  this alleged defect goes to the central function of the product.  For the reasons explained below, I

25  conclude that, on this understanding, the plaintiffs have adequately alleged reliance with respect to

26  the pure omissions but not the partial representations.[6]

27  _____

28  [6] For the reasons I explained earlier, the plaintiffs meet the reliance requirement for Article III
standing purposes.  In a case such as this, I conclude that a plaintiff can show her injury is "fairly

United States District Court
Northern District of California

United States District Court
Northern District of California

### i.      Pure Omissions

As explained, "actual reliance" is an "essential element" in an omission claim. *Daniel*, 806 F.3d at 1125. "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision." *Id.* Importantly, however, a plaintiff can show this reliance "by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (internal quotation marks omitted). I have already explained that the alleged omission here is plausibly material. When that is so, "[t]hat one would have behaved differently can be presumed, or at least inferred." *Id.*

Apple argues that the plaintiffs do not satisfy Rule 9(b) because they do not identify with specificity any particular statement by Apple that they relied on prior to purchasing their iPhone XRs. Mot. 9–10. It is true that no plaintiff alleges he or she relied on a specific communication from Apple. The comparison webpage and the press release are the only two statements by Apple that the plaintiffs raise as misleading. None of the plaintiffs allege that they saw or relied on either of those. However, in line with other courts in this District and *Daniel*, I conclude that the plaintiffs do not, in a pure omission claim, have to plead alleged omissions with the specificity on which Apple insists.

Here, the plaintiffs allege that (1) Apple did not disclose material information about the iPhone XR; (2) the plaintiffs reviewed marketing and similar materials about the iPhone XR prior to making their purchases[7]; and (3) the plaintiffs would not have made the purchases if they knew

---

traceable" to the alleged omission(s) generally.

[7] Three plaintiffs (Rea, Burst, and Hunt) do not make such an allegation. *See* FAC ¶¶ 179–83, 329–35, 341–45. The plaintiffs' Opposition does not attempt to defend the sufficiency of their allegations. These plaintiffs' misrepresentation-based claims are therefore DISMISSED with leave to amend. Plaintiff Villagran also does not make the same allegation as most plaintiffs, but it is plausible that the information would have been disclosed to him when "he purchased a new iPhone XR from the AT&T store." *See Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950 (N.D. Cal. 2018) (finding it plausible that the information would be disclosed when buying from a Ford dealership).

of the difference in antenna capabilities.  These representations satisfy *Daniel*'s holding that a plaintiff can establish reliance by plausibly alleging she would have behaved differently had the disclosure been made.  *Daniel*, 806 F.3d at 1225.  Moreover, other courts have explained, and I agree, that while, "[t]ypically, averments of fraud must be accompanied by 'the who what when where, and how' of the misconduct charged," pure omissions claims "can succeed without the same level of specificity required by a normal fraud claim."  *MacDonald*, 37 F. Supp. at 1096; *accord Overton v. Bird Brain, Inc., No. SACV 11-1054 DOC ANX*, 2012 WL 909295, at *4 (C.D. Cal. Mar. 15, 2012); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).  This is because, in a pure omissions case, a plaintiff "will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a[n affirmative] false representation claim."  *MacDonald*, 37 F. Supp. 3d at 1096.

The plaintiffs' allegations here, as in many pure omissions cases, are that Apple had a duty to disclose something to consumers.  The plaintiffs do not have to point to a hypothetical, counterfactual piece of marketing in which the disclosure would have occurred.  Instead, to satisfy the pleading rules and *Daniel*, the plaintiffs had to plausibly allege that Apple's pre-purchase disclosure would have altered their purchases.

Apple also argues that the plaintiffs have not established a plausible method of disclosure. Mot. 11.  As discussed, the plaintiffs allege that they reviewed Apple marketing a similar materials.  Drawing reasonable inferences in the plaintiffs' favor, and "given the inherent limitations of an omission claim," *MacDonald*, 37 F. Supp. 3d at 1096, it is at least plausible that they would have come across Apple's disclosure through Apple's usual marketing and sales channels.  *See id.* ("[T]he 'where' is the various channels of information through which Ford sold Class Vehicles").[8]

---

[8] Apple's reliance on *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) (Orrick, J.) is misplaced.  *See* Mot. 11; Reply 6.  First, the possible channels of dissemination of information there are different than those Apple is alleged to use.  *See Colgate*, 402 F. Supp. 3d at 746.  In *Colgate*, moreover, the plaintiffs had failed only to adequately allege the "where" of the defendant's misleading statements.  *Id.*  There, however, partial representations were intertwined with the omissions, whereas this case has been litigated, in part, as a pure omission case under *Daniel* and *Hodsdon* .  To the extent that the FAC here is based on partial representations, it is insufficient for similar reasons to those in *Colgate*.  That case did not raise, let alone disagree

### ii.     Partial Representations

The plaintiffs have not alleged that they saw or relied on the two particular partial representations they cite—the comparison webpage and press release.  Unlike in a pure omissions case, in a partial representation case, the plaintiff *will* "be able to specify the time, place, and specific content of an omission as would a plaintiff in a[n affirmative] false representation claim." *MacDonald*, 37 F. Supp. 3d at 1096.  This is because what is misleading about a partial representation is that the affirmative representation is not accompanied by the omitted information.  Here, the plaintiffs allege there are two partial representations: the press release and the comparison webpage.  None of the plaintiffs, however, alleges that he or she viewed either.  A plaintiff who never sees the partial misrepresentation has not been misled.  The plaintiffs have not met Rule 9(b)'s pleading requirements; not only have they failed to spell out when they encountered these statements, where they did so, or how it affected them, they have not even pleaded *if* they encountered them.  The plaintiffs' only response is to defend their pleading on the theory of pure omissions described above; for the reasons explained, that type of pleading is inadequate to allege a partial representation claim under these circumstances.

To the extent that the FAC is premised on these partial representations, instead of pure omissions, the motion to dismiss is GRANTED.  It seems likely that in an amended complaint, at least some plaintiffs can allege that they relied on one or both of the alleged partial representations; dismissal is without prejudice.

### F.  The Economic Loss Rule

Apple argues that the "economic loss rule" bars the plaintiffs' fraud by concealment claim (Count V).  As a general matter, the economic loss doctrine dictates that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  In other words, the remedy for a purely economic loss in a sale is in contract, not in tort.  *See id.*  Where there is physical or

with, the framework enunciated in *MacDonald* and related cases.

property injury, however, the buyer can pursue a tort remedy. *Id.*

Whether California's economic loss rule bars fraudulent omissions claims based on purely economic injury is unsettled. As I explain below, *Robinson* held that the economic loss doctrine did not prohibit recovering for purely economic injury due to *affirmative* fraudulent misrepresentations. *Id.* at 991–92. It explicitly did not address fraudulent concealment or omissions. *Id.* at 991. California's federal district courts have split on the issue, though it appears most have held that the economic loss doctrine does bar fraudulent omissions claims based on purely economic loss, and I agree with that assessment. *See Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at \*23–\*24 (N.D. Cal. Apr. 23, 2020) (surveying decisions); *N.L.R.B. v. Calkins*, 187 F.3d 1080, 1089 (9th Cir. 1999) ("When interpreting state law, we are bound by the decisions of a state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." (internal citations and quotation marks omitted)). *Robinson*'s rationale applies equally well to omissions as to affirmative representations and there is no principled reason, in this context, for distinguishing between the two types of intentional misrepresentations.

*Robinson* explained that "the economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." 34 Cal. 4th at 988. The fundamental rationale, the California Supreme Court said, is that the rule "prevents the law of contract and the law of tort from dissolving one into the other." *Id.* (internal quotation marks and alteration omitted). A harm "above and beyond" the breach of contract, *Robinson* states, "becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Id.* at 989. Accordingly, the economic loss rule did not bar recovery where, among other situations, the breach "directly causes physical injury," there was a "wrongful discharge in violation of fundamental public policy," or "where the contract was fraudulently induced." *Id.* at 989–90. In each of those situations, "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Id.* at 990.

Synthesizing its past cases, the court held that the economic loss doctrine would not generally apply "when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Id.* The key was intent: "Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated." *Id.*

The court then turned to the question of the fraudulent misrepresentations and omissions on the facts of that case. There, the breach of contract was the defendant's provision of faulty "clutches" (for manufacturing helicopters) that ultimately failed. *See id.* at 985–88, 990. In addition to this breach, the defendant had provided false "certificates of conformance" about the parts, failed to provide the serial numbers of the clutches until months after they failed, and redacted reference to information about the clutches before giving it to the plaintiff. *Id.* at 990. The court focused only on the provision of the certificates of conformance, the affirmative misrepresentation. *Id.* at 990–91. It explained that this "tortious conduct was separate from the breach itself, which involved [the defendant's] provision of the nonconforming clutches." *Id.* at 991. Therefore, the court held that the economic loss rule did not bar the plaintiff's fraud and intentional misrepresentation claims. *Id.* Because that holding was dispositive, the court explained it "need not address the issue of whether [the defendant's] intentional concealment constitutes an independent tort." *Id.*

All of the reasons that supported *Robinson*'s holding about affirmative misrepresentation support finding that fraudulent omissions—at least in the circumstances of this case—are not barred by the economic loss doctrine. A fraudulent omission, no less than an affirmative misrepresentation, falls into several categories to which the court held the rule should generally not apply: Where "breach is accompanied by a traditional common law tort, such as fraud" and "the means used to breach the contract are tortious, involving deceit." *Id.* at 990. California, moreover, recognizes that the related claim of fraudulent inducement to contract is tortious in

29

nature and not barred by the economic loss rule.  *Id.* at 989–90.  A fraudulent omission leading to adopting a contract is just as much "above and beyond" the breach of contract as a fraudulent affirmative misrepresentation.

A fraudulent omission, additionally, is just as intentional as an affirmatively misleading misrepresentation.  Focusing on the touchstone of "intentional conduct," *Robinson* teaches, "gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated."  *Id.* at 990.  A mere negligent omission is not, by definition, fraudulent.  Indeed, *Robinson* highlights that the classic elements of "fraud" include "a misrepresentation"—which it defined as including "false representation[s], concealment[s], or nondisclosure[s]"—as well as scienter and intent to defraud.  *Id.*  The court explained that, where there is fraud, "a party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract."  *Id.* at 993 (internal alteration and quotation marks omitted).  That reality is no less true if the deliberate misrepresentation is by omission or affirmative representation.

The court also found that "California's public policy also strongly favors [its] holding." *Id.* at 991.  It explained that plaintiffs pursuing "valid fraud action[s] . . . advance[] the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future."  *Id.* at 992 (internal quotation marks omitted).  A misrepresentation can be either affirmative or by omission, and there is no reason that one is, by its nature, more harmful than the other.  The court also explained that California "has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices."  *Id.*  And, again, a fraudulent omission is, by its nature, just as deceptive as a fraudulent affirmative misrepresentation.

It is true that the court stated that its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations" and, therefore, its "decision will [not] open the floodgates to future litigation."  *Id.* at 993.  But the safeguards it thought would prevent a flood of litigation—that "fraud must be pled specifically [and] general and conclusory allegations do not suffice"—apply equally to omissions as to affirmative misrepresentations.  *Id.* at 993.

Most courts that have held to the contrary have generally explained that *Robinson* itself

held only that affirmative misrepresentations survive the economic loss rule and ended their analysis there.  *See Sloan,* 2020 WL 1955643, at *23–24; *Zagarian v. BMW of N. Am., LLC*, No. CV 18-4857, 2019 WL 6111731, at *3 (C.D. Cal. Oct. 23, 2019); *Thompson v. BMW of N. Am., LLC*, No. SACV 17-01912, 2019 WL 988694, at *5 (C.D. Cal. Jan. 10, 2019); *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 904 (E.D. Cal. 2018); *Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*, 73 F. Supp. 3d 1206, 1224–25 (N.D. Cal. 2014).  It may be that the parties in those cases did not argue for extending *Robinson*'s reach in line with its reasoning.  In any event, *Robinson* explicitly left the question of omissions unaddressed and, as I have explained, its reasoning compels finding that recovery for fraudulent omissions is not barred by the economic loss rule.  I have not found, and Apple does not point to, any case that held that there is anything in *Robinson*'s rationale that requires treating affirmative misrepresentations and omissions differently.  I instead agree with those courts that have held that California's economic loss rule does not bar actions like this one.  *See, e.g.*, *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, No. CV1706656ABFFMX, 2019 WL 3000646, at *6 (C.D. Cal. May 22, 2019). *Cf. Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *9 (N.D. Cal. June 4, 2018) (fraudulent inducement by omission).

Here, the plaintiffs claim that Apple committed fraud by concealment "above and beyond" any contractual breach.  As a result, I find that the plaintiffs' fraud claim is not foreclosed by the economic loss rule.

### G.  Misrepresentation Claims Conclusion

For the reasons explained, the plaintiffs' misrepresentation-based claims survive many of Apple's challenges.  The plaintiffs have not, however, adequately alleged reliance when it comes to the partial misrepresentations.  To that extent only, the motion to dismiss Counts III, IV, and V is GRANTED; it is otherwise DENIED.

## V.  WARRANTY CLAIMS

The plaintiffs' second broad group of claims involve allegations that Apple violated federal and state law by breaching express and implied warranties and the covenant of good faith and fair dealing.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### A.  Express Warranty Claim

The plaintiffs[9] bring their express warranty claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq*. Under that statute, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).

The plaintiffs allege that Apple violated the MMWA by breaching its One (1) Year Limited Warranty (the "Warranty") [Dkt. No. 32-2].  These plaintiffs claim they have "attempted to have their iPhone XRs repaired under the warranty."  FAC ¶ 439.  They argue that Apple breached the Warranty by (1) providing iPhone XRs that failed to conform to "its express warranties," (2) providing iPhone XRs that breach the Warranty "because the defective connectivity technology/systems, including the 2x2 MIMO antennas, were present in the iPhone XR at the time of sale," (3) failing to "cover the full expenses associated with repairing and/or replacing the defective connectivity technology/systems in Plaintiffs' and the Subclass members' defective iPhone XRs," and (4) either "fail[ing] to repair the iPhone XR or merely replac[ing] the defective iPhone XR with a new or refurbished iPhone XR and [being] unable to successfully repair the defects in Plaintiffs' and the Subclass members' iPhone XRs, despite having had reasonable opportunities to do so."  *Id.* ¶¶ 436–39.

I conclude that the plaintiffs have not pleaded that Apple breached the Warranty.  As relevant here, the Warranty states that Apple "warrants the Apple-branded iPhone . . . hardware product . . . against defects in materials and workmanship when used normally in accordance with Apple's published guidelines."  Warranty at 2.  The plaintiffs' claims, however, do not relate to "defects in materials [or] workmanship"—that is, manufacturing defects.  Instead, the plaintiffs allege that Apple made the choice (that it allegedly concealed) to include the 2x2 MIMO antenna

---

[9] In this section, "plaintiffs" refers to the 13 plaintiffs who bring the express warranty claim on behalf of themselves and a proposed "Nationwide Express Warranty Subclass."  *See* FAC ¶ 427. The FAC alleges that there are 15 such named plaintiffs.  *Id.*  Two of these plaintiffs (Gross and Mallamace) are not named as plaintiffs in the remainder of the FAC, *see id.* at ECF 1–2, and there are no substantive allegations concerning them.

rather than the 4x4 MIMO antenna.  Put another way, the plaintiffs' complaints all relate to a design choice—in their view, a design "defect"—rather than a manufacturing defect covered by the Warranty.  As many courts have held—including about this same Warranty—"[a]n express warranty covering 'materials and workmanship' does not include design defects."  *Clark v. LG Elecs USA, Inc.*, 2013 WL 5816410, at *7 (S.D. Cal. Oct. 29, 2013); *accord Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006), *as modified* (Nov. 8, 2006).

In response, the plaintiffs do not dispute that the Warranty covers only manufacturing defects, they argue instead that the FAC actually alleges defects in manufacturing.  Oppo. 19–20.  The plaintiffs' attempt to rewrite the FAC in their Opposition is not plausible.  *See, e.g.*, *Davidson*, 2017 WL 976048, at *11 ("[T]he plaintiffs' chosen language is not dispositive in determining whether the alleged defect is a defect in design or a defect in 'materials and workmanship.'").  Apple's improper behavior, the plaintiffs allege over and over, is that the "iPhone XR is equipped with a 2x2 MIMO antenna versus the 4x4 MIMO antenna Apple uses in its iPhone XS and iPhone XS Max" and "*this difference* causes the iPhone XR to have half the signal connectivity and reliability of the iPhone XS and iPhone XS Max and renders the XR far less capable of obtaining a reliable connection."  FAC ¶ 3 (emphasis added).

The plaintiffs' individual claims reflect this reality.  *See, e.g.*, ¶ 14 ("It was only recently that Plaintiff first learned that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna *instead of* the 4x4 MIMO antenna." (emphasis added)).  The plaintiffs state, for instance, that what they were "not made aware of [is] the fact that the iPhone XR was equipped with an inferior 2x2 MIMO antenna" and that the 2x2 MIMO antenna "would prevent it from adequately connecting to voice and data networks such that she could use her iPhone XRs in a reliable manner as expected."  *E.g., id.* ¶ 13.  The plaintiffs allege that what they wished they had known before purchasing is that the iPhone XR was equipped with the 2x2 MIMO antenna.  *E.g., id.*  When describing the technology at issue, the FAC is similarly clear about the problem:

The 2x2 MIMO antenna in the iPhone XR is only capable of two streams of data for

United States District Court
Northern District of California

transmit and receive pathways, while 4x4 MIMO antenna in the XS and XS Max offers four streams.  The differences between 2x2 MIMO and 4x4 MIMO affect not just the 4G LTE cellular connection, but also industry standard 802.11ac WiFi connections.

*Id.* ¶ 379.  And:

Testing has revealed that the increased pathways of the 4x4 MIMO antenna affects not only download and upload data speeds, but also network connectivity.  That is, given the same signal strength from a cellular or WiFi antenna, a device equipped with a 2x2 MIMO antenna does not connect as well and suffers from an inferior signal connection compared to a device equipped with the superior 4x4 MIMO antenna.

*Id.* ¶ 380.  As I have discussed throughout this Order, the plaintiffs' substantive legal claims are of a piece with these allegations.

Fighting against this current, the plaintiffs point to three specific allegations that they argue show they have been alleging a manufacturing defect the whole time.  First, the plaintiffs cite their introductory allegation that "Apple has violated these duties of truthfulness and candor by designing, *manufacturing*, and selling their iPhone XR with defects that Apple was aware of."  Oppo. 19 (citing FAC ¶ 3) (emphasis in Oppo.).  In context, it is clear that the "defect" is the inclusion of the 2x2 MIMO antenna rather than the 4x4—a point the next sentence says explicitly.  FAC ¶ 3.  The "defect" is not classified here or anywhere else in the FAC as an additional manufacturing problem with the 2x2 antenna itself.  Nor does it matter that the plaintiffs' phrasing is that the iPhone XR was "design[ed], *manufactur[ed]*, and s[old] . . . with defects."  That is a natural way to discuss a design defect.  This sentence, in fact, cuts against the plaintiffs' argument because a manufacturing defect would not be "designed" with that defect—that is the very definition of a manufacturing defect.  *See McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002).  Moreover, to state obliquely that something was manufactured "with" defects is quite different than an allegation that the manufacturing (as opposed to design) caused the defect.  *See Troup*, 545 Fed. App'x. at 669 ("Despite its scattered references to 'materials', the gravamen of the complaint is that the Prius's defect resulted from the use of resin to construct the gas tanks, which is a design decision.").

Second, the plaintiffs point to one of their class allegations.  When discussing whether common questions of law and fact predominate over individual class members' questions, the plaintiffs allege that one question is "Whether the iPhone XR contains marketing, design, or

34

manufacturing defects." FAC ¶ 421. The problem is that this question is not supported by any substantive allegation in the FAC. In their Opposition, the plaintiffs do not indicate any allegation that implicates the question. Even at best for the plaintiffs, moreover, it is conclusory and, therefore, insufficient. *See Gilead*, 536 F.3d at 1055.

Third and finally, the plaintiffs point to their allegation—repeated by a number of plaintiffs—that they "would often be unable to hear the caller's voice or they would be unable to hear her voice," "would have difficulty sending and receiving text messages," and "would have intermittent or inoperable data connections." *E.g.*, FAC ¶ 14. Consequently, the plaintiffs argue, they were truly pleading manufacturing defects. Oppo. 20. Again, the plaintiffs take their allegations out of context. To start, the next sentence in the paragraph they cite expands on what is behind these alleged connectivity issues: "It was only recently that Plaintiff first learned that Apple had designed and manufactured the iPhone XR with an inferior 2x2 MIMO antenna instead of the 4x4 MIMO antenna that Apple uses in its iPhone XS and iPhone XS Max." FAC ¶ 14. Further, as I explained above, the plaintiffs elsewhere repeatedly link these connectivity issues with the choice to include a 2x2 antenna instead of a 4x4 antenna. Nowhere do the plaintiffs state that there is any indication the 2x2 antenna suffers from problems above and beyond those inherent in its design.

Aside from their allegations, the plaintiffs also speculate that "Apple's own behavior suggests that it recognizes a manufacturing defect source because when iPhone XR owners complained about the connectivity issues, Apple would often replace the smartphones with the identical models." Oppo. 21. That assertion is consistent with a manufacturing defect claims, but (without more) it is "merely consistent" with it. *See Gilead*, 536 F.3d at 1055. It also cannot save the plaintiffs from their own pleading.

At the hearing, the plaintiffs relied on *Cabebe v. Nissan of North America, Inc.*, No. 18-CV-00144-WHO, 2018 WL 5617732 (N.D. Cal. Oct. 26, 2018). There, as here, the warranty covered materials and workmanship defects, not design defects. *Id.* at *11. There, as here, the defendant argued that the plaintiffs had, at most, alleged a design defect, not a manufacturing one. *Id.* But there, unlike here, the plaintiffs *had* plausibly alleged a manufacturing defect. *See id.* The

35

plaintiffs "plausibly alleged that these vehicles differ from the product the manufacturer intended to sell" and, based on the type of defect there, "Nissan could not have intended for the Class Vehicles to operate as described throughout the FAC." *Id.* What's more, the "numerous examples of the alleged . . . Defect in the FAC suggest that these vehicles came off the assembly line in a substandard condition." *Id.* (internal quotation marks omitted). Here, as I have explained, the allegations "wholly centered on design decisions." *Id.* at *12. Unlike in *Cabebe*, there is no well-pleaded allegation that shows that the 2x2 MIMO antenna was intended to operate differently than it does or that the iPhones did not live up to the standard they were designed to.

Finally, the plaintiffs contend that the connectivity problems may be a manufacturing defect or a design defect and that only "[d]iscovery will show" which. Oppo. 20.[10] If the plaintiffs wished to allege a manufacturing defect, they could have in their complaint. To do so, however, they would need to put forward plausible allegations showing such a defect. For instance, they might allege that the 2x2 antenna did not perform as designed. *See McCabe*, 100 Cal. App. 4th at 1120. But they have not, and they cannot amend their complaint via briefing. I will permit the plaintiffs leave to amend their complaint if they wish to pursue this new theory. I caution them, however, that a manufacturing defect theory cannot simply be an attempt to reframe their design-based theory; they must adequately plead an issue with the 2x2 antennas not inherent in their design, and all other allegations that would show their claims were covered by the Warranty. The motion to dismiss Count I is GRANTED.[11]

**B. Implied Warranty Claims**

The plaintiffs allege that Apple breached the implied warranty of merchantability under the

---

[10] That whether the 2x2 antenna suffers from a manufacturing defect is "peculiarly within [Apple's] knowledge" is immaterial for purposes of this decision. Oppo. 21. This motion to dismiss does not test the *sufficiency* of the plaintiffs' manufacturing allegations because they have not made such allegations in the first place. For the same reason, I do not "shift [the] burden" onto the plaintiffs to identify the source of a manufacturing defect, *id.* 20, I conclude that the plaintiffs are attempting to rewrite their FAC during briefing.

[11] Apple's point that "the fact that Plaintiffs seek to represent a class of all purchasers of an iPhone XR for all their other claims further shows that they allege a design choice in all iPhone XRs" is well-taken. Mot. 19; *see Davidson*, 2017 WL 976048, at *11. There is no need to determine if that consideration alone would compel a different result because I find that the FAC, on its own terms, does not allege a manufacturing problem that would be covered by the Warranty.

United States District Court
Northern District of California

1    MMWA (Count II) and California state law (Count VI).  Apple contends, and the plaintiffs do not

2    dispute, that the MMWA claim turns on the state-law claim.  *See* Mot. 21 n.16; *see also Clemens*

3    *v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008).

4         California's statute on the warranty of merchantability provides, "Unless excluded or

5    modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale

6    if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code. § 2314(1).  There

7    are several requirements for a good to be merchantable, such as its quality and fitness for ordinary

8    purpose.  *See id.* § 2314(2).  The parties' argument about the implied warranty, however, does not

9    concern these requirements, so I do not discuss it in detail.

10                        **i.    Adequacy of Disclaimer**

11        Apple first argues that the Warranty validly disclaims the implied warranty of

12   merchantability. Warranty at 2; Mot. 21–22.  While the plaintiffs do not dispute that the warranty

13   of merchantability can be disclaimed, they assert that the Warranty's disclaimer is not sufficient to

14   do so.  Oppo. 21–24.  Under California law, the implied warranty of merchantability can be

15   disclaimed.  To do so, the language at issue "must mention merchantability."  Cal. Com. Code §

16   2316(2).  If the disclaimer is a writing, it must be "conspicuous."  *Id.*  A term is "conspicuous"

17   when it is "written, displayed, or presented that a reasonable person against whom it is to operate

18   ought to have noticed it."  *Id.* § 1201(b)(10).

19        The Warranty properly disclaims the implied warranty of merchantability.  It "mentions"

20   merchantability; is near the top of the Warranty document; and is in uppercase letters under an

21   underlined, uppercase heading that reads "Warranty Limitations Subject to Consumer Law."

22   Warranty at 2.  Several other cases have found that this Warranty—or a predecessor warranty,

23   which the plaintiffs do not argue is meaningfully different—validly disclaims the implied

24   warranty of merchantability.  *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014);

25   *Davidson*, 2017 WL 976048, at *14–*15 (N.D. Cal. Mar. 14, 2017).  Even if that were not so, the

26   plaintiffs have pointed to no authority in which a similarly conspicuous disclaimer was held

27   insufficient.

28        The plaintiffs contend that a disclaimer of an implied warranty must be "litigated, not

United States District Court
Northern District of California

decided on the pleadings."  Oppo. 22.  If there were some disputed fact at issue, that would be true, but the plaintiffs do not point to any.  Both parties agree on exactly what the relevant disclaimer entails and about the Warranty it is a part of—which was incorporated by reference into the FAC.  Consequently, whether that disclaimer is adequate as a matter of law is a proper question at this stage.  *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

The plaintiffs argue that a question of fact exists as to whether the plaintiffs had actual or constructive knowledge of the Warranty as a whole.  The FAC, however, pleads that "Apple issued [the Warranty] to all original purchasers, including Plaintiffs and the other Class members." FAC ¶ 398.  The plaintiffs also assert that "Plaintiffs and the other Class members reasonably relied on Apple's warranties regarding the quality, durability, and other material characteristics of their iPhone XRs, including, but not limited to, the representation that the iPhone XRs contained no known defects (defects known to Apple) at the time of sale."  *Id.* ¶ 402.  The plaintiffs now say that they allege only that the Warranty was "issued" but there is "no evidence in the record regarding how it delivered the Hardware Warranty to Plaintiffs (e.g., on their iPhone XR during initial setup, in the box containing the iPhone XR, etc.)."  Oppo. 22–23.  But the plaintiffs admit they were issued the Warranty and "relied" on Apple's warranties, which must include the only express warranty the FAC speaks of.  There is no fact in reasonable dispute because the plaintiffs' allegations themselves settled that dispute.

Neither of the cases cited by the plaintiffs demonstrate that there is an actual dispute of material fact.  In one of them, the plaintiff alleged that she had never seen the disclaimer at all, creating a factual dispute.  *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485, 2013 WL 5816410, at *15 (S.D. Cal. Oct. 29, 2013).  Here, in contrast, the plaintiffs must have seen the Warranty or they could not have "relied" on it.  The other case is wholly inapplicable because there was no "language or conduct" disclaiming the warranty; the only alleged disclaimer was "a drawing on the box and to the notion that golf is a dangerous game."  *Hauter v. Zogarts*, 14 Cal. 3d 104, 119– 20 (1975).

The plaintiffs next respond that the disclaimer is not sufficiently "conspicuous."  Oppo. 22–24.  I agree with those other courts that have upheld this disclaimer.  *See, e.g.*, *Minkler*, 65 F.

United States District Court
Northern District of California

United States District Court
Northern District of California

Supp. 3d at 819; *Davidson*, 2017 WL 976048, at \*14–\*15.  The plaintiffs are correct that much of the Warranty is written in uppercase, making the use of uppercase in the disclaimer less significant.  But the disclaimer also appears near the top of the Warranty and is followed by a series of paragraphs that are not in uppercase.  A reasonable consumer receiving the Warranty would be put on constructive notice of the disclaimer because, despite the heavy use of uppercase elsewhere, it stands out sufficiently due to its prime position.  Disclaimers have been upheld that were more buried than this one because of similar contrasts with the surrounding text.  *See, e.g.*, *In re Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571, at \*8 (N.D. Cal. Aug. 2, 2012) (finding a disclaimer "in the middle of a paragraph on the fourth page of a six-page document" was conspicuous in "light of the contrasting type, size, and font of the heading and the body text"); *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178-CS, 2008 WL 552482, at \*8 (N.D. Cal. Feb. 27, 2008) (finding a disclaimer on the fourth and fifth pages to "stand out visually" because it used all uppercase and bold).[12]

### ii.    Unconscionability of Disclaimer

The plaintiffs also assert that the disclaimer is unconscionable.  Oppo. 24–25; FAC ¶ 534.  Unconscionability has two components, procedural and substantive:  Under California law, a contract must be both procedurally and substantively unconscionable to be unenforceable.  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

The disclaimer is not procedurally unconscionable.  Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power."  *Id.*  The plaintiffs argue that there was such a disparity in bargaining power between them and Apple and that, as a result, they had no choice but to sign on to a standardized contract of adhesion or reject it entirely.  Oppo. 24.  Courts applying California law have generally rejected claims like this when consumers have "reasonably available alternative sources of supply."  *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768 (1989), *opinion modified* (July 21, 1989); *see, e.g.*,

---

[12] The plaintiffs again argue that, "[a]t the very least," I should permit discovery prior to making this determination.  Oppo. 23.  Discovery would not reveal anything because it has been established that the plaintiffs were given the Warranty and the relevant test is whether a reasonable consumer would be put on sufficient notice by the disclaimer.

1   *Davidson*, 2017 WL 976048, at *12 (finding that the Warranty here was not procedurally

2   unconscionable because there were alternative sources of smartphones); *Berenblat v. Apple, Inc.*,

3   No. 08-4969-JF, 2010 WL 1460297, at *5 (N.D. Cal. Apr. 9, 2010).  The plaintiffs themselves

4   allege that there are alternative sources of smartphones.  *See, e.g.*, FAC ¶¶ 13 ("Had she known

5   about the inferior 2x2 MIMO antenna on the iPhone XR, Plaintiff would have paid less for the

6   phones, or she would have selected a different model or different manufacturer's phone that did

7   not use an inferior antenna."); 396 ("[T]he iPhone XR would have serious connectivity

8   shortcomings as compared to consumers' other choices in the marketplace.").

9           Nor is the disclaimer substantively unconscionable.  "The substantive element of

10  unconscionability focuses on the actual terms of the agreement and evaluates whether they create

11  'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Aron v. U-Haul Co. of*

12  *California*, 143 Cal. App. 4th 796, 808 (2006).  The disclaimer here does precisely what the law

13  allows:  It disclaims the implied warranty of merchantability.  If there were a well-pleaded

14  allegation that Apple had adopted the disclaimer in response to the 2x2 MIMO antenna having a

15  defect—that is, to knowingly sell a defective product to consumers and intentionally remove their

16  avenues of recourse—my conclusion might be different.  But the disclaimer applies across all

17  versions of the iPhone, including those with 4x4 MIMO antennas.  Warranty at 2.  It also applies

18  beyond the iPhone, across numerous Apple products.  *Id.*  Additionally, the same disclaimer was

19  upheld by courts prior to the release of the iPhone XR.  There is, in short, no adequate allegation

20  to support the plaintiffs' argument that Apple is using the disclaimer to "evade responsibility . . .

21  [for] market[ing] and s[elling] phones that were plagued by connectivity issues."  Oppo. 24; *see*

22  *also id.* (arguing that the disclaimer is unconscionable because Apple "disclaim[ed] an implied

23  warranty while knowing that the product contained a defect that made it, essentially, unusable for

24  its intended purpose at the start.").

25                  **iii.    Implied Warranty Conclusion**

26          The implied warranty of merchantability was properly disclaimed by Apple's express

27  Warranty.  Therefore, I GRANT the motion to dismiss Count VI.  While there is no reason to

28  grant leave to amend with respect to most of the issues discussed, I cannot say that there is no set

of allegations that could be pleaded to establish unconscionability, so dismissal is without prejudice.  Count II is similarly dismissed without prejudice to the extent it is based on California law.  Its dismissal is also without prejudice to the plaintiffs' ability to base that cause of action on the laws of other states, should I eventually hold that California law does not apply to all of them.

### C.  Covenant of Good Faith and Fair Dealing Claim

The plaintiffs' final claim is for violations of the covenant of good faith and fair dealing under California law (Count VII).

"It has long been recognized in California that there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000), *as modified* (July 26, 2000) (internal alternation and quotation marks omitted).  The covenant "is aimed at making effective the agreement's promises."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988).  However, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract."  *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373, (1992).  Accordingly, the covenant "protect[s] the express covenants or promises of the contract, not . . . some general public policy interest not directly tied to the contract's purpose."  *Id.* (internal quotation marks omitted).  To make out a successful claim, "the allegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990), *as modified on denial of reh'g* (Oct. 31, 2001).

The plaintiffs allege that they entered into contracts with Apple for the sale of their iPhones.  FAC ¶ 539.  Apple argues that the plaintiffs seek to use the covenant to "end-run the express agreement that governs their claims—Apple's Hardware Warranty."  Mot. 27.  In

response, the plaintiffs do not dispute that the Warranty governs their purchases; in fact, they concede as much by referencing the disclaimer as being included in the contract into which the covenant is implied. *See* Oppo. 26. The plaintiffs' theory is instead that Apple breached the covenant "by utilizing inferior technology in the iPhone XR that created connectivity issues without informing Plaintiffs, and if a customer later complained, simply replaced the defective device with another iPhone XR with the same connectivity issues." Oppo. 26 (citing FAC ¶¶ 6, 118, 135, 287, 333, 592).

The plaintiffs' allegations, as a matter of law, do not amount to a violation of the covenant of good faith and fair dealing. The covenant protects the "express" terms of the contract from conscious, unfair interference. *See Careau*, 222 Cal. App. 3d at 1395. Here, the express terms of the Warranty do not give the plaintiffs any recourse when it comes to design choices. And the plaintiffs allege only a design defect, not a manufacturing defect. As another court has explained with respect to this same Warranty and a somewhat analogous claim against Apple, the covenant implied in the Warranty cannot be used to create a claim for design defects when the Warranty itself is expressly limited to "materials" and "workmanship" defects. *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2019 WL 1765817, at *4 (N.D. Cal. Apr. 22, 2019).

The plaintiffs' counterarguments are duplicative of their arguments regarding design defects. *See* Oppo. 26 ("Apple repeats and reasserts its argument that the defect at issue is a design defect rather than a manufacturing defect. As explained above, Plaintiffs plead both, alternatively, and Plaintiffs plead that the disclaimer is ineffective and/or unconscionable." (citations omitted)). I have already rejected those arguments.

The plaintiffs also rely on *Boyd v. Avanquest North America Inc.*, No. 12-CV-04391-WHO, 2014 WL 7183988 (N.D. Cal. Dec. 16, 2014). There, the plaintiffs alleged that the defendant "acted in bad faith not only in inducing Boyd to enter the alleged contract, but in frustrating the benefits of the contract." *Id.*, at *4. The defendant was alleged to have "intentionally designed the software [at issue] so it would not honestly and accurately diagnose and meaningfully repair legitimate errors on users' systems." *Id.* (internal quotation marks omitted). It allegedly "falsely represent[ed] the condition of scanned computers and creat[ed] the

42

illusion that the benefits were supplied (when in fact, they were not) . . . leading Plaintiff and the Class to believe that their contracts had been fulfilled." *Id.* (internal quotation marks omitted). Nothing of that type or magnitude is alleged here. Even in the light most favorable to the plaintiffs, there is no allegation supporting an inference that Apple induced the plaintiffs to agree to the Warranty to purposefully evade liability for the choice to include the 2x2 MIMO antenna.

At bottom, the plaintiffs are attempting to transform the covenant of good faith and fair dealing into a substantive contractual term that would cut against the express terms and limitations of the contract to which they agreed. I GRANT the motion to dismiss Count VII without prejudice.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART with leave to amend. Counts I, VI, and VII are dismissed. Count II is dismissed because, at this point, it relies on California law. Counts III and V are not dismissed, except insofar as they are predicated on partial representations. The FAC is dismissed with leave to amend to the extent it seeks injunctive relief or restitution; as a result, Count IV is also dismissed. I do not address Counts VIII, IX, X, or XI because they are brought in the alternative and I defer the determination of whether California law applies to all of the plaintiffs' claims. Any amended complaint shall be filed within 30 days.

**IT IS SO ORDERED.**

Dated: November 16, 2020

William H. Orrick
United States District Judge